CAROLYN S. TOTO (SBN 233825)
carolyn.toto@pillsburylaw.com
JEFFREY D. WEXLER (SBN 132256)
jeffrey.wexler@pillsburylaw.com
SARKIS A. KHACHATRYAN (SBN 293991)
sarkis.khachatryan@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406
Telephone: (213) 488-7100
Facsimile No.: (213) 629-1033

Attorneys for Plaintiff and Counterdefendant
In-N-Out Burgers

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN-N-OUT BURGERS, a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SMASHBURGER IP HOLDER LLC, a Delaware limited liability company; and SMASHBURGER FRANCHISING LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 8:17-cv-1474-JVS-DFM <br><br> **PLAINTIFF IN-N-OUT BURGERS' SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR: (1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]; (2) FEDERAL UNFAIR COMPETITION [15 U.S.C. § 1125(a)]; (3) FEDERAL FALSE ADVERTISING [15 U.S.C. § 1125(a)]; (4) FEDERAL TRADEMARK DILUTION [15 U.S.C. § 1125(c)]; (5) CALIFORNIA STATUTORY TRADEMARK INFRINGEMENT [Cal. Bus. & Prof. Code § 14250]; (6) CALIFORNIA STATUTORY TRADEMARK DILUTION [Cal. Bus. & Prof. Code § 14247]; (7) COMMON LAW UNFAIR COMPETITION; AND (8) CALIFORNIA STATUTORY UNFAIR COMPETITION [Cal. Bus. & Prof. Code §§ 17200 et seq.]** <br><br> **JURY TRIAL DEMANDED** |

1

SMASHBURGER IP HOLDER LLC, )
2   and SMASHBURGER                    )
FRANCHISING LLC,                  )
3                                      )
Counterclaimants,   )
4                                      )
vs.                         )
5                                      )
IN-N-OUT BURGERS,                 )
6                                      )
Counterdefendant.   )
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4826-5580-0170.v7

Plaintiff and Counterdefendant In-N-Out Burgers ("In-N-Out") alleges as follows:

## JURISDICTION AND VENUE

1.      This is a civil action seeking monetary damages and injunctive relief under federal and California law based upon trademark infringement, unfair competition, trademark dilution, and false advertising by defendants and counterclaimants Smashburger IP Holder LLC and Smashburger Franchising LLC (collectively, "Smashburger").  Smashburger has recently adopted the TRIPLE DOUBLE and SMASHBURGER TRIPLE DOUBLE marks, and, more recently, the BACON TRIPLE DOUBLE and  PUB TRIPLE DOUBLE marks, to sell burgers in direct competition with In-N-Out, which sells burgers under, *inter alia,* the DOUBLE-DOUBLE, TRIPLE TRIPLE, and QUAD QUAD marks, each of which is protected by federal and California trademark registrations.  Smashburger's use of the TRIPLE DOUBLE, SMASHBURGER TRIPLE DOUBLE, BACON TRIPLE DOUBLE, and PUB TRIPLE DOUBLE marks is likely to confuse and mislead the consuming public, and injure In-N-Out, by causing consumers to believe incorrectly that Smashburger's products originate from or are authorized by In-N-Out. Smashburger promotes its TRIPLE DOUBLE burgers as containing "Double the Beef."  However, contrary to this statement, the TRIPLE DOUBLE burger actually includes two patties that are each half the size of the patties of Smashburger's regular-sized burgers.  Therefore, the TRIPLE DOUBLE burger contains the same amount of beef as Smashburger's regular-sized burgers, not "double" the beef. Smashburger's misleading use of its "Double the Beef" taglines (such as "Triple the Cheese, Double the Beef in Every Bite," "Triple the Cheese, Double the Beef, Triple the Options," and "Classic Smash™ Beef Build with triple the cheese & double beef in every bite") are thus likely to confuse and mislead the consuming public, and injure In-N-Out, by causing consumers to believe incorrectly that Smashburger's

3

products sold under these slogans include twice the beef of Smashburger's regular-sized burgers, which they do not.

2.      The Court has federal question jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) over In-N-Out's First, Second, Third, and Fourth Claims for Relief for infringement of federally registered trademarks, unfair competition, false advertising and trademark dilution actionable under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, because the claims arise under an act of Congress relating to trademarks.  The Court has jurisdiction pursuant to 28 U.S.C. § 1338(b) over In-N-Out's Fifth, Sixth, Seventh, and Eighth Claims for Relief under California law for infringement of California-registered trademarks, dilution of trademarks, common law unfair competition, and statutory unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.* because those claims are joined with substantial and related claims under the trademark laws, and the Court also has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a) because those claims are so related to In-N-Out's claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      This Court has personal jurisdiction over Smashburger, and venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b).  In-N-Out is informed and believes, and based thereon alleges, that Smashburger operates its restaurants throughout the Central District of California, including in Orange County.  The effects of Smashburger's infringing acts have been felt in the State of California and in this District, where In-N-Out is located.

### THE PARTIES

4.      In-N-Out is a California corporation having its principal place of business in Irvine, California.  In-N-Out operates a chain of quick-service restaurants specializing in hamburger and cheeseburger sandwiches and other products and services.

4

5.      In-N-Out is informed and believes, and based thereon alleges, that defendants Smashburger IP Holder LLC and Smashburger Franchising LLC are both Delaware limited liability companies, each having a principal place of business at 3900 East Mexico Avenue, Suite 1200, Denver, Colorado 80210.  In-N-Out is further informed and believes, and based thereon alleges, that Smashburger operates and franchises a chain of quick-service restaurants specializing in hamburger and cheeseburger sandwiches and other products and services.

### IN-N-OUT'S BUSINESS AND MARKS

6.      Founded in 1948 by Harry Snyder and his wife Esther Snyder, In-N-Out operates a highly recognizable and successful chain of quick-service restaurants specializing in hamburger and cheeseburger sandwiches and other products and services.  In-N-Out remains a family owned and operated business and currently operates more than 300 restaurants in the United States.

7.      Celebrated for its fresh food and other high standards of quality, In-N-Out consistently rates as the top quick-service restaurant in customer satisfaction surveys.  In 2015, Zagat users rated In-N-Out as the favorite chain restaurant in Los Angeles.  In April 2015, In-N-Out earned the top ranking from consumers for the third year in a row in the Limited-Service category in Nation's Restaurant News' annual Consumer Picks report.

8.      In 2014, the National Restaurant Association ranked In-N-Out as the nation's top hamburger spot, "head and shoulders above the rest."  Also in 2014, OC Metro magazine named In-N-Out as the most trustworthy brand in Orange County for the second consecutive year, based on a consumer survey.  In 2013, the Quick Service Restaurant (QSR) Benchmark Study rated In-N-Out as "America's Favorite Burger Brand."

9.      In 2011, Zagat's fast food survey lauded In-N-Out as the number one large quick service chain in the "Top Food" category.  In 2010, Consumer Reports ranked In-N-Out as the nation's top burger sandwich chain.

4826-5580-0170.v7

10.     In-N-Out has amassed tremendous consumer goodwill over the decades.  It is an iconic brand, and its products and services have acquired renown and a fiercely devoted fan base throughout the country, including in its home state of California.

11.     In-N-Out owns a family of marks, along with the goodwill associated therewith, that are comprised of a number followed by another number and that are used in its restaurants in association with its food offerings, including the following valid and subsisting United States trademark registrations (collectively, the "Federal Registered Marks") registered on the Principal Register of the United States Patent and Trademark Office (the "USPTO"):

| Exhibit | Mark | U.S. Registration No. | Registration Date | Description of Services or Goods |
|---------|------|----------------------|-------------------|----------------------------------|
| A | DOUBLE-DOUBLE | 1,002,370 | 1/21/1975 | Specially prepared sandwich as part of restaurant services (IC 042) |
| B | DOUBLE DOUBLE | 1,165,723 | 8/18/1981 | Hamburger Sandwiches for Consumption On or Off the Premises (IC 030) |
| C | DOUBLE-DOUBLE | 3,572,485 | 2/10/2009 | A sandwich, namely, a burger the principal ingredients of which are two meat patties and two slices of cheese (IC 030) |
| D | DOUBLE-DOUBLE | 4,446,247 | 12/10/2013 | Sandwiches; custom-made sandwiches (IC 030); prepared meals consisting primarily of meat and vegetables and including bread and cheese, and the aforesaid meals provided in bowls, |

| Exhibit | Mark | U.S. Registration No. | Registration Date | Description of Services or Goods |
|---|---|---|---|---|
|  |  |  |  | boxes, bags and trays (IC 029) |
| E | DOUBLE DOUBLE | 4,625,449 | 10/21/2014 | Aprons; Hats; Shirts for infants, babies, toddlers and children (IC 025) |
| F | TRIPLE TRIPLE | 1,598,825 | 5/29/1990 | Hamburger sandwiches and cheeseburger sandwiches, for consumption on or off the premises (IC 030) |
| G | QUAD QUAD | 1,598,826 | 5/29/1990 | Hamburger sandwiches and cheeseburger sandwiches, for consumption on or off the premises (IC 030) |
| H | 2 X 2 | 1,609,251 | 8/7/1990 | Hamburger sandwiches and cheeseburger sandwiches, for consumption on or off the premises (IC 030) |
| I | 3 X 3 | 1,602,609 | 6/19/1990 | Made-to-order cheeseburger sandwiches having three cooked beef hamburger patties and three cheese slices, for consumption on or off the premises (IC 030) |
| J | 4 X 4 | 1,955,465 | 2/13/1996 | Made-to-order cheeseburger sandwiches having four cooked beef hamburger patties and four cheese slices for |

7

| Exhibit | Mark | U.S. Registration No. | Registration Date | Description of Services or Goods |
|---------|------|----------------------|-------------------|----------------------------------|
|  |  |  |  | consumption on or off the premises (IC 030) |

12.     True and correct copies of the registration certificates for the Federal Registered Marks are attached hereto as **Exhibits A-J**, respectively, and are incorporated by reference.

13.     Out of the ten Federal Registered Marks, the following eight are incontestable registrations pursuant to 15 U.S.C. § 1065: U.S. Reg. Nos. 1,002,370, 1,165,723, 3,572,485, 1,598,825, 1,598,826, 1,609,251, 1,602,609, and 1,955,465.

14.     Moreover, In-N-Out owns a similar family of California trademark and service mark registrations that are also comprised of a number followed by another number, including the following marks (collectively, the "State Registered Marks") registered with the California Secretary of State:

| Exhibit | Mark | California Registration No. | Registration Date | Description of Services or Goods |
|---------|------|----------------------------|-------------------|----------------------------------|
| K | DOUBLE-DOUBLE | 2539 | 9/19/1973 | Restaurant services in connection with the sale of food such as hamburgers, cheeseburgers (Class No. 100) |
| L | DOUBLE-DOUBLE | 51534 | 9/19/1973 | Restaurant foods such as hamburgers, cheeseburgers (Class No. 46) |
| M | TRIPLE TRIPLE | 91353 | 1/12/1990 | Hamburger and cheeseburger sandwiches for consumption on or off the premises (Class |

| Exhibit | Mark | California Registration No. | Registration Date | Description of Services or Goods |
|---|---|---|---|---|
| | | | | No. 46) |
| N | QUAD QUAD | 91373 | 1/17/1990 | Hamburger and cheeseburger sandwiches for consumption on or off the premises (Class No. 46) |
| O | 2 X 2 | 91354 | 1/12/1990 | Hamburger and cheeseburger sandwiches for consumption on or off the premises (Class No. 46) |
| P | 3 X 3 | 91381 | 1/17/1990 | Hamburger and cheeseburger sandwiches for consumption on or off the premises (Class No. 46) |
| Q | 4 X 4 | 91368 | 1/17/1990 | Hamburger and cheeseburger sandwiches for consumption on or off the premises (Class No. 46) |

15. True and correct copies of the registrations for the State Registered Marks, with the most recent renewal certificates, are attached hereto as **Exhibits K-Q**, respectively, and are incorporated by reference.

16. In-N-Out owns all right, title and interest in and to the Federal Registered Marks and the State Registered Marks (collectively, the "Registered Marks"). As shown above, In-N-Out has obtained trademark and service mark registrations for the Registered Marks for a range of food and other products and services, including, *inter alia*, restaurant services, and hamburger and cheeseburger sandwiches.

4826-5580-0170.v7

17.     The Registered Marks have been used in interstate commerce, including extensively in California, to identify and distinguish In-N-Out's products and services for decades, and they serve as symbols of In-N-Out's quality, reputation, and goodwill.  In-N-Out's menu has largely stayed the same since it opened its first restaurant almost seventy (70) years ago and it has become well known across the United States for its dedication to serving fresh, high quality and delicious food.

18.     Since at least as early as 1963, In-N-Out has continuously used its registered DOUBLE-DOUBLE trademark in connection with hamburger sandwiches in interstate commerce.  Since at least as early as 1966, In-N-Out has continuously used its registered TRIPLE TRIPLE trademark in connection with hamburger sandwiches in interstate commerce.

19.     The hamburger sandwiches sold under the DOUBLE-DOUBLE trademark are one of In-N-Out's top-selling food items.  While In-N-Out's restaurants are widely popular and serve millions of customers per year, the hamburger sandwich sold under the DOUBLE-DOUBLE trademark has been one of In-N-Out's biggest sellers since at least 2007, with sales in excess of $600 million in that time period.  In-N-Out customers and fans across the country, including in California, recognize the DOUBLE-DOUBLE trademark and would recognize that any hamburger sandwiches sold under that trademark comes from In-N-Out.

20.     The DOUBLE-DOUBLE hamburger has earned national accolades and recognition.  For example, national crowd-sourced rankings regularly rank the DOUBLE-DOUBLE hamburger as the "best" burger in the United States.  *See, e.g.*, https://www.ranker.com/crowdranked-list/top-fast-food-burgers (Ranker.com list as of 2017); http://www.businessinsider.com/top-10-restaurant-burgers-in-america-2015-5 (reporting Ranker.com list as of 2015); http://burgerbeast.com/2013/03/27/in-n-outs-double-double-ranked-1-fast-food-burger-in-america/ (reporting

4826-5580-0170.v7

Ranker.com list as of 2013).  Attached hereto as **Exhibits R, S, and T**, respectively, are true and correct screenshots of the webpages cited in this paragraph.

21.     Furthermore, various national websites have found the DOUBLE-DOUBLE hamburger to be the "best" burger in the United States.  *See*, *e.g.*, http://uproxx.com/life/ranking-fast-food-double-cheeseburgers/; https://fastfood.theringer.com/.  Attached hereto as **Exhibits U and V**, respectively, are true and correct screenshots of the webpages cited in this paragraph.

22.     The DOUBLE-DOUBLE marks are famous marks that are inherently distinctive throughout the United States, including California, both inherently and through acquired distinctiveness as a result of In-N-Out's long-term advertising, publicity, and use of such marks for more than 50 years, as a result of which such marks are widely recognized by the general consuming public as a designation of source of In-N-Out's goods and services as evidenced by national recognition of In-N-Out and its popular DOUBLE-DOUBLE hamburger.  Even in geographic regions that lack an In-N-Out store location, In-N-Out and its widely popular DOUBLE-DOUBLE hamburger are recognized and have a devoted following.  *See*, *e.g.*, http://www.seoultaste.com/en/blog/in-n-out; https://urbanologie.com/article/4857-innout-pop-up; http://laist.com/2016/09/19/in-n-out_lands_in_london_for_just_a.php; https://www.eater.com/2017/3/4/14814862/in-n-out-burger-pop-up-shanghai; https://www.msn.com/en-us/foodanddrink/casual/new-yorkers-fell-for-the-meanest-fast-food-hoax-ever/ar-AAtKh3s?li=BBnbfcL.  Attached hereto as **Exhibits W, X, Y**, **Z and AA**, respectively, are true and correct screenshots of the webpages cited in this paragraph.

11

23.     Moreover, since more than 50 years ago, In-N-Out has offered the DOUBLE-DOUBLE hamburger on its main menu as one of only four food items (excluding beverages) that are included on that menu (and as the only food item that is identified by a trademarked name, rather than a generic description, *i.e.*, "Cheeseburger," "Hamburger," and "French fries").  As a result, each In-N-Out customer is exposed on each visit to In-N-Out's display menu, posted at the drive-through and the in-store counter, prominently featuring at the top of the menu the DOUBLE-DOUBLE hamburger as one of In-N-Out's principal food offerings.

24.     In-N-Out uses its Registered Marks in association with food and restaurant services for its customers.  As one example, In-N-Out uses its Registered Marks on its menu, food packaging, tray liners, advertising materials and promotional items.

25.     As another example, In-N-Out uses the Registered Marks on its "Not-So-Secret Menu" and through customer use.  The Not-So-Secret Menu refers to menu items that are not shown on the menu in In-N-Out's restaurants but are publicized and widely known and used by customers, whether by word of mouth or, more recently, by online communications like social media and blog posts.  Ordering such items from the Not-So-Secret Menu is known to be a unique and popular feature of In-N-Out that appeals to customer enjoyment and satisfaction.

26.     In-N-Out is also widely known for providing variations of its menu items to customize orders for providing an exceptional customer experience. Accordingly, In-N-Out's customers commonly mix the DOUBLE-DOUBLE, TRIPLE TRIPLE, and QUAD QUAD menu names to form names to customize orders, including "Triple Double."

27.     Likewise, In-N-Out's customers also commonly mix the 2 X 2, 3 X 3, and 4 X 4 menu names to form names to customize orders, including "3 X 2."

12

28.    Through its restaurants and online store, In-N-Out has sold and continues to sell goods throughout the United States.

29.    In-N-Out makes use of its Registered Marks in interstate commerce, including extensively throughout California, by displaying them on product packaging, menus, signage, promotional materials and advertising materials.

30.    In-N-Out has invested millions of dollars in developing, advertising and otherwise promoting the Registered Marks in the United States in an effort to create a strong association among In-N-Out's products and services, its consumer goodwill and its Registered Marks.

31.    As a result of the care and skill exercised by In-N-Out in the conduct of its business, the high quality of its products and services offered under its Registered Marks, and the extensive advertising, sale and promotion of In-N-Out's products bearing the Registered Marks, the Registered Marks have acquired secondary meaning throughout the United States, and they are widely recognized by the general consuming public as a designation that In-N-Out is the source of the goods and services bearing the Registered Marks.

32.    Since the date of first use of each of the Registered Marks, In-N-Out has intended to maintain exclusive ownership of the Registered Marks and to continue use of the Registered Marks in interstate commerce, including extensively in California, in connection with In-N-Out's products and services.

33.    In-N-Out has carefully monitored and policed the use of the Registered Marks and maintains tight control over the use of the Registered Marks.

### SMASHBURGER'S INFRINGING ACTS

34.    In-N-Out is informed and believes, and based thereon alleges, that Smashburger is in exactly the same industry as In-N-Out, as Smashburger operates and franchises a chain of quick-service restaurants specializing in hamburger and cheeseburger sandwiches.

13

4826-5580-0170.v7

35.     In-N-Out is informed and believes, and based thereon alleges, that
Smashburger operates or franchises more than 345 restaurants across 38 states in the
United States, including 36 locations in California.

36.     In-N-Out is informed and believes, and based thereon alleges, that in
July 2017, Smashburger launched a new burger product under the marks TRIPLE
DOUBLE and SMASHBURGER TRIPLE DOUBLE in all of its restaurant locations
nationwide.

37.     Smashburger has advertised, and continues to advertise, its
TRIPLE DOUBLE burger on the home page of its website, where the TRIPLE
DOUBLE mark is prominently displayed.  *See* http://smashburger.com/.  A
true and correct screenshot of the home page of Smashburger's webpage as of
the date of filing of the original Complaint on August 28, 2017 is attached
hereto as **Exhibit BB**.

38.     In-N-Out is informed and believes, and based thereon alleges,
that in or about September 2017 and May 2018, respectively, Smashburger
launched new burger products under the marks BACON TRIPLE DOUBLE
and PUB TRIPLE DOUBLE in its restaurant locations nationwide
(collectively, with the TRIPLE DOUBLE burger, the "TRIPLE DOUBLE
Burgers").  All of the TRIPLE DOUBLE Burgers include three slices of
cheese and two beef patties.

39.     Smashburger has advertised, and continues to advertise, its
TRIPLE DOUBLE Burgers through its social media accounts.  *See*, *e.g.*,
https://www.instagram.com/p/BWX6_gHgUY-/?hl=en&taken-
by=smashburgerA.  A true and correct screenshot of a post on Smashburger's
Instagram account is attached hereto as **Exhibit CC**.

40.     In-N-Out is informed and believes, and based thereon alleges, that
Smashburger's burger sold under the TRIPLE DOUBLE and SMASHBURGER

14

TRIPLE DOUBLE marks has a similar price point to In-N-Out's DOUBLE-DOUBLE and TRIPLE TRIPLE burgers.

41.    Prior to its use of the TRIPLE DOUBLE and SMASHBURGER TRIPLE DOUBLE marks, Smashburger IP Holder LLC filed four intent-to-use applications with the USPTO on November 14, 2016, which are summarized in the following table (collectively, "Smashburger's Trademark Applications"):

| Mark | U.S. App. Serial No. | Filing Date | Description of Services or Goods |
|---|---|---|---|
| TRIPLE DOUBLE | 87/236,154 | 11/14/2016 | Carry-out restaurants; restaurant services; self-service restaurants (IC 043) |
| SMASHBURGER TRIPLE DOUBLE | 87/236,167 | 11/14/2016 | Carry-out restaurants; restaurant services; self-service restaurants (IC 043) |
| TRIPLE DOUBLE | 87/236,274 | 11/14/2016 | Sandwiches (IC 030) |
| SMASHBURGER TRIPLE DOUBLE | 87/236,287 | 11/14/2016 | Sandwiches (IC 030) |

42.    The USPTO published all four applications for opposition in the *Official Gazette* on April 4, 2017.

43.    In-N-Out filed a Consolidated Notice of Opposition with the Trademark Trial and Appeal Board (the "TTAB") on June 2, 2017, opposing Smashburger's Trademark Applications.  This opposition proceeding is currently pending before the TTAB as *In-N-Out Burgers v. Smashburger IP Holder LLC*, Opp. No. 91/234,860.

44.    Smashburger was aware of the existence of In-N-Out's Registered Marks before it began using the TRIPLE DOUBLE and SMASHBURGER TRIPLE DOUBLE marks in commerce, as is evidenced by the fact that Smashburger first

15

commenced use of such marks in commerce after In-N-Out filed its Consolidated
Notice of Opposition in which it opposed Smashburger's Trademark Applications.

45.     In-N-Out is informed and believes, and based thereon alleges, that
Smashburger chose to use the TRIPLE DOUBLE, SMASHBURGER TRIPLE
DOUBLE, BACON TRIPLE DOUBLE, and PUB TRIPLE DOUBLE marks
(collectively, the "TRIPLE DOUBLE Marks") because Smashburger knew, prior to
its use of such marks, that the DOUBLE-DOUBLE marks are famous and that each
of In-N-Out's Registered Marks connotes a high standard of quality.

46.     In-N-Out is informed and believes, and based thereon alleges, that
Smashburger, being in the same field as In-N-Out, providing the same products as In-
N-Out and being aware of In-N-Out's marks and reputation associated therewith,
chose to adopt and use the TRIPLE DOUBLE Marks to trade on the goodwill
associated with In-N-Out's Registered Marks.

47.     In-N-Out is not affiliated in any way with Smashburger's business.

48.     Without authorization from In-N-Out, and despite the fact that
Smashburger is in no way affiliated with In-N-Out, Smashburger has sold and
advertised, and continues to sell and advertise, its TRIPLE DOUBLE Burgers using
the TRIPLE DOUBLE Marks.

49.     Smashburger's unauthorized use of the TRIPLE DOUBLE Marks in the
sale of its burger products and in its marketing and advertising materials creates a
likelihood of consumer confusion because actual and prospective customers are likely
to believe that In-N-Out has approved or licensed Smashburger's use of its marks, or
that In-N-Out is somehow affiliated or connected with Smashburger or its services.
In fact, In-N-Out has not sponsored, licensed, or authorized Smashburger's goods or
services, and Smashburger and its services are not affiliated or connected with In-N-
Out.

4826-5580-0170.v7

50.     Further, Smashburger's use of In-N-Out's famous trademarks implies that the quality of the goods and services offered by Smashburger is the same as that of In-N-Out.

51.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger has promoted the TRIPLE DOUBLE Burgers as containing "Double the Beef." However, the TRIPLE DOUBLE Burgers do not contain twice the amount of beef as Smashburger's regular-sized burgers.

52.     In-N-Out is informed and believes, and based thereon alleges, that in a press release dated July 11, 2017 concerning the addition of the TRIPLE DOUBLE burger to Smashburger's national menu, Smashburger quoted its Co-Founder and Chief Executive Officer Tom Ryan as stating that the TRIPLE DOUBLE burger contains "'[d]ouble the juicy, caramelized beef,'" that it "provide[s] three times the cheese and double the beef in every bite," and that it is "Smashburger's beefiest […] burger to date." A true and correct copy of Smashburger's July 11, 2017 press release is attached hereto as **Exhibit DD**.

53.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger has used its "Double the Beef" tagline in multiple variations to advertise and sell its TRIPLE DOUBLE Burgers, including "Triple the Cheese, Double the Beef in Every Bite," "Triple the Cheese, Double the Beef, Triple the Options," and "Classic Smash™ Beef Build with triple the cheese & double beef in every bite." Smashburger has used such taglines in, *inter alia*, menus and displays at its restaurants. True and correct copies of representative copies of Smashburger's menus and of photographs of displays at its restaurants are attached hereto as **Exhibits EE**, **FF**, and **GG,** respectively.

4826-5580-0170.v7







54.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger has advertised, and currently continues to advertise, all three of its TRIPLE DOUBLE Burgers on the homepage of its website as "Triple the Cheese, Double the Beef, Triple the Options."  *See* http://smashburger.com/.  A true and

18

correct screenshot of the homepage of Smashburger's webpage is attached hereto as **Exhibit HH**.



55.   In-N-Out is informed and believes, and based thereon alleges, that Smashburger has advertised, and currently continues to advertise, its TRIPLE DOUBLE Burgers through its social media accounts as containing "Double the Beef."  *See* https://www.instagram.com/p/BihfM-HhTCq/?hl=en&taken-by=smashburger; https://www.instagram.com/p/BjqLUKOB0Ds/?hl=en&taken-by=smashburger.  True and correct screenshots of Smashburger's Instagram posts are attached hereto as **Exhibits II** and **JJ**, respectively.

4826-5580-0170.v7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23         56.    In-N-Out is informed and believes, and based thereon alleges,

24   that Smashburger also used its "Double the Beef" tagline in television

25   advertisements for its TRIPLE DOUBLE burger, stating that the TRIPLE

26   DOUBLE burger contains "Double the Beef in Every Bite" and has "2x Fresh

27   Never-Frozen Beef."  *See* https://vimeo.com/225485077;

28   https://vimeo.com/224690849.  In such television advertisements, one actor

4826-5580-0170.v7

says that the TRIPLE DOUBLE burger is the "meatiest thing I've ever eaten,"
while another holds up a Triple Double burger and says, "this is a lot of meat."
A true and correct screenshot of the Smashburger video advertisement
showing the "2x Fresh Never-Frozen Beef" statement is attached hereto as
**Exhibit KK**.



57.     In-N-Out is informed and believes, and based thereon alleges, that while
Smashburger has advertised, and continues to advertise, its TRIPLE DOUBLE
Burgers as containing "Double the Beef," the TRIPLE DOUBLE Burgers actually
consist of two patties that together contain the same amount of beef as the single
patty in Smashburger's regular-sized burgers, such as Smashburger's Classic Smash
burger.  For example, the two patties of a TRIPLE DOUBLE burger (without cheese)
purchased on June 27, 2018 at Smashburger's company store in Culver City,
California each weighed about 1.5 ounces, while the patty of a Classic Smash burger
purchased on the same day from the same store weighed about 2.8 ounces.  As shown
below:

4826-5580-0170.v7



58.     Thus, the TRIPLE DOUBLE Burgers do not contain "Double the Beef," but rather contain about the same amount of beef as Smashburger's regular-sized burgers.

59.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger's "Double the Beef" taglines are likely to influence, and actually did influence, the purchasing decisions of consumers.

60.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger's "Double the Beef" taglines actually deceived and had the tendency to deceive a substantial segment of Smashburger's customers into thinking that the TRIPLE DOUBLE Burgers contain twice the amount of beef as Smashburger's regular-sized burgers.

61.     In-N-Out's burger products sold under the DOUBLE-DOUBLE mark include two beef patties, each of which is the same size as the beef patty included in In-N-Out's single burgers.  Thus, In-N-Out's DOUBLE-DOUBLE burgers actually do contain twice the amount of beef of In-N-Out's single burger.

62.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger's false representations have injured In-N-Out by diverting customers and sales from In-N-Out to Smashburger.

63.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger knew or should have known that its "Double the Beef" taglines were false and misleading, yet it adopted and continued to use those taglines.

## **FIRST CLAIM FOR RELIEF**

### **(Federal Trademark Infringement (15 U.S.C. § 1114))**

64.     In-N-Out refers to the allegations contained in paragraphs 1 through 63 above and incorporates them by reference as though fully set forth herein.

65.     In-N-Out exclusively owns the Registered Marks, which are valid and enforceable.

66.     In-N-Out has used the Registered Marks in interstate commerce in connection with the advertising and promotion of its restaurant goods and services.

67.     Without authorization, Smashburger has used and continues to use the TRIPLE DOUBLE Marks in interstate commerce in connection with its restaurant business and hamburger products.

68.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger's unauthorized use of the TRIPLE DOUBLE Marks has caused, and will likely continue to cause, confusion, mistake, or deception in the relevant consumer market.

69.     Smashburger's unauthorized use of the TRIPLE DOUBLE Marks constitutes infringement of federally registered trademarks in violation of 15 U.S.C. § 1114.

70.     In-N-Out has suffered, and will continue to suffer, damages as a result of Smashburger's unauthorized use of the TRIPLE DOUBLE Marks.

4826-5580-0170.v7

71.    In-N-Out is informed and believes, and based thereon alleges, that Smashburger has acted in bad faith and/or willfully in using the TRIPLE DOUBLE Marks in connection with its restaurant services and burger sandwiches.

72.    Smashburger's infringing acts have caused and will continue to cause In-N-Out to suffer irreparable injuries to its reputation and goodwill.  In-N-Out does not have an adequate remedy at law to recover for this harm, and it is therefore entitled to injunctive relief.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition (15 U.S.C. § 1125(a)))

73.    In-N-Out refers to the allegations contained in paragraphs 1 through 72 above and incorporates them by reference as though fully set forth herein.

74.    In-N-Out is informed and believes, and based thereon alleges, that Smashburger's unauthorized use of the TRIPLE DOUBLE Marks in connection with its goods and services constitutes a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact, and has caused and is likely to cause confusion, mistake, and/or deception as to:

    a.    the affiliation, connection or association of the Registered Marks with Smashburger;

    b.    the origin, sponsorship or approval of Smashburger's use of the Registered Marks; and

    c.    the nature, characteristics, or qualities of Smashburger's goods that bear and services that are rendered in connection with the TRIPLE DOUBLE Marks.

75.    The aforesaid acts constitute unfair competition in violation of 15 U.S.C. § 1125(a).

76.    In-N-Out has suffered, and will continue to suffer, damages as a result of Smashburger's unauthorized use of the TRIPLE DOUBLE Marks.

4826-5580-0170.v7

77.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger has acted in bad faith and/or willfully in using the TRIPLE DOUBLE Marks in connection with its restaurant services and burger sandwiches.

78.     Smashburger's infringing acts have caused and will continue to cause In-N-Out to suffer irreparable injuries to its reputation and goodwill.  In-N-Out does not have an adequate remedy at law to recover for this harm, and it is therefore entitled to injunctive relief.

## THIRD CLAIM FOR RELIEF

## (Federal False Advertising (15 U.S.C. § 1125(a)))

79.     In-N-Out refers to the allegations contained in paragraphs 1 through 78 above and incorporates them by reference as though fully set forth herein.

80.     As alleged in detail above, In-N-Out is informed and believes, and based thereon alleges, that Smashburger's representations that its TRIPLE DOUBLE Burgers contain "Double the Beef" constitute a false or misleading statement of fact in commercial advertisement or promotion that Smashburger caused to enter interstate commerce, including on its website, menus, social media accounts, television commercials, press releases, and other marketing or promotional materials.

81.     Smashburger's representations that its TRIPLE DOUBLE BURGERS contain "Double the Beef" constitute a false or misleading statement about the nature, qualities, or characteristics of its burger products, namely, that its TRIPLE DOUBLE Burgers contain twice the amount of beef as its other regular-sized burgers.

82.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger knew, or by the exercise of reasonable care should have known, that its representations of "Double the Beef" are false or misleading.

83.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger's false or misleading representations are material because they are likely to influence and have actually influenced the purchasing decisions of the relevant consumers.

4826-5580-0170.v7

84.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger's false or misleading representations have actually deceived or have the tendency to deceive a substantial segment of the relevant consumers, and have injured In-N-Out by diverting sales from In-N-Out to Smashburger.

85.     In-N-Out is entitled, under 15 U.S.C. § 1117, to recover Smashburger's profits realized as a result of Smashburger's false advertising.  Smashburger's profits are in an amount not yet ascertained but to be proven at trial.

86.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger's false advertising as alleged herein was and is intentionally fraudulent, malicious, willful, and wanton.  In-N-Out is therefore entitled, pursuant to 15 U.S.C. § 1117, to recover threefold Smashburger's profits realized by reason of Smashburger's false advertising.

87.     Smashburger's false advertising has caused and will continue to cause In-N-Out to suffer irreparable injuries to its reputation and goodwill.  In-N-Out does not have an adequate remedy at law to recover for this harm, and it is therefore entitled to injunctive relief.

## **FOURTH CLAIM FOR RELIEF**

### **(Federal Trademark Dilution (15 U.S.C. § 1125(c)))**

88.     In-N-Out refers to the allegations contained in paragraphs 1 through 87 above and incorporates them by reference as though fully set forth herein.

89.     The DOUBLE-DOUBLE marks are distinctive and famous in the United States and were famous before Smashburger's use of the TRIPLE DOUBLE Marks.

90.     Smashburger's use of the TRIPLE DOUBLE Marks has and is likely to dilute and blur, the distinctive quality of the DOUBLE-DOUBLE marks, and lessen the capacity of the Registered Marks to identify and distinguish In-N-Out's products.

26

91.     Smashburger's acts constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

92.     In-N-Out has suffered, and will continue to suffer, damages as a result of Smashburger's conduct constituting trademark dilution.

93.     Smashburger's acts have caused and will continue to cause In-N-Out to suffer irreparable injuries to its reputation and goodwill.  In-N-Out does not have an adequate remedy at law to recover for this harm, and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1125(c)(2).

**FIFTH CLAIM FOR RELIEF**

**(California Statutory Trademark Infringement**

**(Cal. Bus. & Prof. Code § 14250))**

94.     In-N-Out refers to the allegations contained in paragraphs 1 through 93 above and incorporates them by reference as though fully set forth herein.

95.     In-N-Out exclusively owns the State Registered Marks, which are valid and enforceable.

96.     In-N-Out has used the State Registered Marks in interstate commerce, including extensively in California, in connection with the advertising and promotion of its restaurant goods and services.

97.     Without consent or authorization, Smashburger has used and continues to use the TRIPLE DOUBLE Marks in interstate commerce, including in California, in connection with its restaurant business and hamburger products.

98.     In-N-Out is informed and believes, and based thereon alleges, that Smashburger's unauthorized use of the TRIPLE DOUBLE Marks has caused, and will likely continue to cause, confusion, mistake, or deception in the relevant consumer market.

99.     In-N-Out has suffered, and will continue to suffer, damages as a result of Smashburger's unauthorized use of the TRIPLE DOUBLE Marks.

4826-5580-0170.v7

100.   Smashburger's unauthorized use of the TRIPLE DOUBLE Marks constitutes infringement of state registered trademarks in violation of Cal. Bus. & Prof. Code § 14250.

101.   In-N-Out is informed and believes, and based thereon alleges, that Smashburger has acted in bad faith and/or willfully in using the TRIPLE DOUBLE Marks in connection with its restaurant services and burger sandwiches.

102.   Smashburger's infringing acts have caused and will continue to cause In-N-Out to suffer irreparable injuries to its reputation and goodwill.  In-N-Out does not have an adequate remedy at law to recover for this harm, and is therefore entitled to injunctive relief.

## SIXTH CLAIM FOR RELIEF

### (California Statutory Trademark Dilution

### (Cal. Bus. & Prof. Code § 14247))

103.   In-N-Out refers to the allegations contained in paragraphs 1 through 102 above and incorporates them by reference as though fully set forth herein.

104.   In-N-Out is the owner of the DOUBLE-DOUBLE marks, which are famous marks that are inherently distinctive throughout California, both inherently and through acquired distinctiveness as a result of In-N-Out's long-term advertising, publicity, and use of such marks in California for more than 50 years, as a result of which such marks are widely recognized by the general consuming public of California as a designation of source of In-N-Out's goods and services.  In particular, but without limitation, the DOUBLE-DOUBLE marks are famous and distinctive in each city where Smashburger operates in California.

105.   Smashburger's use of the TRIPLE DOUBLE Marks began after the DOUBLE-DOUBLE marks became famous in California.

106.   Smashburger's use of the TRIPLE DOUBLE Marks is likely to cause dilution of the distinctive nature of the DOUBLE-DOUBLE marks by blurring the DOUBLE-DOUBLE marks, *i.e.*, such use is likely to lessen consumers' association

4826-5580-0170.v7

1   of In-N-Out's famous DOUBLE-DOUBLE marks with In-N-Out's goods and

2   services.

3     107. Smashburger's use of the TRIPLE DOUBLE Marks is likely to cause

4   dilution of the distinctive nature of the DOUBLE-DOUBLE marks by lessening the

5   extensive and valuable goodwill, quality, and reputation that is associated with the

6   DOUBLE-DOUBLE marks.

7     108. Smashburger's trademark dilution in violation of Cal. Bus. & Prof. Code

8   § 14247 has caused substantial injury to In-N-Out and is continuing to cause

9   substantial injury.  In-N-Out has no adequate remedy at law for these injuries.  Unless

10   Smashburger is restrained by this Court from continuing its trademark dilution in

11   violation of Cal. Bus. & Prof. Code § 14247, these injuries will continue to accrue.

12   Pursuant to Cal. Bus. & Prof. Code § 14247, In-N-Out is entitled to preliminary and

13   permanent injunctive relief against Smashburger's trademark dilution, throughout the

14   geographic area in which those marks are found to have become famous prior to

15   commencement of Smashburger's junior use.

16          **SEVENTH CLAIM FOR RELIEF**

17       **(Unfair Competition Under the California Common Law)**

18     109. In-N-Out refers to the allegations contained in paragraphs 1 through 108

19   above and incorporates them by reference as though fully set forth herein.

20     110. The acts of Smashburger, complained of above, constitute unfair

21   competition in violation of the common law of the State of California.

22     111. Upon information and belief, Smashburger's acts have been committed

23   and are being committed with the deliberate purpose and intent of appropriating and

24   trading on In-N-Out's goodwill and reputation.

25     112. In-N-Out has suffered, and will continue to suffer, damages as a result of

26   Smashburger's unfair competition.

27     113. The actions of Smashburger described herein were taken with substantial

28   certainty that such acts would cause harm to In-N-Out, in conscious disregard for the

4826-5580-0170.v7

rights of In-N-Out and by conduct that was done with malice and ill-will and intent to harm In-N-Out, such as to constitute oppression, fraud, malice, and despicable conduct under Cal. Civ. Code § 3294, entitling In-N-Out to exemplary damages in an amount appropriate to punish and set an example of Smashburger.

114.   The foregoing acts of Smashburger have caused In-N-Out irreparable harm, and, unless enjoined, Smashburger's acts as alleged herein will continue to cause In-N-Out irreparable harm, loss and injury.

## **EIGHTH CLAIM FOR RELIEF**
### **(California Statutory Unfair Competition**
### **(Cal. Bus. & Prof. Code §§ 17200 *et seq.*))**

115.   In-N-Out refers to the allegations contained in Paragraphs 1 through 114 above and incorporates them by reference as though fully set forth herein.

116.   Smashburger, by doing the acts alleged herein, has acted in violation of 15 U.S.C. §§ 1114 and 1125, and Cal. Bus. & Prof. Code § 14247, and has thereby engaged in unfair and unlawful business practices constituting statutory unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

117.   Smashburger's unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* have caused substantial injury to In-N-Out and are continuing to cause substantial injury.  In-N-Out has no adequate remedy at law for these injuries.  Unless Smashburger is restrained by this Court from continuing its unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*, these injuries will continue to accrue.  Pursuant to Cal. Bus. & Prof. Code § 17204, In-N-Out is entitled to preliminary and permanent injunctive relief against Smashburger's unfair and unlawful business practices constituting statutory unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

**WHEREFORE**, In-N-Out requests judgment in its favor and against Smashburger as follows:

4826-5580-0170.v7

a.   That Smashburger, its agents, servants, employees, successors, assigns and attorneys and any related companies, and all persons in active concert or participation with one or more of them, be permanently enjoined and restrained from unlawfully using the marks TRIPLE DOUBLE, SMASHBURGER TRIPLE DOUBLE, BACON TRIPLE DOUBLE, or PUB TRIPLE DOUBLE, or any other mark that contains the term "TRIPLE DOUBLE" or is confusingly similar to the Registered Marks;

b.   For a preliminary injunction and a permanent injunction enjoining and restraining Smashburger, and its directors, officers, agents, servants, employees, representatives, successors, assigns and any person acting at their request or direction or in active concert or participation with them, including but not limited to their franchisees, or any company related to Smashburger, from using in California the marks TRIPLE DOUBLE, SMASHBURGER TRIPLE DOUBLE BACON TRIPLE DOUBLE, or PUB TRIPLE DOUBLE, or any other mark that contains the term "TRIPLE DOUBLE" or is likely to dilute the Registered Marks;

c.   For a preliminary injunction and a permanent injunction enjoining and restraining Smashburger, and its directors, officers, agents, servants, employees, representatives, successors, assigns and any person acting at their request or direction or in active concert or participation with them, including but not limited to their franchisees, or any company related to Smashburger, from making any statement or representation that declares or suggests that Smashburger's TRIPLE DOUBLE Burgers contain "Double the Beef";

31

4826-5580-0170.v7

d.   For an order requiring Smashburger to engage in corrective advertising to correct any misperceptions resulting from its false advertising;

e.   For an award of compensatory damages in an amount to be determined at trial;

f.   For a finding that this is an exceptional case under the Lanham Act;

g.   For treble damages pursuant to 15 U.S.C. § 1117;

h.   For exemplary damages as authorized by law;

i.   For an award of reasonable attorney fees, investigatory fees and expenses; and

j.   For any such other relief that the circumstances may require and that the Court deems just and proper.

Dated:  September 21, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP
CAROLYN S. TOTO
JEFFREY D. WEXLER
SARKIS A. KHACHATRYAN

By _____/s/ Carolyn S. Toto_____
       Carolyn S. Toto
Attorneys for Plaintiff and
Counterdefendant In-N-Out Burgers

32

## **DEMAND FOR JURY TRIAL**

Plaintiff In-N-Out Burgers hereby demands a jury trial, as provided by Rule 38 of the Federal Rules of Civil Procedure, on all claims that are triable to a jury.


Dated:  September 21, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP
CAROLYN S. TOTO
JEFFREY D. WEXLER
SARKIS A. KHACHATRYAN


By _____/s/ Carolyn S. Toto_____
              Carolyn S. Toto
Attorneys for Plaintiff and
Counterdefendant In-N-Out Burgers

33

4826-5580-0170.v7