CAROLYN S. TOTO (SBN 233825)
carolyn.toto@pillsburylaw.com
JEFFREY D. WEXLER (SBN 132256)
jeffrey.wexler@pillsburylaw.com
SARKIS A. KHACHATRYAN (SBN 293991)
sarkis.khachatryan@pillsburylaw.com
PILLSBURY SHAW WINTHROP PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406
Telephone: (213) 488-7100
Facsimile No.: (213) 629-1033

Attorneys for Plaintiff and Counterdefendant
In-N-Out Burgers

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN-N-OUT BURGERS, a California corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>SMASHBURGER IP HOLDER LLC, a Delaware limited liability company; and SMASHBURGER FRANCHISING LLC, a Delaware limited liability company,<br><br>            Defendants. | Case No. 8:17-cv-1474-JVS-DFM<br><br>**PLAINTIFF AND COUNTERDEFENDANT IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PORTIONS OF SIXTH AFFIRMATIVE DEFENSE OF UNCLEAN HANDS OF DEFENDANTS AND COUNTERCLAIMANTS SMASHBURGER IP HOLDER LLC AND SMASHBURGER FRANCHISING LLC** |
| SMASHBURGER IP HOLDER LLC, and SMASHBURGER FRANCHISING LLC,<br><br>            Counterclaimants,<br><br>      vs.<br><br>IN-N-OUT BURGERS,<br><br>            Counterdefendant. | Date:        December 17, 2018<br>Time:        1:30 p.m.<br>Courtroom: 10C<br><br>Judge:  Hon. James V. Selna |

4825-8115-4939.v1

PLAINTIFF IN-N-OUT BURGERS' MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
Case No 8:17-cv-1474-JVS-DFM

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

INTRODUCTION .......................................................................................... 1

4

STATEMENT OF FACTS ............................................................................. 3

5

LEGAL STANDARD .................................................................................... 4

6

ARGUMENT ................................................................................................. 7

7

I.    THE COURT SHOULD STRIKE DEFENDANTS' SIXTH

8    AFFIRMATIVE DEFENSE OF UNCLEAN HANDS BASED UPON
FALSE ADVERTISING BECAUSE DEFENDANTS HAVE NOT

9    ADEQUATELY PLED FALSITY. .................................................... 7

10        A.    In-N-Out's Advertising that Its Beef has "No Additives, Fillers or
Preservatives" Cannot Reasonably be Interpreted as a

11        Representation that In-N-Out's Beef Comes from Cattle that
Have Never been Given Antibiotics. ....................................7

12        B.    In-N-Out's Statements as to Freshness are Not Representations as
to Whether Its Food is Healthy, Nor do Such Statements Make

13        Comparisons to Competitors................................................10

14  II.   THE COURT SHOULD STRIKE DEFENDANTS' SIXTH

15    AFFIRMATIVE DEFENSE BECAUSE THE CONDUCT ALLEGED
IS (1) NOT SUFFICIENTLY RELATED TO IN-N-OUT'S FALSE
ADVERTISING CLAIM OR (2) SUFFICIENTLY EGREGIOUS. .............. 12

16

17        A.    The Advertising by In-N-Out Alleged in the Sixth Affirmative
Defense is Not the Same Type of Conduct as the Advertising by

18        Defendants Alleged in the SAC..........................................13

19        B.    The Advertising by In-N-Out Alleged in the Sixth Affirmative
Defense is Not Sufficiently Egregious to Support a Defense of

20        Unclean Hands. ....................................................................15

21  III.  DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE SHOULD BE
STRICKEN TO AVOID THE PREJUDICE OF UNNECESSARY

22    DISCOVERY. ................................................................................ 17

CONCLUSION................................................................................ 18

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*578539 B.C., Ltd. v. Kortz,*
No. CV-14-04375-MMM (MANx),
2015 WL 12670488 (C.D. Cal. Apr. 10, 2015)..................................................5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..........................................................................1, 4, 5, 7

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................1, 4, 5, 7, 10

*Bly-Magee v. California,*
236 F.3d 1014 (9th Cir. 2001)...........................................................................6

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.,*
258 F.R.D. 663 (W.D. Wash. 2009)................................................................14

*Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City,*
383 F.3d 110, 129 (3d Cir. 2004).....................................................................15

*CTF Dev., Inc. v. Penta Hospitality, LLC,*
No. C-09-0249 WHA, 2009 WL 3517617 (N.D. Cal. 2009).............................5

*Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.,*
No. EDCV 11-197 RSWL,
2011 WL 3809933 (C.D. Cal. Aug. 25, 2011) ..................................................6

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,*
890 F.2d 165 (9th Cir. 1989)...........................................................................12

*Ellenburg v. Brockway, Inc.,*
763 F.2d 1091 (9th Cir. 1985).........................................................................13

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
575 F.3d 1312 (Fed. Cir. 2009).........................................................................6

*Fantasy, Inc. v. Fogerty,*
984 F.2d 1524 (9th Cir. 1993),
*rev'd on other grounds,* 510 U.S. 517 (1994) ..............................................5, 17

*Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys., LLC,*
350 F.3d 1327 (Fed. Cir. 2003).........................................................................6

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,*
826 F.2d 837 (9th Cir. 1987)...........................................................................12

*Gonzalez v. Preferred Freezer Servs., LBF, LLC,*
No. CV-12-3467-ODW-FMO,
2012 WL 2602882 (C.D. Cal. July 5, 2012) .....................................................5

-ii-

PLAINTIFF IN-N-OUT BURGERS' MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
Case No 8:17-cv-1474-JVS-DFM

4825-8115-4939.v1

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC,*
  No. C 14-0437 CW, 2016 WL 304764 (N.D. Cal. Jan. 26, 2016)...........6, 9, 10

*Kashwere USAJPN LLC v. Costco Wholesale Corp.,*
  CV 13-06940-BRO (MANx),
  2013 WL 12114617 (C.D. Cal. Dec. 23, 2013) .............................5, 6

*Monster Cable Prod., Inc. v. Avalanche Corp.,*
  No. C-08-4792 MMC,
  2009 WL 650369 (N.D. Cal. Mar. 11, 2009) ...............................5

*Obesity Research Institute, LLC v. Fiber Research Int'l, LLC,*
  310 F. Supp. 3d 1089 (S.D. Cal. 2018) ....................................13, 14

*Pom Wonderful LLC v. Welch Foods, Inc.,*
  737 F. Supp. 2d 1105 (C.D. Cal. 2010)....................10, 12, 13, 14, 15

*Red v. Kraft Foods, Inc.,*
  No. CV 10-1028-GW (AGRx),
  2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ................................11

*Shechter v. Comptroller of City of New York,*
  79 F.3d 265 (2d Cir. 1996).................................................5

*Smith v. Allstate Ins. Co.,*
  160 F. Supp. 2d 1150 (S.D. Cal. 2001) .....................................6

*Spann v. J.C. Penney Corp.,*
  No. SACV-12-0215-FMO-RNBx,
  2015 WL 11072165 (C.D. Cal. July 16, 2015) ...............................5

*State of Cal. ex rel. State Lands Comm'n v. U.S.,*
  512 F. Supp. 36 (N.D. Cal. 1981) .........................................17

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007)..............................................6

*TrafficSchool.com, Inc. v. Edriver, Inc.,*
  633 F. Supp. 2d 1063 (C.D. Cal. 2008).....................................13

*TrafficSchool.com, Inc. v. Edriver, Inc.,*
  653 F.3d 820 (9th Cir. 2011)..............................................13

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1087 (9th Cir. 2003).............................................6, 10

## REGULATIONS

21 C.F.R. § 101.95 ..........................................................11

21 C.F.R. § 522.88 ..........................................................8

-iii-

# TABLE OF AUTHORITIES
### (cont'd)

Page(s)

## RULES

Federal Rules of Civil Procedure
    Rule 8..............................................................................................1, 4, 5, 7, 9
    Rule 9(b)............................................................................................1, 6, 10
    Rule 12(f)......................................................................................1, 4, 5, 6, 16

## MISCELLANEOUS

Food & Drug Admin., Center for Food Safety and Applied Nutrition,
    *Guidance for Industry, A Labeling Guide for Restaurants and
    Other Retail Establishments Selling Away-From-Home Foods,*
    2008 WL 2155726 (F.D.A.) (Apr. 2008) .....................................................11

*Webster's Ninth New Collegiate Dictionary* (Merriam-Webster 1987) ....................8

4825-8115-4939.v1

### INTRODUCTION

In its Second Amended and Supplemental Complaint (the "SAC") [Dkt. 117] filed on September 21, 2018, Plaintiff and Counterdefendant In-N-Out Burgers ("In-N-Out") alleged that Defendants and Counterclaimants Smashburger IP Holder LLC and Smashburger Franchising LLC (collectively, "Defendants") are falsely advertising their Triple Double hamburger as containing "Double the Beef" when the burger's two patties together contain the same amount of beef as the single patty of Defendants' regular hamburgers.  In the Sixth Affirmative Defense of their Amended Answer [Dkt. 130] filed on November 2, 2018, Defendants assert that In-N-Out's claim for false advertising is barred by unclean hands because In-N-Out has itself allegedly engaged in false advertising.  In-N-Out respectfully moves the Court pursuant to Fed. R. Civ. P. 12(f) to strike this portion of the Sixth Affirmative Defense.

As an initial matter, the false advertising allegations in the Sixth Affirmative Defense must be stricken because the Answer on its face fails to show that In-N-Out's alleged advertising claims are plausibly false as required under Fed. R. Civ. P. 8 and the *Twombly/Iqbal* pleading standards, let alone plead such falsity with particularity under Fed. R. Civ. P. 9(b).  Defendants allege that: (1) In-N-Out's claim that its meat has "No Additives, Fillers or Preservatives" "is false and/or misleading since its meat contains antibiotics"; and (2) In-N-Out's claims concerning the "freshness" of its products "suggest to prospective customers that [In-N-Out's] food is healthy, or at least a healthier alternative to other fast food restaurants," but "that is false as [In-N-Out's] food is not healthy."  Dkt. 130 at 14:23 – 15:7.  These allegations fail as a matter of law.  First, antibiotics are not "additives, fillers, or preservatives" – antibiotics are administered to live cattle, and additives, fillers, and preservatives are added to beef after it has been processed – and Defendants have not alleged any facts that suggest that a reasonable consumer could interpret In-N-Out's advertising in this manner; furthermore, FDA regulations ensure that beef does

-1-

not "contain[] antibiotics."  Second, while fresh products are indisputably more healthy than spoiled products, Defendants have not alleged any facts that suggest that a reasonable consumer would think that burgers and fries are "healthy" simply because they are made from fresh products.

Furthermore, the false advertising allegations in the Sixth Affirmative Defense should be stricken because an unclean hands defense based on false advertising must (1) be directed to advertising of the same type, and (2) assert egregious conduct.  In-N-Out's false advertising claim against Defendants is based upon their advertising statements directed to *quantity*: Defendants falsely claim that the ***two 2.5-ounce patties*** of their Triple Double burgers contain "Double the Beef" of the ***single 5-ounce patty*** of their regular burgers.  On the other hand, Defendants' Sixth Affirmative Defense is far removed from the issue of quantity, as it reaches at: (1) the possibility that cattle may have received antibiotic treatment during their ranch lifetime, prior to the In-N-Out ground beef process; and (2) the healthfulness of In-N-Out's products.  Defendants' defense is thus not directed to the same type of advertising detailed in In-N-Out's false advertising claim.  Additionally, the Sixth Affirmative Defense fails to assert egregious conduct.  The Sixth Affirmative Defense at most asserts that consumers might draw impressions, albeit unreasonable impressions, from In-N-Out's advertising.  This falls significantly short of adequately asserting that In-N-Out's advertising is false and constitutes egregious conduct.[1]

Because Defendants' Sixth Affirmative Defense does not allege facts sufficient to show any false advertising by In-N-Out – much less the type of false advertising that would be necessary to prove that In-N-Out has unclean hands precluding it from pursuing its claim for false advertising – the Court should strike

---

[1] Furthermore, because Defendants prominently advertise their beef as "fresh," *see* SAC [Dkt. 117], ¶¶ 53, 55-56, Exs. DD, FF, GG, KK, they cannot reasonably contend that it is egregious to advertise products as "fresh."

that defense insofar as it is based on alleged false and deceptive advertising.[2]
Striking such defense would save the time and resources of the parties and the Court by, *inter alia*, preventing Defendants from bootstrapping discovery to a bare and unsupported defense.

## STATEMENT OF FACTS

In-N-Out filed its original Complaint (the "Complaint") [Dkt. 1] on August 28, 2017, its First Amended Complaint (the "FAC") [Dkt. 15] on October 20, 2017, and its SAC on September 21, 2018. The original Complaint and the First Amended Complaint asserted claims of trademark infringement, unfair competition, and trademark dilution under both federal and California law against Defendants. More specifically, In-N-Out alleged that it owns a family of marks, which share a common theme of a number followed by a number, comprised of the marks DOUBLE-DOUBLE, TRIPLE TRIPLE, QUAD QUAD, 2 X 2, 3 X 3, and 4 X 4, each of which is registered federally and with the state of California. *See* FAC [Dkt. 15], ¶¶ 11-16. In-N-Out further alleged that Defendants have committed trademark infringement, unfair competition, and trademark dilution by using TRIPLE DOUBLE marks in connection with its hamburgers. *See id.*, ¶¶ 50-94.

In a September 20, 2018 Order [Dkt. 115], the Court granted In-N-Out's motion for leave to file the SAC. The SAC added allegations, and a false advertising claim under the Lanham Act, based upon Defendants' use of "Double the Beef" taglines (such as "Triple the Cheese, Double the Beef in Every Bite," "Triple the Cheese, Double the Beef, Triple the Options," and "Classic Smash™ Beef Build with triple the cheese & double beef in every bite"). *See* SAC [Dkt. 117], ¶¶ 1, 51-63, 79-87. The SAC alleged that these "Double the Beef" taglines are

---

[2] In-N-Out does not move to strike the last sentence of the Sixth Affirmative Defense, which is based on alleged fraud on the PTO.

false and misleading because the Triple Double burgers contain the *same* amount of beef as Defendants' regular-sized burgers, not *twice* the amount of beef.  *See id.*

On October 4, 2018, Defendants filed their initial Answer [Dkt. 124] to the SAC, wherein the Sixth Affirmative Defense alleged unclean hands based upon a laundry list of alleged advertising claims by In-N-Out.  *See* Dkt. 124 at 14:23 – 15:10.  On October 15, 2018 the parties met and conferred about In-N-Out's intent to file a motion to strike that defense pursuant to Rule 12(f), as it was unreasonably excessive, lacking basis, and wholly unrelated to In-N-Out's false advertising claims.  On November 2, 2018, Defendants filed an Amended Answer [Dkt. 130], which revised the Sixth Affirmative Defense to allege the following:

> [In-N-Out's] claims for relief are barred in whole or in part due to [In-N-Out's] own unclean hands.  In particular, [In-N-Out] claims that its meat has "No Additives, Fillers or Preservatives."  Further touting the control [In-N-Out] has over the entire meat process, Plaintiff claims that the cattle it uses is [*sic*] "selected especially for In-N-Out Burger." On information and belief, however, In-N-Out's claim that its meat has no additives, fillers or preservatives is false and/or misleading since its meat contains antibiotics.  And [In-N-Out] knows this, given the control it claims to exercise over its cattle.  In addition to making claims regarding its meat, [In-N-Out] also makes numerous claims regarding the "freshness" of its products.  [In-N-Out's] claims regarding its meat, as well as its claims regarding "freshness," suggest to prospective customers that [In-N-Out's] food is healthy, or at least a healthier alternative to other fast food restaurants.  On information and belief, however, that is false as [In-N-Out's] food is not healthy.  Finally, [In-N-Out's] fraud on the USPTO constitutes unclean hands.

Amended Answer [Dkt. 130] at 14:21 – 15:8.  On November 5, 2018, the parties met and conferred about Defendants' Sixth Affirmative Defense but were unable to reach any resolution.

## LEGAL STANDARD

Under Rule 12(f), "the court may strike from a pleading an insufficient defense."  Fed. R. Civ. P. 12(f).  Rule 8 mandates for pleadings "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  *Twombly* and *Iqbal* apply with equal force to affirmative

-4-

defenses. *See, e.g., 578539 B.C., Ltd. v. Kortz*, No. CV-14-04375-MMM (MANx), 2015 WL 12670488, at *17 (C.D. Cal. Apr. 10, 2015) ("[t]he rationale underlying *Twombly* and *Iqbal* indicates that it should apply equally to the pleading of affirmative defenses"); *Gonzalez v. Preferred Freezer Servs., LBF, LLC*, No. CV-12-3467-ODW-FMO, 2012 WL 2602882, at *2 (C.D. Cal. July 5, 2012) ("the reasoning in [*Twombly* and *Iqbal*] also applies in the context of affirmative defenses") (internal quotes omitted).

For a pleading of an affirmative defense to be sufficient, it must give plaintiff fair notice of the defense. *See 578539 B.C., Ltd.*, 2015 WL 12670488 at *8; *CTF Dev., Inc. v. Penta Hospitality, LLC*, No. C-09–02429 WHA, 2009 WL 3517617, *8 (N.D. Cal. 2009) ("Under the *Iqbal* standard, the burden is on the defendant to proffer sufficient facts and law to support an affirmative defense, and not on the plaintiff to gamble on interpreting an insufficient defense in the manner defendant intended."). Fair notice also prevents the parties from wasting resources fighting over meritless issues. *See, e.g., Spann v. J.C. Penney Corp.*, No. SACV-12-0215-FMO-RNBx, 2015 WL 11072165, at *3 (C.D. Cal. July 16, 2015) (the application of the *Twombly/Iqbal* standard to affirmative defenses is "consistent with *Iqbal*'s admonition that fair notice pleading under Rule 8 is not intended to give parties free license to engage in unfounded fishing expeditions on matters for which they bear the burden of proof at trial").

"'[D]efenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy.'" *Monster Cable Prod., Inc. v. Avalanche Corp.,* No. C-08-4792 MMC, 2009 WL 650369, at *1 (N.D. Cal. Mar. 11, 2009) (*quoting Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996)). The purpose of a Rule 12(f) motion is to avoid spending unnecessary time and money litigating spurious issues. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994); *see also Kashwere USAJPN LLC v. Costco Wholesale Corp.*, CV 13-06940-BRO

-5-

PLAINTIFF IN-N-OUT BURGERS' MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
Case No 8:17-cv-1474-JLS-DFM

4825-8115-4939.v1

1  (MANx), 2013 WL 12114617, at *5 (C.D. Cal. Dec. 23, 2013) (Rule 12(f) motion

2  may allow a court to strike from a pleading derogatory allegations).

3      Furthermore, Rule 9(b) requires that in alleging fraud, "a party must state with

4  particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). *See*

5  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009);

6  *Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344

7  (Fed. Cir. 2003).  To that end, the allegations must contain "an account of the time,

8  place, and specific content of the false representations as well as the identities of the

9  parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th

10  Cir. 2007); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

11  2003) (allegations of fraud must be supported by the "who, what, when, where, and

12  how" of the misconduct charged) (citation omitted).  Additionally, "the plaintiff

13  must plead facts explaining why the statement was false when it was made." *Smith*

14  *v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted).

15      Because defenses based on false or deceptive advertising sound in fraud, such

16  defenses carry a heavy burden of proof.  *See Heartland Payment Sys., Inc. v.*

17  *Mercury Payment Sys., LLC*, No. C 14-0437 CW, 2016 WL 304764, at *11 (N.D.

18  Cal. Jan. 26, 2016) ("because [defendant's] unclean hands defense [based on false

19  advertising] alleges fraud, it must also be plead with the particularity required by

20  Rule 9(b)").  "Allegations of fraud must be specific enough to give 'defendants

21  notice of the particular misconduct which is alleged to constitute the fraud charged

22  so that they can defend against the charge and not just deny that they have done

23  anything wrong.'" *Desert European Motorcars, Ltd. v. Desert European Motorcars,*

24  *Inc.*, No. EDCV 11-197 RSWL, 2011 WL 3809933, at *7 (C.D. Cal. Aug. 25, 2011)

25  (*quoting Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

26

27

28

# ARGUMENT

## I. THE COURT SHOULD STRIKE DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE OF UNCLEAN HANDS BASED UPON FALSE ADVERTISING BECAUSE DEFENDANTS HAVE NOT ADEQUATELY PLED FALSITY.

Under Rule 8 and *Twombly/Iqbal*, Defendants have the burden of alleging sufficient facts to support an affirmative defense. Under Rule 9(b), Defendants must state particularized facts supporting allegations of fraud. Defendants' Sixth Affirmative Defense fails to satisfy either Rule 8 or Rule 9(b) because Defendants have not set forth facts that are sufficient to allow the Court to draw a reasonable inference that there is anything false or deceptive about the two types of advertising claimed by Defendants to be false. *See Iqbal*, 556 U.S. at 663. Accordingly, the Sixth Affirmative Defense must be stricken to the extent that it is based on alleged false advertising.

### A. In-N-Out's Advertising that Its Beef has "No Additives, Fillers or Preservatives" Cannot Reasonably be Interpreted as a Representation that In-N-Out's Beef Comes from Cattle that Have Never been Given Antibiotics.

Defendants allege that: (1) In-N-Out "claims that its meat has 'No Additives, Fillers or Preservatives"; and (2) "In-N-Out's claim that its meat has no additives, fillers or preservatives is false and/or misleading since its meat contains antibiotics."[3] Amended Answer [Dkt. 130] at 14:24 – 15:2. There is no basis for Defendants' contention that In-N-Out's advertising, which states its ground beef has no additives, fillers or preservatives, represents an absence of antibiotics in the cattle-raising process. Defendants are also wrong as a matter of law in claiming that In-N-Out's beef – or any beef sold in the United States – "contains antibiotics."

---

[3] Defendants also allege that In-N-Out states that it exercises control over its beef cattle and therefore knows that its cattle may have been treated with antibiotics. *See* Amended Answer [Dkt. 130] at 14:25 – 15:2. In-N-Out does not dispute that Defendants have sufficiently alleged In-N-Out's knowledge about the source of its beef, but nothing in this statement suggests the cattle are antibiotic-free.

1    First, there is no basis for Defendants' assertion that In-N-Out's claim that its

2   beef has no additives, fillers or preservatives can be reasonably interpreted as a

3   representation that the cattle used for In-N-Out's burgers have never been treated

4   with antibiotics.  Simply put, antibiotics apply to the field of treating living cattle.

5   On the other hand, additives, fillers and preservatives apply to the field of treating

6   processed meat.  These are separate fields.  *See Webster's Ninth New Collegiate*

7   *Dictionary* (Merriam-Webster 1987)[4] at 55 (defining "additive" as "a substance

8   added to another in relatively small amounts to impart or improve desirable

9   properties or suppress undesirable properties"); *id.* at 462 (defining "filler" as "a

10   substance added to a product (as to increase bulk, weight, viscosity, opacity, or

11   strength"); *id.* at 931 (defining "preservative" as "something that preserves or has

12   the power of preserving; *specif*: an additive used to protect against decay,

13   discoloration, or spoilage").  Antibiotics administered to living cattle simply do not

14   constitute additives, fillers or preservatives under the common understanding of

15   these terms.  Defendants have failed to plead facts that would demonstrate anything

16   to the contrary.  Thus, nothing in In-N-Out's advertising can plausibly be understood

17   as representing whether its beef come from cattle that might have been treated with

18   antibiotics.

19    Second, in asserting that In-N-Out's advertising "is false and/or misleading

20   since its meat contains antibiotics," Amended Answer [Dkt. 130] at 14:27 – 15:1,

21   Defendants ignore the regulatory provisions that are designed to ensure that all

22   antibiotics are out of the system of cattle before they are slaughtered.  *See*, *e.g.*, 21

23   C.F.R. § 522.88 (animals treated with amoxicillin "must not be slaughtered for food

24   during treatment and for 25 days after the last treatment").  As explained in a

25   question-and-answer sheet from the USDA's Food Safety and Inspection Service:

26

27   _____

[4] For the Court's convenience, In-N-Out is filing a Notice of Lodging of Authorities

28   that includes the cited pages from this dictionary.

**Q: If an antibiotic is used in food animal production, what safeguards are in place to ensure that meat, poultry, and egg products on the market are free of illegal antibiotic residues?**

A: For each antibiotic used in livestock or poultry production, an FDA-approved withdrawal period is observed before the food animals go to slaughter and products from these animals enter the food supply. This is known as the "withdrawal time." Withdrawal times reflect the amount of time necessary for animal tissue to process a drug so that the amount remaining in the tissues has decreased to a safe level. Every FDA-approved drug for food animals has a withdrawal time printed on the product label. Additionally, withdrawal time charts for different species and antibiotics are widely available from producer groups and cooperative agricultural extension websites. To ensure compliance with these guidelines and provide confidence in the food supply, each year, FSIS tests thousands of meat, poultry and egg products under the U.S. National Residue Program (NRP).

Request for Judicial Notice ("RJN"), Ex. A

(https://www.fsis.usda.gov/wps/wcm/connect/22dd2ec9-2e85-46f8-8d81-32456616fbbf/QandA2018.pdf?MOD=AJPERES).

Thus, Defendants' claim that In-N-Out's "meat contains antibiotics" is inconsistent with current USDA and FDA standards. Notably, the FDA permits the residual presence of antibiotics from treated living cattle as it may be detected in processed meat. *See id.* Even so, any possible presence of residual antibiotics in In-N-Out's beef does not directly conflict with In-N-Out's statement that its beef contains "No Additives, Fillers or Preservatives," because In-N-Out is not adding any additives, fillers, or preservatives to its beef, as these terms are reasonably understood.

Defendants have mischaracterized and extrapolated In-N-Out's statements to reach an implausible conclusion that is simply not supported by any facts. It is clear that Defendants have alleged no facts that could allow any reasonable inference that the identified statements constitute false or deceptive advertising by In-N-Out. *See*, *e.g.*, *Heartland Payment Sys.*, 2016 WL 304764, at *4, 11 (striking unclean hands defense under Rule 8 because what was pled failed to support allegations that pricing claim was false or misleading). Because Defendants' unclean hands allegations are insufficient to meet Rule 8, these allegations certainly fail to meet the

-9-

4825-8115-4939.v1

PLAINTIFF IN-N-OUT BURGERS' MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
Case No 8:17-cv-1474-JLS-DFM

particularity requirements of Rule 9(b).  *See Vess*, 317 F.3d at 1106 (allegations of fraud must be supported by the "who, what, when, where, and how" of the misconduct charged) (citation omitted); *Heartland Payment Sys.*, No. C 14-0437 CW, 2016 WL 304764, at *11 ("because [defendant's] unclean hands defense [based on false advertising] alleges fraud, it must also be plead with the particularity required by Rule 9(b)").  Defendants' Sixth Affirmative Defense is simply not "enough to raise a right to relief above the speculative level" with regard to the claim as to additives, fillers and preservatives, *Twombly*, 550 U.S. at 555, and the Court should therefore strike the portion of the Sixth Affirmative Defense that is based on alleged false advertising as to the absence of additives, fillers, and preservatives.

### B. In-N-Out's Statements as to Freshness are Not Representations as to Whether Its Food is Healthy, Nor do Such Statements Make Comparisons to Competitors.

Defendants further allege that: (1) In-N-Out "also makes numerous claims regarding the 'freshness' of its products"; (2) In-N-Out's claims regarding its meat, as well as its claims regarding "freshness," "suggest to prospective customers that [In-N-Out's] food is healthy, or at least a healthier alternative to other fast food restaurants"; and (3) "that is false as [In-N-Out's] food is not healthy."  Amended Answer [Dkt. 130] at 15:2-7.

On their face, advertising claims concerning freshness do not equate to claims concerning healthfulness, and Defendants make no allegations to establish such a causal link.  *See Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1112 (C.D. Cal. 2010) (finding defendant's unclean hands defense to be inadequately pled because plaintiff's advertisement did not characterize or imply whether its product was from concentrate).  At most, consumers might reasonably believe that fresh products are more healthy than spoiled products, which might carry the risk of food poisoning.  Any such implication would, however, indisputably be truthful.

-10-

Indeed, FDA regulations demonstrate that the term "fresh" is not a claim concerning healthfulness.  Under 21 C.F.R. § 101.95, "[t]he term 'fresh,' when used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation." *Id.*  Section 101.95 appears in 21 C.F.R. Part 101, Subpart F, titled "Specific Requirements for ***Descriptive Claims That Are Neither*** Nutrient Content Claims nor ***Health Claims***."  *Id.* (emphasis added).  In a Guidance, the FDA has confirmed that "***[f]resh***,' as defined in 21 CFR 101.95 ***is not*** a nutrient content claim or ***a health claim*** and use of the term does not trigger nutrition labeling requirements."  Food & Drug Admin., Center for Food Safety and Applied Nutrition, *Guidance for Industry, A Labeling Guide for Restaurants and Other Retail Establishments Selling Away-From-Home Foods*, 2008 WL 2155726, *12 (F.D.A.) (Apr. 2008) (emphasis added).

The court rejected a contention similar to Defendants' in *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW (AGRx), 2012 WL 5504011, *2-4 (C.D. Cal. Oct. 25, 2012), a consumer class action lawsuit where the plaintiffs alleged that use of the truthful phrase "Made with Real Vegetables" "'suggests the product is *healthy*.'"  *Id.* at *3.  The court explained that "a number of courts have dismissed UCL claims as a matter of law . . . especially where . . . the claim alleges that a consumer will read a true statement on a package and will then disregard 'well-known facts of life' and assume things about the products *other than* what the statement actually says."  *Id.*  Thus, the court found that "[t]he fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables."  *Id.* (footnote omitted).  Here, too, Defendants cannot plausibly allege that consumers will disregard "well-known facts of life" and believe that In-N-Out is suggesting its burgers and fries are "healthy" simply because they are made with fresh products.

-11-

PLAINTIFF IN-N-OUT BURGERS' MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
Case No 8:17-cv-1474-JLS-DFM

4825-8115-4939.v1

1        To In-N-Out's knowledge, no authority suggests that a company, by

2    advertising about its own products without making reference to any competitors'

3    products, is somehow committing false advertising by suggesting that the

4    competitors' products are inferior to its own.  In that regard, however, the SAC

5    shows that Defendants themselves repeatedly advertise their products as "fresh," *see*

6    SAC [Dkt. 117], ¶¶ 53, 55-56, Exs. DD, FF, GG, KK, and they hold Trademark Reg.

7    No. 4,213,598 for the mark "SMASHED FRESH.  SERVED DELICIOUS," RJN,

8    Ex. B.  Because Defendants advertise their own products as "fresh," they are in no

9    position to argue either that (1) In-N-Out's use of the term "fresh" constitutes false

10   advertising or (2) consumers could somehow interpret In-N-Out's advertising of its

11   products as fresh (and, allegedly, healthy) as meaning that competitors' products are

12   not fresh (and, thus, not healthy).

13       Because Defendants have alleged no facts that could allow any reasonable

14   inference that the identified statements about freshness constitute false or deceptive

15   advertising by In-N-Out, the Sixth Affirmative Defense based on alleged false

16   advertising fails to meet the pleading requirements of both Rule 8 and Rule 9 and

17   should be stricken insofar as it makes allegations concerning freshness or health.

18
19
20   **II.  <u>THE COURT SHOULD STRIKE DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE BECAUSE THE CONDUCT ALLEGED IS (1) NOT SUFFICIENTLY RELATED TO IN-N-OUT'S FALSE ADVERTISING CLAIM OR (2) SUFFICIENTLY EGREGIOUS.</u>**

21       To prevail on a defense of unclean hands, a defendant must demonstrate by

22   clear and convincing evidence that (1) the plaintiff's conduct is inequitable, and (2)

23   the conduct relates to the subject matter of the plaintiff's claims.  *See Fuddruckers,*

24   *Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987).  The unclean

25   hands doctrine bars relief to a party that has dirtied its hands in acquiring the right

26   presently asserted.  *See Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165,

27   173 (9th Cir. 1989).  Thus, "the relevant inquiry is 'not [whether] the plaintiff's

28   hands are dirty, but [whether] [s]he dirtied them in acquiring the right [s]he now

asserts, or [whether] the manner of dirtying renders inequitable the assertion of such rights against the defendants.'" *Pom Wonderful LLC*, 737 F. Supp. 2d at 1110 (*quoting Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985)).  Most commonly, courts have found that unclean hands bars relief in Lanham Act cases when the plaintiff has engaged in precisely the same type of conduct about which it complains.  *TrafficSchool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1084 (C.D. Cal. 2008).

### A. The Advertising by In-N-Out Alleged in the Sixth Affirmative Defense is Not the Same Type of Conduct as the Advertising by Defendants Alleged in the SAC.

The Court should strike the allegations concerning false advertising included in the Sixth Affirmative Defense because the grounds asserted by Defendants for unclean hands, which relate to the quality and freshness of In-N-Out's products, are wholly outside the scope of In-N-Out's false advertising claim, which is directed to the quantity of beef in Smashburger's Triple Double products.  The unclean hands defense can be applied "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation."  *Pom Wonderful*, 737 F. Supp. 2d at 1111 (*quoting TrafficSchool.com, Inc.*, 633 F. Supp. 2d at 1084) (internal quotation marks deleted).

Thus, the courts have repeatedly rejected attempts to assert unclean hands as a defense where the conduct underlying the defense differs from the conduct underlying the affirmative claim for false advertising.  *See*, *e.g.*, *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 833-34 (9th Cir. 2011) (unclean hands defense not applicable where plaintiff sued defendant for registering domain name "dmv.org" such that consumers believed defendant's site to be affiliated with the Department of Motor Vehicles, but defendant's evidence showed that plaintiff merely registered similar domain names using "dmv" acronym without other actions); *Obesity Research Institute, LLC v. Fiber Research Int'l, LLC*, 310 F. Supp. 3d 1089, 1130-31 (S.D. Cal. 2018) (denying summary judgment based on unclean

-13-

hands where declaratory judgment plaintiff failed to show that defendant's alleged false advertising of its product related to the same study as to which plaintiff's false advertising claim was based); *Campagnolo S.R.L. v. Full Speed Ahead, Inc.,* 258 F.R.D. 663, 665-66 (W.D. Wash. 2009) (striking defendant's unclean hands defense that alleged plaintiff falsely advertised the weight of its own cranksets when plaintiff's false advertising claim was based only on defendant's representations regarding the stiffness-to-weight ratio of plaintiff's crankset).

In *Pom Wonderful*, the plaintiff Pom alleged that the defendant "Welch misleads consumers to believe that its WGP product contains more pomegranate juice than it actually does." *Pom Wonderful*, 737 F. Supp. 2d at 1110. The court found that "[t]hree of Welch's unclean hands claims do not appear sufficiently related to Pom's claims in the lawsuit: (1) that Pom deceives consumers by obscuring the term 'from concentrate' on its bottles and in its advertisements; (2) that Pom's juice blends contain water, an ingredient which Pom does not disclose in the ingredient list; and (3) that Pom uses an advertisement that purports to show Pom's juice going straight from whole fruit into bottles (from 'Tree to Bottle'), when in fact the juice goes through many more steps prior to being bottled (including reducing the pomegranate juice to a concentrate, freezing it, and reconstituting it)." *Id.* (footnote omitted). The court found that "Welch's allegations regarding Pom's marketing of its juice as not from concentrate, while falling within the broad category of 'consumer deception,' are premised on a different deception, different factual allegations, and different types of advertisements. The relationship between these allegations and Pom's claims is too tenuous to support an unclean hands defense."[5] *Id.* (citations omitted).

---

[5] The court found that Welch's two other claims of unclean hands – that Pom's 100% Pomegranate Juice product contained undisclosed trace elements of elderberry, and that Pom's products contained juices not disclosed in the label – were (continued…)

*Pom Wonderful* is on point by rejecting defendant's unclean hand defense by drawing a sharp distinction between: (1) plaintiff's false advertising claims directed to quantity; and (2) defendant's unclean hands defense involving processing factors and ingredient purity.  Here, too, Defendants' unclean hands defense is distinct from – and wholly unrelated to – In-N-Out's claim for false advertising.  Defendants' Sixth Affirmative Defense alleges that In-N-Out implicitly represents that its beef is antibiotic-free and that its products are healthy.  On the other hand, In-N-Out claims that Defendants deceive consumers by misrepresenting the quantity of beef in their Triple Double products.  Accordingly, apart from failing to meet the requirements for pleading falsity, the Sixth Affirmative Defense should be stricken insofar as it is based on false advertising for this reason alone.

### B. The Advertising by In-N-Out Alleged in the Sixth Affirmative Defense is Not Sufficiently Egregious to Support a Defense of Unclean Hands.

An unclean hands defense must be based on egregious conduct and proven by clear and convincing evidence.  *See Pom Wonderful LLC*, 737 F. Supp. 2d at 1112-13 (although there was evidence that plaintiff's label was misleading, it was not sufficiently "egregious" that it would be inequitable to permit plaintiff to proceed on its own claims against defendant).  "'Because a central concern in an unfair competition case is protection of the public from confusion, courts require clear, convincing evidence of "egregious" misconduct before invoking the doctrine of unclean hands.  Furthermore, the extent of actual harm caused by the conduct in question, either to the defendant or to the public interest, is a highly relevant consideration.'"  *Id.* (quoting *Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004)).

---

(…continued)
sufficiently related to Pom's false advertising claim to support an unclean hands defense.  *See Pom Wonderful*, 737 F. Supp. 2d at 1112.

-15-

Defendants have fallen far short of alleging egregious conduct by In-N-Out. Defendants do not dispute the literal truth of In-N-Out's advertising claims. Instead, they allege that consumers might conceivably interpret In-N-Out's truthful advertising claims as conveying some sort of message that In-N-Out's beef is from cattle that have never been treated with antibiotics, or that its food is "healthy" because it is fresh. Even assuming *arguendo* that In-N-Out's advertising could be interpreted in this manner – and it cannot – the possibility of such interpretations could in no way make In-N-Out's conduct so egregious as to support an unclean hands defense that would bar In-N-Out from pursuing Defendants for advertising claims that are false on their face. Indeed, the fact that Defendants themselves prominently use the term "fresh" in their advertisements, *see* SAC [Dkt. 117], ¶¶ 53, 55-56, Exs. DD, FF, GG, KK, and even hold a registration for the mark "SMASHED FRESH. SERVED DELICIOUS," RJN, Ex. B, demonstrates that they cannot claim that use of the term "fresh" in advertising is egregious.

Turning to potential harm to the public interest, In-N-Out notes that when restaurants in the industry use meat from cattle that was not given antibiotics, those restaurants typically tell consumers that their beef is sourced from cattle that is free of antibiotics. *See, e.g.*, RJN, Ex. C (https://burgerfi.com/) ("[a]t BurgerFi, we never ever settle. That's why we craft our all-natural burgers using only the Top 1% of natural Angus beef, always sourced from the best ranches in the country and free of hormones, steroids and antibiotics"); *id.*, Ex. D (https://www.shakeshack.com/) ("100% all-natural Angus beef, vegetarian fed, humanely raised and source verified. No hormones or antibiotics – EVER. We pride ourselves on sourcing incredible ingredients from like-minded artisanal producers"). It is thus unlikely that consumers would interpret advertising that says nothing about antibiotics as making a representation concerning antibiotics.

4825-8115-4939.v1

## III.  **DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE SHOULD BE STRICKEN TO AVOID THE PREJUDICE OF UNNECESSARY DISCOVERY.**

Defendants' Sixth Affirmative Defense should also be stricken to avoid the significant prejudice to In-N-Out if it were required to engage in burdensome discovery and to otherwise expend time and resources litigating irrelevant issues that would not affect the outcome of this case, and that would further distract from the main issues in the case.  *See*, *e.g., Fantasy, Inc.*, 984 F.2d at 1527 (the purpose of a Rule 12(f) motion is to avoid spending unnecessary time and money litigating spurious issues); *State of Cal. ex rel. State Lands Comm'n v. U.S.*, 512 F. Supp. 36, 38 (N.D. Cal. 1981) ("where [a] motion [to strike] may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken").

Defendants have already used the Sixth Affirmative Defense as an excuse to serve discovery directed at the defense.  Additionally, the history of the Sixth Affirmative Defense readily demonstrates Defendants have no clear basis to assert a reasonable defense.  Defendants' Sixth Affirmative Defense in their original Answer to the SAC asserted that practically every slogan In-N-Out has ever used constituted false advertising, notably with no reference to antibiotics; Defendants' amended Sixth Amended Defense omitted most of the slogans, but added a new issue of antibiotics in a questionable attempt to tenuously connect antibiotics to In-N-Out's claim of "No Additives, Fillers or Preservatives."  Defendants' struggle to find a basis for their unclean hands defense shows their aim to use this defense as a basis for conducting discovery to try to find evidence of false advertising on the back end of discovery, instead of legitimately asserting the defense with the requisite facts on the front end.  It is clear from what is pled in the Sixth Affirmative Defense that Defendants have no such evidence to plead false advertising by In-N-Out.  This discovery violates the proportionality requirement of Rule 26(b) and imposes undue burden and expense on In-N-Out.  Thus, it would promote judicial economy to strike

-17-

PLAINTIFF IN-N-OUT BURGERS' MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
Case No 8:17-cv-1474-JLS-DFM

4825-8115-4939.v1

1  Defendants' Sixth Affirmative Defense, preventing Defendants from using an

2  inadequately pled and legally deficient defense as a basis for conducting discovery.

3  ### CONCLUSION

4       For the reasons stated above, In-N-Out respectfully requests that this Court

5  strike Defendants' Sixth Affirmative Defense of Unclean Hands to the extent that it

6  is based on false advertising, leaving only the last sentence of that defense.

7  Dated:  November 14, 2018              Respectfully submitted,

8                                        CAROLYN S. TOTO
                                         JEFFREY D. WEXLER
9                                        SARKIS A. KHACHATRYAN
                                         PILLSBURY WINTHROP SHAW PITTMAN LLP
10

11                                       By:_____/s/ Carolyn S. Toto_____

12                                              Carolyn S. Toto
                                         Attorneys for Plaintiff and Counterdefendant In-
13                                       N-Out Burgers

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-