1  CAROLYN S. TOTO (SBN 233825)
   carolyn.toto@pillsburylaw.com
2  JEFFREY D. WEXLER (SBN 132256)
   jeffrey.wexler@pillsburylaw.com
3  SARKIS A. KHACHATRYAN (SBN 293991)
   sarkis.khachatryan@pillsburylaw.com
4  PILLSBURY WINTHROP SHAW PITTMAN LLP
   725 South Figueroa Street, Suite 2800
5  Los Angeles, CA  90017-5406
   Telephone: (213) 488-7100
6  Facsimile No.: (213) 629-1033

7  Attorneys for Plaintiff and Counterdefendant
   IN-N-OUT BURGERS

8

9                UNITED STATES DISTRICT COURT

                CENTRAL DISTRICT OF CALIFORNIA
10
                      SOUTHERN DIVISION
11

12 IN-N-OUT BURGERS, a California         Case No. 8:17-cv-1474-JVS-DFM
   corporation,
13                                        **PLAINTIFF AND**
                  Plaintiff,              **COUNTERDEFENDANT IN-N-**
14                                        **OUT BURGERS' MEMORANDUM**
          vs.                             **OF POINTS AND AUTHORITIES**
15                                        **IN SUPPORT OF MOTION FOR**
   SMASHBURGER IP HOLDER LLC, a           **PARTIAL SUMMARY**
16 Delaware limited liability company; and **JUDGMENT RE LIABILITY ON**
   SMASHBURGER FRANCHISING LLC,           **FALSE ADVERTISING CLAIM**
17 a Delaware limited liability company,
                                          **[PUBLICLY FILED VERSION]**
18                Defendants.

19 ──────────────────────────────
   SMASHBURGER IP HOLDER LLC,
20 and SMASHBURGER FRANCHISING          Date:      February 4, 2019
   LLC,                                 Time:      1:30 p.m.
21                                      Courtroom: 10C
                  Counterclaimants,
22                                      Judge:  Hon. James V. Selna
          vs.
23                                      Fact Discovery Cut-Off: Apr. 19, 2019
   IN-N-OUT BURGERS,                    Pre-Trial Conference: Sept. 9, 2019
24                                      Trial Date:        Sept. 24, 2019
                  Counterdefendant.
25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

    A.    Smashburger's Introduction of the Triple Double Burgers with Half-Sized Patties. ............................................................................ 2

    B.    Smashburger's "Double the Beef" Advertisements. ........................... 4

    C.    Smashburger's Competition with In-N-Out. ...................................... 5

    D.    ██████████████████████████████████████ ................ 6

    E.    Smashburger's New Menu in Colorado and Dallas. ........................... 7

PROCEDURAL HISTORY ................................................................................. 8

    A.    The Pleadings, Motions, and Court Orders. ...................................... 8

    B.    Discovery. .......................................................................................... 9

LEGAL STANDARD ........................................................................................ 9

ARGUMENT ................................................................................................... 10

I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON IN-N-OUT'S CLAIM FOR FALSE ADVERTISING. ..................................... 10

    A.    Smashburger's "Double the Beef" Advertisements are Literally False or False by Necessary Implication, and Smashburger's Contentions Contradict Industry Standards and Consumer Expectations. ..................................................................................... 11

        1.    Smashburger's Advertisements are Literally False or False by Necessary Implication Despite Smashburger's Alternative Contention that "Double the Beef" Refers to Two Layers of Beef. ....................................................... 14

        2.    Smashburger's Advertisements are Literally False or False by Necessary Implication Despite Smashburger's Alternative Contention that "Double the Beef" is a Comparison to Smashburger's Smallest Patty Size. ............................... 15

        3.    Smashburger's Advertisements are Literally False or False by Necessary Implication Despite Smashburger's Alternative Contention that "Double the Beef" Refers to Competitors' Burgers. ............................................................... 16

    B.    Because Smashburger's Advertising is Literally False, Deceptiveness is Presumed. ........................................................... 17

-i-

C.      Smashburger's False Advertising is Material. .......................................... 18

D.      Smashburger Caused Its False Advertising to Enter Interstate Commerce. .............................................................................................. 19

E.      In-N-Out is Likely to be Injured as a Result of Smashburger's False Advertising. ............................................................................................. 20

CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................... 10

*Cashmere & Camel Mfrs. Inst. v. Saks Fifth Ave.*,
   284 F.3d 302, 314 (1st Cir. 2002); ........................................... 17

*Castrol Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993) ....................................................... 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................... 10

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*,
   228 F.3d 24 (1st Cir. 2000).......................................................... 12

*Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., Inc.*,
   911 F.2d 242 (9th Cir. 1990) ....................................................... 18

*Devereaux v. Abbey*,
   263 F.3d 1070 (9th Cir. 2001) ..................................................... 10

*Edmiston v. Jordan*,
   98 Civ. 3298 (DLC), 1999 WL 1072492 (S.D.N.Y. Nov. 24, 1999)................... 12

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
   774 F.3d 192 (3d Cir. 2014) ................................................... 12, 15

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
   299 F.3d 1242 (11th Cir. 2002) ................................................... 18

*Mead Johnson & Co. v. Abbott Labs.*,
   201 F.3d 883 (7th Cir.),
   *opinion amended on denial of reh'g*,
   209 F.3d 1032 (7th Cir. 2000) ............................................... 12, 13

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997) ....................................................... 18

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) ..................................................... 10

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Pharm. Co.*,
   290 F.3d 578 (3d Cir. 2002) ............................................. 11, 12, 17

*PBM Prods., LLC v. Mead Johnson & Co.*,
   639 F.3d 111 (4th Cir. 2011) ............................................ 11, 12, 17

-iii-

*Pernod Richard USA, LLC v. Bacardi U.S.A., Inc.,*
653 F.3d 241 (3d Cir. 2011) ................................................. 11, 17

*Pipe Restoration Techs., LLC v. Coast Building & Plumbing, Inc.,*
No. 8:13-cv-00499-JDE, 2018 WL 6012219 (C.D. Cal. 2018) ........................... 20

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
227 F.3d 489 (5th Cir. 2000) ................................................. 17, 18

*POM Wonderful LLC v. Purely Juice, Inc.,*
No. CV-07-02633 CAS (JWJx),
2008 WL 4222045, *11 (C.D. Cal. July 17, 2008) ................................ 18

*Rice v. Fox Broad. Co.,*
330 F.3d 1170 (9th Cir. 2003) ............................................... 10, 18

*Scotts Co. v. United Indus. Corp.,*
315 F.3d 264 (4th Cir. 2002) .................................................. 12

*Sinai v. Bureau of Automotive Repair,*
No. C-92-0274-VRW,
1993 WL 341276, *2 (N.D. Cal. Sept. 1, 1993)................................... 18

*Southland Sod Farms v. Stover Seed Co.,*
108 F.3d 1134 (9th Cir. 1997) .................................... 10, 11, 12, 13, 20

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.,*
648 F. App'x 609, 615 (9th Cir. 2016)......................................... 20, 21

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
497 F.3d 144 (2d Cir. 2007) .................................................. 12

*TrafficSchool.com, Inc. v. Edriver Inc.,*
653 F.3d 820 (9th Cir. 2011) ............................................... 20, 21

## STATUTES

United States Code
Title 15, Section 1125(a) ............................................. 1, 10, 17
Title 15, Section 1125(a)(1)(B) .......................................... 11
Title 15, Section 1127............................................. 19

## RULES

Federal Rules of Civil Procedure
Rule 56(a) ........................................................ 9, 10

## **INTRODUCTION**

Plaintiff and Counterdefendant In-N-Out Burgers ("In-N-Out") respectfully asks the Court to grant summary judgment establishing the liability of Defendants and Counterclaimants Smashburger IP Holder LLC ("Smashburger IP") and Smashburger Franchising LLC (collectively, "Smashburger") on In-N-Out's Third Claim for Relief for false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a).

In-N-Out contends that Smashburger is falsely advertising its Triple Double burgers by using slogans that include the phrase "Double the Beef" or denote two times the beef.  This is false advertising because the Triple Double burgers are made with **two 2.5-ounce beef patties** and therefore contain the same amount of beef as Smashburger's regular burger, which is made with **a single 5.0-ounce beef patty**.  In-N-Out seeks partial summary judgment as to each of the five elements of its claim for false advertising.[1]

First, the "Double the Beef" advertisements are literally false or false by necessary implication because Smashburger's slogan "Double the Beef" represents that Smashburger's Triple Double burgers contain twice the quantity of beef as its regular single-patty burgers, when in actuality they do not.[2]  Smashburger provides only unreasonable contentions as to why the slogan "Double the Beef" could be interpreted otherwise.

Second, Smashburger's "Double the Beef" advertisements are deceptive, *i.e.*, they have actually deceived or have the tendency to deceive a substantial segment of Smashburger's customers.  Literal falsity creates a presumption that the statements actually misled consumers.  Furthermore, the advertisements are deceptive on their

---

[1] In-N-Out does not seek partial summary judgment as to Smashburger's affirmative defenses or In-N-Out's monetary relief.

[2] It appears that Smashburger has recently changed its portion servings in its Colorado and Dallas locations so that the Triple Double Smashburger sold in those restaurants has twice the quantity of beef as the regular single burger.  This motion does not assert falsity as to the use of "Double the Beef" slogans to advertise any such burgers.

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION
FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 8:17-cv-1474-JLS-DFM

4848-5955-2644.v1

1   face because they convey to customers that the Triple Double burgers have double the

2   quantity of beef, when they do not.

3        Third, Smashburger's "Double the Beef" advertising is material, in that it is

4   likely to influence the purchasing decision.  Because consumers rely upon perceived

5   value in deciding what products to purchase, Smashburger's representations that the

6   Triple Double burgers contain twice as much beef as they actually do is likely to cause

7   customers to believe that the price of those burgers is a bargain, inducing them to

8   purchase such burgers.

9        Fourth, Smashburger does not dispute that its "Double the Beef" advertisements

10  have been used in interstate commerce.

11       Fifth, In-N-Out is likely to be injured by Smashburger's false advertising as a

12  result of sales diverted from In-N-Out to Smashburger.  Given the high degree of

13  geographic and customer overlap between In-N-Out restaurants and Smashburger

14  restaurants, it is likely that some customers who came to Smashburger as a result of

15  the "Double the Beef" representations would otherwise have gone to In-N-Out.

16       By bringing this motion, In-N-Out also seeks the Court's determination at this

17  time, well in advance of the expert disclosure deadline, whether Smashburger's false

18  advertising is literally false or false by necessary implication, rather than true but

19  misleading.  If, as In-N-Out contends, the "Double the Beef" slogans are literally false

20  or false by necessary implication, the parties will not need to engage survey experts on

21  the false advertising claim.

## **FACTUAL BACKGROUND**

### A.    **Smashburger's Introduction of the Triple Double Burgers with Half-Sized Patties.**

25       Smashburger issued a July 11, 2017 press release stating that it was adding the

26  "Triple Double" burger to its national menu.  SS 1.  The press release described the

27  Triple Double burger as "the stuff burger dreams are made of . . . two layers of juicy

28  beef, three layers of melted cheese, wrapped in an artisan bun. . . .  It's Smashburger's

-2-

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION
FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 8:17-cv-1474-JLS-DFM

4848-5955-2644.v1

1  beefiest, cheesiest burger to date. . . .” SS 2.  As of September 19, 2017, Smashburger

2  began offering its Bacon Triple Double burger, a Triple Double burger with bacon.

3  SS 3.  On or about May 8, 2018, Smashburger began offering its Pub Triple Double

4  burger, a Triple Double burger on a pretzel bun.  SS 4.

5      According to Smashburger's recipe cards, the Triple Double burger and the

6  Bacon Triple Double burger each have two patties that each weigh **2.5 ounces** prior to

7  cooking.  SS 5.  The Pub Triple Double also contains two patties that each weigh **2.5**

8  **ounces** prior to cooking.  SS 6.

9      The recipe cards for the Triple Double burger and the Bacon Triple Double

10 burger refer to the patties as "**P-BURGER PATTY KID/SMALL (2.5 OZ)**."  SS 7

11 (emphasis added).  Smashburger's Kid/Small burger is made with a single patty that

12 weighs 2.5 ounces prior to cooking.  SS 8.

13     Smashburger's Classic Smash burger is made with a single patty that weighs

14 5.0 ounces prior to cooking.  SS 9.  The recipe card for the Classic Smash burger

15 refers to the patty as "**P-BURGER PATTY REGULAR (5.0 OZ)**."  SS 10 (emphasis

16 added).

17     Thus, each version of the Triple Double burger has two 2.5-ounce beef patties,

18 for a total of 5.0 ounces of beef.  SS 5-6.  Smashburger's Classic Smash burger has a

19 single 5.0-ounce beef patty.  SS 9-10.  Smashburger's Kid/Small burger has a single

20 2.5-ounce beef patty, SS 8, two of which are used in the Triple Double burger, SS 7.

21     To verify the weight of Smashburger's burgers as served in its restaurants,

22 counsel for In-N-Out on June 27, 2018 purchased a Triple Double burger and a

23 Classic Smash burger (both without cheese) from a Smashburger restaurant in Culver

24 City.  SS 11.  Counsel weighed the patties and determined that the Triple Double

25 burger had two cooked patties weighing 1.5 ounces each while the Classic Smash

26 burger had a single cooked patty weighing 2.8 ounces.  *Id.*

27     In response to In-N-Out's Request for Admission No. 161 asking Smashburger

28 to "[a]dmit that the TRIPLE DOUBLE HAMBURGERS do not have double the

-3-

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION
FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 8:17-cv-1474-JLS-DFM

4848-5955-2644.v1

1    amount of beef, by weight, of the regular Classic Smash hamburger," Smashburger

2    responded, "[a]s of the date of this response, to the extent this request's use of the

3    term 'regular' refers to a Classic Smash with approximately 5.0 ounce pre-cooked

4    patty, **Defendants admit that the Triple Double burger does not contain a total of**

5    **10 ounces of beef**." SS 12 (emphasis added).

6        **B.    Smashburger's "Double the Beef" Advertisements.**

7        Smashburger has advertised its Triple Double burgers with a number of slogans

8    that include the phrase "Double the Beef" (including, but not limited to, the slogans

9    "Double the Beef," "Triple the Cheese, Double the Beef," "Triple the Cheese, Double

10   the Beef in Every Bite," "Triple the Cheese, Double the Beef, Triple the Options," and

11   "Classic Smash<sup>TM</sup> Beef Build with triple the cheese & double the beef in every bite")

12   or denote two times the beef (including, but not limited to, the slogan "2x Fresh

13   Never-Frozen Beef"). SS 13. Such slogans appear in, among other places, menus,

14   displays, and advertisements at Smashburger restaurants and on the Smashburger

15   website and social media accounts, television commercials, bus shelters, and press

16   releases. SS 14.

17       The slogan "Classic Smash<sup>TM</sup> Beef Build with triple the cheese & double the

18   beef in every bite" is used on Smashburger's menus with regard to the Triple Double

19   burger. SS 15. Beneath that statement on the menu is a reference to a burger

20   described as the "Classic Smash<sup>TM</sup>". SS 16.



1    Under the "Craft Your Own" section, the menu refers to the option to "ADD A

2    PATTY (+$ REG / +$ BIG)," without any reference to a small patty.[3]  SS 17.

3    The menu includes a "KIDS MEALS" section, under which one of the options

4    is a "KIDS SMASH."  SS 19.

5    The slogan "Triple the Cheese, Double the Beef in Every Bite" is used by

6    Smashburger in various displays and advertisements, including on its menu, on its

7    website, and on bus stop shelters.  SS 20.

8    The slogan "Triple the Cheese, Double the Beef," without the phrase "in Every

9    Bite," is used in other Smashburger displays and advertisements.  SS 21.  For

10   example: (1) Smashburger's July 11, 2017 press release quotes Smashburger CEO

11   Tom Ryan as stating the Triple Double burger contains "[d]ouble the juicy,

12   caramelized beef"; (2) Smashburger has advertisements and social media posts using

13   the slogan "Triple the Cheese, Double the Beef, Triple the Options"; and (3)

14   Smashburger has restaurant displays and social media posts for the Pub Triple Double

15   stating "Triple the Cheese and Double the Beef Topped with Garlic Grilled Onions &

16   Gulden's® Mustard All on a Pretzel Bun."  SS 22.

17   Smashburger has used the slogan "2x Fresh Never-Frozen Beef" in at least one

18   commercial.  SS 23.

19   **C.    Smashburger's Competition with In-N-Out.**

20   According to In-N-Out's website, In-N-Out has 343 restaurants, with 32

21   locations in Arizona, 243 locations in California, 19 locations in Nevada, two

22   locations in Oregon, 37 locations in Texas, and 10 locations in Utah.  SS 24.

23   According to Smashburger's website, Smashburger has 323 restaurants in the United

24   States, with 28 locations in Arizona, 31 locations in California, nine locations in

25   Nevada, 34 locations in Texas, and six locations in Utah.  SS 25.

26

27   _____

[3]

28

A significant majority of Smashburger's restaurants in the states where In-N-Out has restaurants are located in close proximity to In-N-Out restaurants.  SS 26. There are In-N-Out restaurants in, or within five miles of, the towns of all but two of Smashburger's restaurants in Arizona (and one of those two Smashburger restaurants is located within 12.5 miles of four In-N-Out restaurants).  SS 27.  There are In-N-Out restaurants in, or within six miles of, the towns of all but three of Smashburger's restaurants in California (and two of those three Smashburger restaurants are each located within nine miles of two In-N-Out restaurants).  SS 28.  There are In-N-Out restaurants in, or within 3.4 miles of, the towns of all but one of Smashburger's restaurants in Nevada and Utah (and that Smashburger restaurant is located within 12 miles of four In-N-Out restaurants).  SS 29.  In Texas, there are In-N-Out restaurants in, or within 6.2 miles of, the towns of 12 Smashburger restaurants.  SS 30.



SS 31.

**D.**

SS 33.



SS 34.

SS 35.

SS 36.

SS 37.

SS 38.

### E. Smashburger's New Menu in Colorado and Dallas.

Smashburger recently posted an update on its website for its Colorado and Dallas locations to show a price of $4.59 for "Any Smashburger," and a price of $6.99 for what is described as "—NEW!—  Bigger, Beefier Triple Double Smashburger." SS 39.  The page goes on to state:

TWO NEW SIZES.  TWO NEW PRICES.  SAME GREAT TASTE.

Hey, Colorado and Dallas Smash Fans!  You may have noticed some changes in our menu, and we're here to provide some information to help you navigate through these updates.

Now you can enjoy your favorite Smashburger for just **$4.59**! Better yet, upgrade your go-to Smashburger with triple the cheese and double the beef in every bite for just **$6.99**.  Welcome to the home of the Triple Double burger.

Although our sizes and prices changed, our mouthwatering recipes haven't. . . .

SS 40.  Smashburger's new menu for a Texas restaurant includes prices of $4.59 for a "Smashburger" and $6.99 for a "Triple Double Smashburger."  SS 41.  The "Craft Your Own" section of the menu states that the Smashburger beef patty has 270 calories and the Triple Double Smashburger beef patty has 530 calories.  SS 42. Farther down in that section, the menu indicates a single beef patty has 270 calories. *Id.*

## PROCEDURAL HISTORY

### A.    The Pleadings, Motions, and Court Orders.

In-N-Out filed its original Complaint [Dkt. 1] on August 28, 2017, its First Amended Complaint [Dkt. 15] on October 20, 2017, and its Second Amended and Supplemental Complaint (the "SAC") [Dkt. 117] on September 21, 2018.

All versions of the Complaint asserted claims of trademark infringement, unfair competition, and trademark dilution under both federal and California law against Defendants.  More specifically, In-N-Out alleges that it owns a family of marks, which share a common theme of a number followed by a number, comprised of the marks DOUBLE-DOUBLE, TRIPLE TRIPLE, QUAD QUAD, 2 X 2, 3 X 3, and 4 X 4, each of which is registered federally and with the state of California.  *See* SAC, ¶¶ 11-16.  In-N-Out further alleges that Defendants have committed trademark infringement, unfair competition, and trademark dilution by using TRIPLE DOUBLE marks in connection with its burgers.  *See id.*, ¶¶ 64-78, 88-117.

-8-

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT Case No. 8:17-cv-1474-JLS-DFM

4848-5955-2644.v1

In a September 20, 2018 Order [Dkt. 115], the Court granted In-N-Out's motion for leave to file the SAC.[4]  The SAC added allegations, and a false advertising claim under the Lanham Act, based upon Defendants' use of "Double the Beef" taglines: "Triple the Cheese, Double the Beef in Every Bite," "Triple the Cheese, Double the Beef, Triple the Options," and "Classic Smash™ Beef Build with triple the cheese & double beef in every bite."  *See id.*, ¶¶ 1, 51-63, 79-87.  The SAC alleges that these "Double the Beef" taglines are false and misleading because the Triple Double burgers contain the same amount of beef as Defendants' regular-sized single burgers, not "double" or twice the amount of beef.  *See id.*

**B.    Discovery.**

In response to In-N-Out's interrogatory asking Smashburger IP to "[s]tate all facts supporting your contention that the DOUBLE THE BEEF SLOGANS are not false or misleading," Smashburger IP responded:

> Plaintiff has the burden of proving that Defendants' advertising or promotional material is false or misleading—Smashburger IP does not bear the burden of proving it is not false or misleading.  Nevertheless, "double the beef" refers to the fact that the sandwich has <u>two layers of beef</u>, which is further clarified by the statement "in every bite."  That is, in every bite, a consumer gets the sensation of biting into two beef patties, rather than a single patty.  Further, <u>even if a consumer were to misunderstand "double the beef" as referring to the total volume of beef, the Triple Double hamburgers do in fact contain double the volume of beef compared to (1) the smallest patty size generally available at Smashburger restaurants, and (2) hamburgers offered by competing fast casual/quick service restaurants</u> among which consumer [*sic*] may select when making a purchasing decision.  Smashburger IP expects that it will continue to develop facts regarding its contention as the case continues.

SS 43 (emphasis added).

**LEGAL STANDARD**

Under Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which

---

[4] The Court noted, "Smashburger's argument that the 'Double the Beef' slogan 'obviously refers to the fact that the burger has two patties, rather than one, and not to the size of the patties themselves' is not obvious to the Court; it appears unlikely that consumers would share that interpretation."  Dkt. 115-1 at 14.

-9-

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION
FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 8:17-cv-1474-JLS-DFM
4848-5955-2644.v1

summary judgment is sought." *Id.*  Summary judgment is required "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*  The non-movant must identify specific facts that show a genuine issue of material fact for trial, *i.e.*, that the facts could allow a reasonable jury to return a verdict for the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If "a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322).

## ARGUMENT

## I.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON IN-N-OUT'S CLAIM FOR FALSE ADVERTISING.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), has been construed by the courts as creating a federal false advertising claim having five elements:

> . . . (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. . . .

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

*See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) (same).

-10-

1    By this motion, In-N-Out seeks summary judgment on the five elements of

2    liability for false advertising under the Lanham Act.

3    A.    **Smashburger's "Double the Beef" Advertisements are Literally False or False by Necessary Implication, and Smashburger's Contentions Contradict Industry Standards and Consumer Expectations.**

4

5    In-N-Out seeks partial summary judgment that Smashburger's "Double the

6    Beef" advertisements are literally false or false by necessary implication to the extent

7    that they are being used to sell Triple Double burgers that do not in fact have twice the

8    beef of Smashburger's regular-sized hamburgers.[5]

9    "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may

10   show that the statement was literally false, either on its face or by necessary

11   implication, or that the statement was literally true but likely to mislead or confuse

12   consumers." *Southland Sod Farms*, 108 F.3d at 1139 (citing *Castrol Inc. v. Pennzoil

13   Co.*, 987 F.2d 939, 943, 946 (3d Cir. 1993)).  *See PBM Prods., LLC v. Mead Johnson

14   & Co.*, 639 F.3d 111, 120 (4th Cir. 2011).

15   To establish literal falsity, the plaintiff must show that consumers will

16   "unavoidably" receive the allegedly false message.  *See Novartis Consumer Health,

17   Inc. v. Johnson & Johnson-Merck Pharm. Co.*, 290 F.3d 578, 587 (3d Cir. 2002).  In

18   evaluating whether an advertisement is literally false, a court "must analyze the

19   message conveyed in full context." *Castrol Inc.*, 987 F.2d at 946.  *See Pernod Ricard

20   USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 253 (3d Cir. 2011) ("[w]e are

21   obligated in this false advertising case under § 43(a)(1)(B) to look at the words

22   'Havana Club' in the context of the entire accused advertisement, the label of the

23   rum").  Where an advertiser takes an affirmative step to include a reference in its

24   advertising that defines its claim, such reference constitutes an explicit claim to be

25

26   _____

     [5] In-N-Out does not seek partial summary judgment as to the Triple Double

27   Smashburger that Smashburger recently started selling at its Colorado and Dallas locations because it appears that Smashburger has changed its sizing so that the Triple Double Smashburger sold in those restaurants has twice the quantity of beef as the

28   regular burger.  SS 40-42.

-11-

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION
FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 8:17-cv-1474-JLS-DFM

4848-5955-2644.v1

1    considered by the court in determining what the claim means.  *See Groupe SEB USA,*

2    *Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 199-200 (3d Cir. 2014) ("courts

3    interpreting a term's meaning apply a specific definition if one is provided by the

4    author").

5        "A 'literally false' message may be either explicit or 'conveyed by necessary

6    implication when, considering the advertisement in its entirety, the audience would

7    recognize the claim as readily as if it had been explicitly stated.'"  *Novartis Consumer*

8    *Health, Inc.*, 290 F.3d at 586-87 (quoting *Clorox Co. Puerto Rico v. Procter &*

9    *Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000)).  *See PBM Prods., LLC*,

10   639 F.3d at 120; *Southland Sod Farms*, 108 F.3d at 1139 ("[w]hen evaluating whether

11   an advertising claim is literally false, the claim must always be analyzed in its full

12   context"; "[t]hus courts have held that a claim can be literally false 'by necessary

13   implication'").  Under the "'false by necessary implication' doctrine," "'only an

14   unambiguous message can be literally false,'" and "the advertisement cannot be

15   literally false" if its language "is susceptible to more than one reasonable

16   interpretation."  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d

17   Cir. 2007) (emphasis removed) (quoting *Novartis Consumer Health, Inc.*, 290 F.3d at

18   586-87, and *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 274-75 (4th Cir. 2002)).

19   A court may determine whether an advertisement is literally false "based on its own

20   common sense and logic in interpreting the message."  *Edmiston v. Jordan*, 98 Civ.

21   3298 (DLC), 1999 WL 1072492, *9 (S.D.N.Y. Nov. 24, 1999).

22       Where literal falsity is claimed and the court finds the meaning of an

23   advertising claim to be "explicit and unambiguous," a consumer survey may not be

24   used to try to create an ambiguity.  *See Groupe SEB USA, Inc.*, 774 F.3d at 200-02

25   ("concluding that [defendant's] message was explicit and unambiguous, [the district

26   court] reasonably declined to substitute the uninformed first impressions of consumers

27   about the claim's meaning").  *Cf. Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883,

28   885-87 (7th Cir.) ("never before has survey research been used to determine the

-12-

meaning of words, or to set the standard to which objectively verifiable claims must be held"), *opinion amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000).

Smashburger's "Triple the Cheese, Double the Beef" tagline is literally false or false by necessary implication. This is immediately evident: Smashburger's Triple Double burgers contain two 2.5-ounce beef patties, totaling 5.0 ounces. SS 5, 6. This is the same amount of beef as Smashburger's Classic Smash, which has one 5.0-ounce beef patty. SS 9, 10. Thus, a Triple Double burger does not provide "Double the Beef" as claimed.

As discussed in further detail below, Smashburger presents several contentions to deny this falsity: (1) "double" refers to two patties; (2) "double" refers to twice as much as the smallest burger (*i.e.*, the kids' burger) available at Smashburger; and (3) "double" refers to twice as much as competitors' burgers. SS 43. However, proposed alternative meanings that are "nonsensical" do not save the advertisement from falsity. *See Southland Sod*, 108 F.3d at 1144.

Smashburger's alternative interpretations are inherently problematic and do nothing to cure the falsity, as a parallel illustration demonstrates: If an employer pays a worker $10 per hour with one $10 bill, and then states "I will now give you 'Double the Pay'" and pays the worker with two $5 bills, the worker has not received a pay increase. There is no viable argument that the statement is true because (1) the quantity of bills is greater, (2) the worker is being paid twice as much as the employer's lowest-paid worker, or (3) the worker is being paid twice as much as workers at other businesses. To the contrary, the worker has simply been deceived through false pretenses. The same applies here to Smashburger's customers.

-13-

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION
FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 8:17-cv-1474-JLS-DFM

4848-5955-2644.v1

1

   **1.**  <u>**Smashburger's Advertisements are Literally False or False by**</u>
<u>**Necessary Implication Despite Smashburger's Alternative**</u>
<u>**Contention that "Double the Beef" Refers to Two Layers of**</u>
<u>**Beef**</u>.

2

3

4    Smashburger asserts that its advertisements are not false or misleading because

5 "'double the beef' refers to the fact that the sandwich has two layers of beef, which is

6 further clarified by the statement 'in every bite.'  That is, in every bite, a consumer

7 gets the sensation of biting into two beef patties, rather than a single patty."  SS 43.

8    However, the dictionary defines "beef" as "the flesh of an adult domestic

9 bovine (such as a steer or cow) used as food."  https://www.merriam-

10 webster.com/dictionary/beef.  Smashburger's contention that the term "beef" means

11 "patty" is contrary to the dictionary definition of "beef."  Thus, in view of the

12 dictionary definition, "Double the Beef" necessarily refers to twice the amount of

13 flesh (*i.e.*, beef).  The term "beef" is not a synonym for "patty," and reasonable

14 consumers could not understand "Double the Beef" to mean "Double the Patties," but

15 the same amount of beef.

16    Smashburger gets no farther with its argument that its use of "in Every Bite"

17 renders "Double the Beef" susceptible to the meaning that it urges.  First, this

18 argument cannot apply to Smashburger's "Double the Beef" advertisements that omit

19 the statement "in Every Bite," SS 21-22, so Smashburger's argument does not dispute

20 the literal falsity of those advertisements.  Moreover, the use of "in Every Bite," taken

21 in the context of "Double the Beef," is a representation that each bite of a Triple

22 Double burger will contain twice the amount of beef as a bite of another Smashburger

23 burger.  The inclusion of "in Every Bite" in the slogan "Triple the Cheese and Double

24 the Beef in Every Bite" does not change the fact that the term "beef" does not mean

25 "patty."  Accordingly, Smashburger's advertisements remain literally false or false by

26 necessary implication.

27

28

-14-



SS 33-38.

*Id.*

SS 36-38

### 2. Smashburger's Advertisements are Literally False or False by Necessary Implication Despite Smashburger's Alternative Contention that "Double the Beef" is a Comparison to Smashburger's Smallest Patty Size.

Smashburger asserts that its advertisements are not false or misleading because "even if a consumer were to misunderstand 'double the beef' as referring to the total volume of beef, the Triple Double hamburgers do in fact contain double the volume of beef compared to . . . the smallest patty size generally available at Smashburger restaurants." SS 43.

In making this assertion, Smashburger disregards the fact that its menu specifically makes the "Double the Beef" representation by reference to the Classic Smash, not the Kids Smash. SS 15-16. The Classic Smash has a **5.0-ounce patty**, prior to cooking. SS 9-10. As discussed above, because Smashburger chose to make its "Double the Beef" claim in the context of a reference to the "Classic Smash™ Beef build," SS 15-16, the Court must interpret the "Double the Beef" claim in view of the amount of beef in the Classic Smash. *See Groupe SEB USA, Inc.*, 774 F.3d at 199-200 (finding the message conveyed by the claim explicit and unambiguous, especially when taken in context to a reference that defined a key term in the claim). The reference to "Classic Smash™ Beef build" appears in Smashburger's menu, SS 15-16, and is what customers see immediately before purchasing a Triple Double burger. As such, practically every Smashburger customer purchasing a Triple Double burger will

1    have viewed a Triple Double burger in reference to a Classic Smash burger, with its

2    5.0-ounce patty.

3        Smashburger's argument fails even for those advertisements that do not

4    specifically refer to the Classic Smash in the context of the "Double the Beef"

5    representation.  "[T]he smallest patty size generally available at Smashburger

6    restaurants," the 2.5-ounce patty, is listed under Kids Meals, but does not appear

7    elsewhere on Smashburger's menu.  SS 7, 8, 17, 19. ███████████████████

8    ████████████████████████████████████████████████████████████

9    ████████████████████████  SS 18.  The "Craft Your Own" portion of

10   Smashburger's menu identifies two patty sizes – "REG" and "BIG."  SS 17.

11       There is no legitimate basis for Smashburger to contend that customers could

12   reasonably believe that the "Double the Beef" representation refers to double the

13   amount of beef of a patty that is on Smashburger's menu only as part of a children's

14   meal.  Thus, Smashburger's advertisements are literally false or false by necessary

15   implication to the extent that the "Double the Beef" representation refers to double the

16   amount of beef of a patty that is on Smashburger's menu only as part of a children's

17   meal.

18       **3.    <u>Smashburger's Advertisements are Literally False or False by
         Necessary Implication Despite Smashburger's Alternative</u>**
19       **<u>Contention that "Double the Beef" Refers to Competitors'</u>**
20       **<u>Burgers.</u>**

21       Smashburger asserts that its advertisements are not false or misleading

22   because "even if a consumer were to misunderstand 'double the beef' as referring

23   to the total volume of beef, the Triple Double hamburgers do in fact contain

24   double the volume of beef compared to . . . hamburgers offered by competing fast

25   casual/quick service restaurants among which consumer [*sic*] may select when

26   making a purchasing decision."  SS 43.

27       Smashburger's advertisements make no reference to competing fast

28   casual/quick service restaurants, and consumers could not reasonably construe

-16-

"Double the Beef" as a comparison to other restaurants' burgers.  Nor could consumers reasonably construe Smashburger's advertisements as a representation that Smashburger's double burgers contain twice as much beef as competitors' single burgers. ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████ SS

33-38.  Smashburger's Triple Double burgers contain 5.0 ounces of beef, SS 6, 7,

████████████████████████████████████████████

████████████████████████████████████████

### B.   Because Smashburger's Advertising is Literally False, Deceptiveness is Presumed.

To prove a false advertising claim, the plaintiff must show that the defendant's advertising actually deceived or had the tendency to deceive a substantial segment of the defendant's audience.  *See*, *e.g.*, *PBM Prods., LLC*, 639 F.3d at 120; *Southland Sod Farms*, 108 F.3d at 1139.  *See also* 15 U.S.C. § 1125(a) (authorizing "a civil action by any person who believes that he or she is or is *likely to be damaged* by" conduct violating the Lanham Act) (emphasis added).

Literal falsity creates a presumption that statements actually misled consumers. *See*, *e.g.*, *Pernod Ricard USA, LLC*, 653 F.3d at 248 ("actual deception or a tendency to deceive is presumed if a plaintiff proves that an advertisement is unambiguous and literally false") (citing *Novartis Consumer Health, Inc.*, 290 F.3d at 586); *Cashmere & Camel Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 314 (1st Cir. 2002) ("[w]hen a plaintiff demonstrates that a defendant has made a material misrepresentation that is literally false, there is no need to burden the plaintiff with the onerous task of demonstrating how consumers perceive the advertising"); *Pizza Hut, Inc. v. Papa*

-17-

1   *John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000).  "Where, as in this case, an

2   advertisement is demonstrated to be literally false, the Court does not need to inquire

3   into whether consumers were deceived or misled . . . as the court will assume that

4   false statements actually mislead consumers."  *POM Wonderful LLC v. Purely Juice,*

5   *Inc.*, No. CV-07-02633 CAS (JWJx), 2008 WL 4222045, *11 (C.D. Cal. July 17,

6   2008).

7        As shown above, Smashburger's "Double the Beef" advertisements are literally

8   false.  Furthermore, the advertisements are deceptive on their face because they

9   suggest that customers purchasing Triple Double burgers will receive twice as much

10   beef as they will actually receive.  Accordingly, the Court should grant partial

11   summary judgment on the element of deceptiveness.

12        **C.    Smashburger's False Advertising is Material.**

13        The Lanham Act imposes liability for false advertising only where "the

14   'deception is material, in that it is likely to influence the purchasing decision. . . .'"

15   *Rice*, 330 F.3d at 1181 (quoting *Cook, Perkiss & Liehe, Inc. v. Northern California*

16   *Collection Serv. Inc.*, 911 F.2d 242, 244 (9th Cir. 1990)).  The materiality requirement

17   is based on the premise that not all deceptions affect consumer decisions.  *Johnson &*

18   *Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir.

19   2002).  A plaintiff may establish materiality by proving that "the defendants

20   misrepresented an inherent quality or characteristic of the product."  *Nat'l Basketball*

21   *Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997).  *See POM Wonderful*, 2008

22   WL 4222045, *11 (materiality requirement can be established when defendant

23   misrepresented the inherent quality or characteristic of the product); *Sinai v. Bureau of*

24   *Automotive Repair*, No. C–92–0274–VRW, 1993 WL 341276, *2 (N.D. Cal. Sept. 1,

25   1993) (deception was material because the alleged misrepresentations "concern the

26   accuracy and usefulness of the information in [defendants'] manual and go to the heart

27   of the manual's appeal to consumers").

28

-18-

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION
FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 8:17-cv-1474-JLS-DFM

4848-5955-2644.v1

Here, the amount of beef contained in Triple Double burgers is an inherent characteristic of the burgers that is, on its face, material to the purchasing decision. Consumers rely upon perceived value in deciding which products to purchase.  Thus, consumers are more likely to buy a product if they believe that they are receiving more for their money as, where here, the consumers believe that they are getting twice as much beef as they are actually getting.

Here, Smashburger's new size offerings for its Colorado and Denver locations demonstrate the materiality of the price difference between what customers believed they were getting when they purchased the Triple Double burger and what they actually got.  At those locations, a regular burger costs $4.59, while an actual double burger – one with two patties that are each the same size as the patty of a regular burger – costs $6.99.  SS 39-42.  The fact that Smashburger expects consumers to pay an additional $2.40 to receive a second patty that is the same size as the patty on its regular burger provides compelling confirmation that consumers would, in fact, find the "Double the Beef" representation material to their purchasing decision.

### D. Smashburger Caused Its False Advertising to Enter Interstate Commerce.

By statute, "[t]he word 'commerce' means all commerce which may lawfully be regulated by Congress."  15 U.S.C. § 1127.  "Use in commerce" is defined very broadly; for goods, for example, there is use in commerce when (1) a designation "is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale," and (2) "the goods are sold or transported in commerce."  *Id.*

Here, Smashburger has used its "Double the Beef" claims on displays (*i.e.*, menu boards at Smashburger restaurants) associated with its Triple Double burgers or their sale, and those burgers are sold in commerce.  SS 14, 20-23.  Furthermore, Smashburger has used its "Double the Beef" claims on documents associated with its

-19-

Triple Double burgers or their sale, including advertisements and menus.  SS 14-16, 20, 23.  Accordingly, the interstate commerce element of a false advertising claim is satisfied here.[6]

**E.      In-N-Out is Likely to be Injured as a Result of Smashburger's False Advertising.**

To establish the damages element of a false advertising claim, In-N-Out may show that it "is likely to be injured as a result of the false statement . . . by direct diversion of sales from itself to" Smashburger.  *Southland Sod Farms*, 108 F.3d at 1139.

Given the high degree of geographic overlap between In-N-Out restaurants and Smashburger restaurants, SS 24-30, ████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████, SS 31, ██████████████ ██████████████████████████████████████ SS 32, it is likely that some customers who came to Smashburger as a result of "Double the Beef" claims would otherwise have gone to In-N-Out.  This likelihood of diverted sales is sufficient to demonstrate the lack of a material issue of fact on the damages element of In-N-Out's false advertising claim.

 Furthermore, the Ninth Circuit has "'generally presumed commercial injury when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers.'"  *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 615 (9th Cir. 2016) (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011)).  *See Pipe Restoration Techs., LLC v. Coast Building & Plumbing, Inc.*, No. 8:13-cv-00499-JDE, 2018 WL 6012219, *4, 9 (C.D. Cal. 2018) ("[h]arm to Plaintiffs, competitors of Defendants, is presumed").

---

[6] During the parties' meet-and-confer session, counsel for Smashburger confirmed that Smashburger does not dispute the interstate commerce element.

1  "This presumption is warranted even in false advertising cases because, when

2  competitors vie for the same customers, 'a misleading ad can upset their relative

3  competitive positions' and thereby cause injury." *ThermoLife Int'l, LLC*, 648 F.

4  App'x at 615-16 (quoting *TrafficSchool.com, Inc.*, 653 F.3d at 827) (confirming that

5  the presumption applies to damages as well as to standing).  Here, the evidence of

6  direct competition and literal falsity creates a presumption that In-N-Out has suffered

7  damages as a result of Smashburger's false advertising.  *See id.* at 616.

8  **CONCLUSION**

9       For the reasons set forth herein, In-N-Out respectfully asks the Court to grant its

10  motion for partial summary judgment as to Smashburger's liability on In-N-Out's

11  false advertising claim.

12  Dated:  January 2, 2019          Respectfully submitted,

13                      CAROLYN S. TOTO
      JEFFREY D. WEXLER

14                      SARKIS A. KHACHATRYAN
      PILLSBURY WINTHROP SHAW PITTMAN LLP

15

16                      By:     /s/ Carolyn S. Toto

17                           Carolyn S. Toto
      Attorneys for Plaintiff and Counterdefendant

18                      IN-N-OUT BURGERS

19

20

21

22

23

24

25

26

27

28

-21-