1   Mark A. Finkelstein (State Bar No. 173851)
    mfinkelstein@umbergzipser.com
2   Brent S. Colasurdo (State Bar No. 281863)
    bcolasurdo@umbergzipser.com
3   Leah A. Hamlin (State Bar No. 317957)
    lhamlin@umbergzipser.com
4   UMBERG ZIPSER LLP
    1920 Main Street, Suite 750
5   Irvine, CA 92614
    Telephone: 949.679.0052
6   Facsimile:  949.679.0461

7   Attorneys for Defendants and Counterclaimants
    SMASHBURGER IP HOLDER LLC and
8   SMASHBURGER FRANCHISING LLC

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                    SOUTHERN DIVISION

12

13  IN-N-OUT BURGERS, a California       Case No. 8:17-cv-01474-JVS-DFM
    corporation,
14                                       **DEFENDANTS AND COUNTER-**
                Plaintiff,               **CLAIMANTS SMASHBURGER**
15                                       **IP HOLDER LLC AND**
          v.                             **SMASHBURGER FRANCHISING**
16                                       **LLC'S OPPOSITION TO**
    SMASHBURGER IP HOLDER LLC,           **MOTION FOR PARTIAL**
17  a Delaware limited liability company; **SUMMARY JUDGMENT OF**
    and SMASHBURGER                      **PLAINTIFF AND COUNTER-**
18  FRANCHISING LLC, a Delaware          **DEFENDANT IN-N-OUT**
    limited liability company,           **BURGERS**
19
                Defendants.
20                                       Date:        February 4, 2019
    ─────────────────────────────        Time:        1:30 p.m.
21  SMASHBURGER IP HOLDER LLC,           Courtroom:   10C
    and SMASHBURGER
22  FRANCHISING LLC,                     Judge:  Hon. James V. Selna

23              Counter-Claimants,

24        v.

25  IN-N-OUT BURGERS,

26              Counter-Defendant.

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................ 1

II.     Background........................................................................... 2

  A.   Factual Background ..................................................... 2

    1.  Background of the Parties ..................................... 2

    2.  Smashburger Debuts the "Triple Double" Burger ........................ 4

  B.   Procedural History ..................................................... 4

III.    LEGAL STANDARD .............................................................. 5

IV.    ARGUMENT ......................................................................... 5

  A.   Because Smashburger's Claim Is Literally True—Or, At Least, Ambiguous—In-N-Out Is Not Entitled To Summary Judgment On Literal Falsity................................................................ 6

    1.  When Considered In Its Entirety, "Double the Beef In Every Bite" Is Literally True. ....................................... 7

    2.  Even Read In Isolation, "Double The Beef" Is Literally True Vis-à-Vis Other Smashburger Burgers And Competitors' Burgers. ............... 12

  B.   In-N-Out Is Not Entitled To A Presumption of Deceptiveness, But Even If It Were, Smashburger Has Evidence to Rebut the Presumption. ................................................................ 15

  C.   In-N-Out Is Not Entitled to A Presumption of Materiality And Has Failed to Prove This Element of Its Claim. ................................ 16

  D.   The Named Defendants Did Not Play a Causal Role In Placing the Advertisements Into Interstate Commerce. ............................. 19

  E.   In-N-Out Has Not and Cannot Show a Likelihood of Injury. ................. 21

V.    CONCLUSION ....................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144 (1970) ........................................................................... 9

*Aussie Nads U.S. Corp. v. Sivan*,
  41 F. App'x 977 (9th Cir. 2002) ........................................................ 12

*Avid Identification Sys., Inc. v. Schering-Plough Corp.*,
  33 F. App'x 854 (9th Cir. 2002) ........................................................ 24

*Buetow v. A.L.S. Enters., Inc.*,
  650 F.3d 1178 (8th Cir. 2011).................................................... 10, 18

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*,
  284 F.3d 302 (1st Cir. 2002) ............................................................. 20

*Castrol Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993)................................................. 12, 14, 15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................ 9

*Chavez v. Blue Sky Nat. Beverage Co.*,
  No. C 06-06609 JSW, 2011 WL 13153874 (N.D. Cal. Sept. 27, 2011).............. 19

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*,
  228 F.3d 24 (1st Cir. 2000) ............................................................... 11

*Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*,
  No. CV:12-5868-PSG (MRWx), 2016 WL 6023822
  (C.D. Cal. Aug. 18, 2016)................................................................. 19

*Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.*,
  No. CV98-8218NM (SHx), 2003 WL 25778704
  (C.D. Cal. Jan. 29, 2003)............................................................ 19, 20

*Devereaux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001)............................................................. 9

*FLIR Sys., Inc. v. Sierra Media, Inc.*,
  903 F. Supp. 2d 1120 (D. Or. 2012) ............................................ 11, 18

*In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*,
  882 F. Supp. 915 (C.D. Cal. 1994) ................................................... 24

*K & N Eng'g, Inc. v. Spectre Performance*,
  No. EDCV 09-01900-VAP, 2011 WL 4387094
  (C.D. Cal. Sept. 20, 2011)................................................................ 11

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
  No. C 12-03762 SI, 2014 WL 572290 (N.D. Cal. Feb. 11, 2014)....................... 14

*LivePerson, Inc. v. [24]7.ai, Inc.*,
   No. 17-CV-01268-JST, 2018 WL 5849025 (N.D. Cal. Nov. 7, 2018)................21

*Munchkin, Inc. v. Playtex Prods., LLC*,
   600 F. App'x 537 (9th Cir. 2015),
   *as amended* (July 31, 2015) ...............................................................................27

*Nat'l Basketball Ass'n ("NBA") v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997)...........................................................................22, 23

*Nationstar Mortg., LLC v. Maplewood Springs Homeowners Ass'n*,
   238 F. Supp. 3d 1257 (D. Nev. 2017) ....................................................................9

*Nichia Am. Corp. v. Seoul Semiconductor Co., Ltd.*,
   No. CV 07-8354 PA (CWX), 2008 WL 11342571
   (C.D. Cal. Oct. 7, 2008) .................................................................................21, 22

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck
   Consumer Pharm. Co.*,
   290 F.3d 578 (3d Cir. 2002)............................................................................10, 13

*Nutrition Distribution LLC v. Lecheek Nutrition, Inc.*,
   No. CV:15-1322 MWF (MRWx), 2015 WL 12659907
   (C.D. Cal. June 5, 2015)........................................................................................26

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
   310 F. Supp. 3d 1089 (S.D. Cal. 2018)....................................................21, 22, 25

*Pipe Restoration Techs, LLC v. Coast Building & Plumbing, Inc.*,
   2018 WL 6012219 (C.D. Cal., Nov. 16, 2018)......................................................27

*Pipe Restoration Techs., LLC v. Coast Building & Plumbing, Inc.*,
   No. 8:13-cv-0044999-JDE, 2018 WL 6012219
   (C.D. Cal. Nov. 16, 2018).....................................................................................25

*POM Wonderful LLC v. Purely Juice, Inc.*,
   No. CV-07-02633CAS(JWJX), 2008 WL 4222045
   (C.D. Cal. July 17, 2008) ................................................................................19, 22

*QVC Inc. v. Your Vitamins Inc.*,
   439 F. App'x 165 (3d Cir. 2011) ..........................................................................10

*Rexall Sundown, Inc. v. Perrigo Co.*,
   651 F. Supp. 2d 9 (E.D.N.Y. 2009) ......................................................................21

*Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*,
   702 F. Supp. 2d 253 (D. Del. 2010)................................................................16, 18

*Simpler Consulting, Inc. v. Wall*,
   No. CIVA 05-452, 2008 WL 1710101 (W.D. Pa. Apr. 7, 2008).............13, 15, 17

*Skydive Arizona, Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012)........................................................................21, 25

*Soremekun v. Thrifty Payless, Inc.*,
  509 F.3d 978 (9th Cir. 2007)...........................................................................9

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997)...................................................................10, 13

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
  875 F.3d 426 (9th Cir. 2017)........................................................................25

*Stump v. Gates*,
  211 F.3d 527 (10th Cir. 2000)....................................................................9, 20

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
  648 F. App'x 609 (9th Cir. 2016) .......................................................21, 28, 29

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007)....................................................................passim

*Torres Vargas v. Santiago Cummings*,
  149 F.3d 29 (1st Cir. 1998) ..........................................................................24

*Townsend v. Monster Beverage Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018) ..........................................................25

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011).........................................................................27

## Statutes

Fed. R. Civ. P. 56(d)(1) ....................................................................1, 9, 15

## I.    **INTRODUCTION**

Defendants and Counterclaimants Smashburger IP Holder LLC and Smashburger Franchising LLC (collectively "Smashburger") hereby oppose the motion for partial summary judgment of Plaintiff and Counterdefendant In-N-Out Burgers ("In-N-Out").[1]  In-N-Out fails to prove any of the five elements of its false advertising claim—which is not surprising given that the express purpose of this premature motion is so that In-N-Out can try to avoid the expense of having to engage a survey expert to support that claim.

In its motion, In-N-Out argues that Smashburger's advertisement for its Triple Double burger, "double the beef in every bite," is literally false.  "Double the beef in every bite," however, is true on its face.  First, the Triple Double features two layers of beef patties; thus, each bite of the Triple Double does, in fact, contain twice the amount of beef as a burger with a single patty.  Moreover, the claim is also literally true relative to the quantity of beef on other burgers.  Specifically, the Triple Double contains double the beef of Smashburger's Classic Small Smash, and more than double the beef of many third-party's single-patty burgers, including In-N-Out's.  Given that there are numerous plausible interpretations of "double the beef in every bite," there is—at the very least—a genuine dispute of fact as to the meaning of the advertisement.  This motion, therefore, must be denied in its entirety because In-N-Out's arguments as to each of the remaining elements rely upon a finding of literal falsity.

Even if In-N-Out could prove literal falsity, however, In-N-Out fails to produce sufficient evidence to warrant partial summary judgment on the remaining elements of its false advertising claim.

As to the elements of deceptiveness and materiality, In-N-Out relies on

---

[1] Pursuant to Local Rule 7-9, Smashburger's opposition would normally have been due on January 14, 2019.  However, the parties agreed during their Rule 7-3 conference to an alternative briefing schedule wherein Smashburger's opposition is due a day later, on January 15, 2019.

presumptions that are not recognized in the Ninth Circuit and fails to produce any relevant evidence to support a finding for either element.  But if the proffered presumptions applied, moreover, Smashburger has more than sufficient evidence to create a genuine issue that it could rebut the presumptions.

As to causality, In-N-Out presents no evidence or argument to show how the named defendants are liable for putting the advertisements into interstate commerce, even though this has always been a disputed issue on this claim.

Finally, In-N-Out does not, and cannot, show that its sales were affected by Smashburger's marketing of the Triple Double, and thus it has not suffered any legally cognizable harm.  Further, In-N-Out has not even tried to establish any willful deception on the part of the named Smashburger defendants, or any other Smashburger entity.

In-N-Out's premature motion burdens the Court, asking it to make determinations for which there is no or insufficient evidence simply so that In-N-Out can avoid paying a survey expert.[2]  In addition to being an improper use of the Court's resources, In-N-Out has failed to discharge its evidentiary burden on each element of its claim.  Accordingly, this motion should be denied.

## II.    BACKGROUND

### A.    Factual Background.

#### 1.    Background of the Parties.

In-N-Out and Smashburger both sell burgers.  The similarities between the two chains, however, end there.  One of the defining features of Smashburger's menu is variety.  Customers can custom order burger-style sandwiches by selecting from a long list of ingredient choices.  Declaration of Jeffrey Wexler, ECF No. 146, ("Wexler Decl."), at Ex. O.  For example, they can order a "Classic Smash" with a beef, chicken, turkey, or black bean patty, and they can choose from five different

---

[2] This strategy seems dubious, as the cost of a survey expert is likely significantly less than the cost of this premature motion.

1  types of buns, including classic egg, multi-grain, spicy chipotle, telera roll, and

2  gluten-free. *Id.*  The Classic Smash beef patties generally come in a variety of

3  sizes, including small (2.5 ounces), regular (5 ounces), and big (6 ounces).

4  Declaration of Ty Lufman, filed concurrently herewith ("Lufman Decl.") ¶ 2.[3]

5       Smashburger also offers a number of custom-designed sandwiches with pre-

6  set ingredients.  Wexler Decl., Ex. O.  Further, Smashburger is well-known for

7  having different "special" burgers, depending on the location.  For instance, in

8  Boston one can get a "New Englander" burger with cranberry Stilton and cranberry

9  sauce, and in the Chicago area one can get a "Windy City" burger with haystack

10 onions and spicy mustard.  Declaration of Mark A. Finkelstein, filed concurrently

11 herewith ("Finkelstein Decl."), at Exs. A and B.

12      Smashburger's menu stands in stark contrast to In-N-Out's notoriously

13 simplistic offerings.  In-N-Out offers its customers only one size (2 ounces) of one

14 type of patty (beef).  Smashburger's Statement of Genuine Disputes in Opposition

15 to Motion for Partial Summary Judgment ("SGD") ¶ 34 (stating the weight of

16 INO's single patty).  In-N-Out offers only two distinct sandwich builds using that

17 patty, *i.e.* the hamburger and the cheeseburger, though customers may order the

18 cheeseburger in multiples.  *See* Second Amended and Supplemental Complaint

19 ("SAC") ¶¶ 6–11, ECF No. 117.  For example, customers may order a "double-

20 double" cheeseburger, which contains two 2-ounce patties—the only patty size In-

21 N-Out offers—and two slices of cheese.  *Id.* ¶ 11.

22      Because Smashburger and In-N-Out take such different approaches to their

23 marketing and menu offerings, In-N-Out does not consider Smashburger to be a

24 "direct competitor," nor does it believe that Smashburger's product marketing has

25 any impact on In-N-Out's sales.  Finkelstein Decl., Ex. C ("Barnard Depo."), at

26 74:18–75:4; 88:7–12; Ex. D ("Lee Depo."), at 48:8–49:9.

27 ───────────────

[3] In-N-Out points out that there are other Smashburger restaurants where the
28 quantify of beef in the Triple Double changed, and In-N-Out is not asserting false
advertising in such situations. Mot., at n.2.

### 2.      Smashburger Debuts the "Triple Double" Burger.

In July 2017, Smashburger added a new burger, the "Triple Double," to its menu offerings.  Wexler Decl., Ex. A.  The Triple Double features two layers of beef and three layers of cheese.  *Id.*  Because at least some versions of the Triple Double feature the same amount of meat by weight (pre-cooked) as a 5-ounce-sized, single-patty Classic Smash, the two burgers have a similar price point, with the regular-priced Triple Double costing only $0.30 more.  Finkelstein Decl., Exs. E and F.  For this minimal price difference, customers ordering the Triple Double get two extra slices of cheese and a unique tasting experience.[4]

Smashburger specifically designed the Triple Double with a focus on the consumer's experience in each bite; that is, Smashburger wanted the Triple Double to offer the flavor combination of simultaneous, multiple layers of beef with cheese above, below, and between both patties, which is not an experience that a single-patty, single-cheese burger can provide.  See Ex. A to Wexler Decl.; Lufman Decl. ¶ 3.  In order to advertise this experience to consumers, the Triple Double was promoted as featuring "Triple the Cheese, Double the Beef in Every Bite."  On Smashburger's menu inside stores, the Triple Double is similarly featured as a "Classic Smash Beef build with triple the cheese and double the beef in every bite." Wexler Decl., Ex. O.

### B.      Procedural History.

In-N-Out filed this lawsuit on August 28, 2017, asserting various trademark claims under California and federal law based on allegations that Smashburger's TRIPLE DOUBLE mark infringes In-N-Out's DOUBLE-DOUBLE and related marks.  *See* Compl., ECF No. 1.  After multiple rounds of amendments and nearly a year into the litigation, In-N-Out added a Lanham Act false advertising claim in its Second Amended Complaint.  *See* SAC.

---

[4] Many customers were able to enjoy the Triple Double for significantly *less* than a Classic Smash, as it was launched at only $4.00.  Ex. B to Wexler Decl.  And for only $1 more, customers could add bacon.  *Id.*

### III.  **LEGAL STANDARD**

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment only if it shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." "The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence." *Nationstar Mortg., LLC v. Maplewood Springs Homeowners Ass'n*, 238 F. Supp. 3d 1257, 1266 (D. Nev. 2017) (*citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970)).

It was incumbent upon In-N-Out to present all of the necessary evidence in its moving papers, as Courts will not consider issues raised for the first time in reply, since such a tactic "robs the [opposing party] of the opportunity to demonstrate that the record does not support [the movant's] factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

### IV.  **ARGUMENT**

In-N-Out asks the Court to find that Smashburger is liable, as a matter of law, for false advertising in promoting the Triple Double as having "double the beef in every bite." To be entitled to such a determination, In-N-Out must prove the following: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3)

1  the deception is material, in that it is likely to influence the purchasing decision; (4)

2  the defendant caused its false statement to enter interstate commerce; and (5) the

3  plaintiff has been or is likely to be injured as a result of the false statement, either

4  by direct diversion of sales from itself to defendant or by a lessening of the

5  goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*,

6  108 F.3d 1134, 1139 (9th Cir. 1997).

7       In-N-Out has not, and cannot, show the absence of a genuine issue of

8  material fact on any of the elements of its claim.  The motion must be denied.

9    **A.    Because Smashburger's Claim Is Literally True—Or, At Least,**

10       **Ambiguous—In-N-Out Is Not Entitled To Summary Judgment On**

11       **Literal Falsity.**

12       "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff

13  may show that the statement was literally false, either on its face or by necessary

14  implication … ."[5] *Southland Sod*, 108 F.3d at 1139.  "A 'literally false' message

15  may be either explicit or conveyed by necessary implication when, considering the

16  advertisement in its entirety, the audience would recognize the claim as readily as if

17  it had been explicitly stated." *Novartis Consumer Health, Inc. v. Johnson &*

18  *Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586–87 (3d Cir. 2002)

19  (internal citations omitted).  "The standard for proving literal falsity is ***rigorous***."

20  *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1185 (8th Cir. 2011) (emphasis

21  added).  "[O]nly an ***unambiguous*** message can be literally false." *Novartis*, 290

22  F.3d at 587 (emphasis in original).

23       [5] As an alternative to literal falsity, a plaintiff may show that the statement
was "literally true but likely to mislead consumers." *Southland Sod,* 108 F.3d at
24  1139.  In-N-Out does not argue this theory, nor could it, because such a claim
***requires*** "the district court [] to look to consumer data to determine what the person
25  to whom the advertisement is addressed find[s] to be the message." *Time Warner
Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007). *See also QVC Inc.*
26  *v. Your Vitamins Inc.*, 439 F. App'x 165, 168 (3d Cir. 2011) ("[The plaintiff] cannot
obtain relief by arguing how consumers could react; it must show how consumers
27  actually do react.").  In-N-Out has presented no such evidence because, as it states,
it filed this Motion specifically because it wishes to avoid engaging survey experts
28  on that issue. Mot., at p. 2.

"Literal falsity is a question of fact" that requires two separate factual determinations. *K & N Eng'g, Inc. v. Spectre Performance,* No. EDCV 09-01900-VAP, 2011 WL 4387094, at *9 (C.D. Cal. Sept. 20, 2011). "First, a factfinder must determine the claim conveyed by the advertisement." *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34 (1st Cir. 2000). "Once the claim made by the advertisement has been determined, the factfinder must then evaluate whether that claim is false." *Id.* "[I]f the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007).

Accordingly, "summary judgment should not be granted where a reasonable jury could conclude a statement is not false." *K & N Eng'g,* 2011 WL 4387094, at *9. *Accord FLIR Sys., Inc. v. Sierra Media, Inc.*, 903 F. Supp. 2d 1120, 1131 (D. Or. 2012) (denying summary judgment where the court was unable to "say that all reasonable jurors would conclude that the messages conveyed are necessarily and unambiguously false").

Smashburger's advertisement for the Triple Double, "triple the cheese, double the beef in every bite," is literally true. But at the very least, there are material issues of disputed fact about the actual meaning of the claim—*i.e.* whether it is ambiguous—and its literal truth or falsity once the meaning is ascertained. Accordingly, In-N-Out is not entitled to summary judgment.

### 1.     When Considered In Its Entirety, "Double the Beef In Every Bite" Is Literally True.

Smashburger's claim that the Triple Double contains "double the beef in every bite" is literally true relative to a single-patty burger. The Triple Double was specifically designed with a focus on the consumer's experience in each bite; that is, it was built so that customers would taste simultaneous, multiple layers of beef and cheese every time they bite into the Triple Double. Ex. A to Wexler Decl.;

Lufman Decl. ¶ 3.  Accordingly, customers do, in fact, experience "double the beef in every bite" compared to any single-patty burger on Smashburger's menu or the menus of other fast food chains.  That is, because "double the beef" refers to the number of patties, the statement is true.[6]

In-N-Out argues, however, that the advertisement is literally false because "double the beef" *must* mean that the Triple Double contains twice as much meat, by weight (as opposed to surface area or number of patties), as compared to a Classic Smash with a 5-ounce patty.  Mot., at pp. 14–15.  That is, In-N-Out asks this Court to rule, as a matter of law, that the phrase "double the beef in every bite" unambiguously means: "The uncooked patties of this burger together contain twice as much beef, by weight, as compared to an uncooked patty of a regular-sized Classic Smash burger."  In-N-Out gives this Court only naked attorney argument, and no evidence, to support this position.  And this attorney argument is problematic for numerous reasons.

First, In-N-Out cannot just ignore the effect of the phrase "in every bite" on the literal falsity analysis.  The law requires that advertising claims be considered *in their entirety* for truth or falsity, not as component parts.  *See Aussie Nads U.S. Corp. v. Sivan*, 41 F. App'x 977 (9th Cir. 2002) ("To find an advertisement 'literally false' by 'necessary implication, … the claim must be analyzed in its entirety … ."); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993) ("[I]n determining facial falsity the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other.") (internal citation omitted).  In every bite of a Triple Double burger, one enjoys the sensation of "double the beef," as compared to biting into a single beef patty.

---

[6] In-N-Out's attempt to parlay a comment the Court made on this point, in connection with In-N-Out's motion for leave to amend, as a basis to support summary judgment should be rejected.  Mot., at n.4.  Indeed, the Court made clear it was only ruling that In-N-Out's amendment "is not substantively futile under the liberal standard of Rule 15."  ECF No. 115-1, at n.6.

Second, literal falsity depends on the necessary implication of the claim on its face. *See Time Warner Cable*, 497 F.3d at 158 ("If the words or images, considered in context, necessarily imply a false message, the advertisement is literally false … ."); *Novartis*, 290 F.3d at 587 (noting that a finding of literal falsity is warranted when, "based on a *facial analysis* of the product name or advertising, [] the consumer will unavoidably receive a false message from the product's name or advertising") (emphasis added). A literal falsity determination is thus appropriate where, for example, the defendant advertises that the results of product testing support a particular claim about its product, when in fact, the testing demonstrated the opposite. *See, e.g., Southland Sod*, 108 F.3d at 1139. It is not appropriate where, as here, the very matter in dispute is how consumers may interpret the meaning of the claim.

For example, in *Simpler Consulting, Inc. v. Wall*, the defendant, a consulting firm, circulated a brochure, which stated under the heading "clients" that a certain entity called Harrier had achieved a 100:1 return on its investment. No. CIVA 05-452, 2008 WL 1710101, at *4 (W.D. Pa. Apr. 7, 2008). The plaintiff argued that the statement was literally false because Harrier was not one of defendant's clients, but the court disagreed: "[Defendant's] representation regarding Harrier is misleading at best. … [Defendant's] statement regarding Harrier under the heading 'CLIENTS' is not literally false because it does not unambiguously state that Harrier is [one of Defendant's] clients. Whether the placement of the statement is misleading … [is] [a] question[] for a jury to decide." *Id.* at *8. Here, the phrase "double the beef in every bite" can mean many things, and does not necessarily refer to the weight of the beef, nor does it necessarily make a comparison to a regular-sized Classic Smash burger.

In-N-Out's authority does not advance its argument. In-N-Out first points out that the dictionary defines "beef" as "the flesh of an adult domestic bovine," and "not a synonym for 'patty.'" Mot. at p. 14. This is a *non-sequitur*. The facial

1   meaning of "double the beef in every bite" does not follow from the definition of

2   the word beef.  *See Castrol*, 987 F.2d at 946.  Even accepting In-N-Out's dictionary

3   definition of beef, it is still literally true to say that the Triple Double contains

4   "double the bovine flesh in every bite" relative to a single-patty burger.

5          In-N-Out also relies on a survey of the size of double burgers offered by

6   other fast-food restaurants to argue that, according to "industry standard" and

7   "consumer expectations," any use of the term "double" necessarily implies twice

8   the quantity of beef, by weight, versus the restaurant's standard single burger.

9   Mot., at pp. 14–15.  As explained above, however, the literal falsity analysis turns

10   on whether the court can state that the facial implication of the message as a whole

11   is "unambiguous."  *See Time Warner Cable*, 497 F.3d at 158.

12         The referenced survey results do not even support In-N-Out's argument and,

13   further, give an incomplete picture of how the term "double" is used in other fast-

14   food restaurants.  A claim cannot be literally false if the terms at issue have

15   multiple meanings as used in the industry.  *See Kwan Software Eng'g, Inc. v. Foray*

16   *Techs., LLC*, No. C 12-03762 SI, 2014 WL 572290, at *10 (N.D. Cal. Feb. 11,

17   2014) (finding that a statement could not be literally false where there was

18   unrebutted evidence that the claim had multiple meanings within the relevant

19   industry).

20         Unlike In-N-Out, many fast-food restaurants, including Smashburger, offer

21   many different burger builds and size options for customers to choose from.  *See*

22   Wexler Decl., Ex. O; Finkelstein Decl., Exs. A and B.  "Double" in these contexts

23   does not "necessarily" imply any particular amount of meat on the burger; rather, it

24   simply refers to the number of patties.  For example, the survey shows that the

25   McDonald's Big Mac, a "double" burger, has only 3.2 ounces of beef—this is less

26   than twice the beef of other single-patty McDonald's burgers.  SGD ¶ 38.

27         Further, the informal survey, which is more than two years old and not

28   authenticated as accurate or complete, does not include a number of additional

"double" burgers that other fast-food restaurants sell.[7]  For example, Carl's Jr. sells a "California Classic Double Cheeseburger" which, like the Triple Double, contains two beef patties.  Finkelstein Decl. ¶ 7, Ex. G.  Although it is advertised as a "Double Cheeseburger," it does not contain "double" the meat of Carl's Jr.'s regular burger, the "Famous Star."  *Id.*

Finally, Smashburger has issued many third-party subpoenas to conduct further research on this issue, which is likely to lead to additional supporting evidence of the ambiguous meaning of "double" in the fast-food context. Finkelstein Decl. ¶ 8.  Thus, to the extent this Court believes evidence regarding how third-parties use "double" in their menus is necessary to rule on this motion, In-N-Out's motion is premature.  *See* Fed. R. Civ. P. 56(d)(1) (permitting a court to defer or deny a motion for summary judgment where the nonmovant has not yet had the opportunity to discover facts essential to its opposition).

In sum, the term "double" in the context of a complex menu like Smashburger's plausibly refers to various things other than a comparison between the weight of the uncooked patties in a Triple Double burger as compared to the weight of the uncooked patty in the standard-sized Classic Smash burger.  *Castrol*, 987 F.2d at 946 ("[I]n assessing whether an advertisement is literally false, a court must analyze the message conveyed in full context.").  Thus, any discussion of extrinsic evidence, such as industry standards or consumer expectations, goes to whether the advertisement is misleading, not whether it is literally false.  *See Simpler Consulting*, 2008 WL 1710101, at *8.  That is, perhaps some consumers would interpret the claim to mean that the Triple Double as a whole has twice as much meat as another sandwich on Smashburger's menu (this is also literally true, as explained below), but others could plausibly interpret it to mean what it says, *i.e.* each bite contains twice as much meat as each bite of a burger with a single patty.

---

[7] Smashburger hereby objects to the survey on these bases, and because it lacks foundation.

1    Accordingly, In-N-Out's false analogy to an employer offering his employee
2    "double the pay" in his paycheck should be rejected out of hand.  *See* Mot., at p. 13.
3        Because "double the beef in every bite" lends itself to multiple
4    interpretations, "the truth or falsity of the ad usually should be tested by the
5    reactions of the public"; it should not be determined as a matter of law on summary
6    judgment.  *Time Warner Cable*, 497 F.3d at 156.  *See also Schering-Plough*
7    *Healthcare Prods., Inc. v. Neutrogena Corp.*, 702 F. Supp. 2d 253, 264 (D. Del.
8    2010) (no finding of literal falsity is warranted where an advertisement lends itself
9    to multiple interpretations).  Thus, the motion must be denied.

10        **2.     Even Read In Isolation, "Double The Beef" Is Literally True**
11        **Vis-à-Vis Other Smashburger Burgers And Competitors'**
12        **Burgers.**

13        In-N-Out also references the handful of Smashburger advertisements that
14    omit "in every bite," and claims that Smashburger "does not dispute the literal
15    falsity of those advertisements."  Mot., at p. 14.  In-N-Out is incorrect.  Even in the
16    absence of the "in every bite" clause, the advertisements remain literally true or, at
17    least, ambiguous.

18        First, the Triple Double contains double the beef of a Classic Small
19    Smashburger.  Lufman Decl. ¶ 4; Finkelstein Decl. ¶ 5, Ex. E.  Thus, it is literally
20    true that the Triple Double "contain[s] twice the quantity of beef as a single burger"
21    on the Smashburger menu.  Mot., at p. 15.  That is, just like one can pay extra for a
22    large patty on a "Classic Smash" burger, one can pay less to purchase a "Classic
23    Smash" with a small patty.  *Compare* Finkelstein Decl., Ex. E *with* Ex. F.  Despite
24    In-N-Out's suggestion to the contrary, this remains true today.  *Id*.

25        Accordingly, even if the Court were to accept In-N-Out's contention that
26    "double the beef" is necessarily a comparison to the quantity of meat in the Triple
27    Double versus another burger on Smashburger's menu, nowhere does Smashburger
28    define which burger "double the beef" refers to.  Smashburger's beef patties come

1   in three different sizes (Lufman Decl. ¶ 2), and "double" could just as easily refer to

2   Smashburger's smallest-sized patty as it could to its regular-sized patty, or even its

3   largest-sized patty.  "The greater the degree to which a message relies upon the

4   viewer or consumer to integrate its components and draw the apparent conclusion,

5   … the less likely it is that a finding of literal falsity will be supported." *Novartis*,

6   290 F.3d at 587.

7        In-N-Out, recognizing the problem of its position, makes the argument that

8   "double the beef" must be a comparison to a regular-sized Classic Smash because

9   the menu describes the Triple Double as having a "Classic Smash Beef build."

10  Mot., at p. 15.  In-N-Out is wrong.  "Classic Smash Beef build" simply clarifies the

11  type of meat that the Triple Double contains—which is necessary because

12  Smashburger offers beef, turkey, chicken, and veggie patties—as well as the

13  toppings that come with it (lettuce, pickles, onions, *etc*.).  Wexler Decl., Ex. O.

14  Accordingly, Smashburger's customers would understand that the reference to the

15  "Classic Smash Beef build" does not refer to the *amount* of meat, but rather, the

16  type of meat they can expect to get on the Triple Double and the accompanying

17  accoutrements and sauces.  Thus, if one stopped by the Aliso Viejo Smashburger

18  this evening and ordered a Triple Double without any modifications, it would come

19  with beef, and would include lettuce, tomatoes, onions, and pickles.  *Id*.  If, instead,

20  one wanted a Triple Double with the toppings that come with the SoCal burger

21  (fresh avocado, cilantro, pepper jack, lettuce, tomato, onion, sour cream, and

22  chipotle mayo), then a special request would be necessary.  *Id*.

23       In addition, Smashburger's menu board references "Classic Smash Beef

24  build," and not "Classic Smash Beef build with regular-sized patty," further

25  establishing that the reference does not necessarily convey the weight of beef being

26  used.  At the very least, there is a question of fact as to the meaning of "Classic

27  Smash Beef build," and thus it cannot support a finding of summary judgment.  *See*

28  *Simpler Consulting*, 2008 WL 1710101, at *8 ("Whether the placement of the

1    statement is misleading … [is] [a] question[] for a jury to decide.").

2        Additionally, Smashburger's "double the beef" claim is literally true because

3    the Triple Double contains (more than) double the beef of many other fast food

4    single burgers, including In-N-Out's.  A single-patty In-N-Out burger contains two

5    ounces of meat, whereas the Triple Double being challenged in this motion contains

6    five ounces.  SGD ¶ 34.

7        In-N-Out argues that consumers would not construe "double the beef" as a

8    comparison to other burger chains.  Mot., at pp. 16–17.  This is, of course, ironic in

9    light of In-N-Out's insistence that consumers necessarily construe the claim as a

10   comparison to one specific product on Smashburger's menu to the exclusion of all

11   others.  And the argument raises the same problem as In-N-Out's other arguments:

12   it evidences the ambiguity of the statement at issue and thus defeats a finding of

13   literal falsity.  *See Time Warner Cable*, 497 F.3d at 158.  For example, in *Schering-*

14   *Plough Healthcare*, the court declined to find a likelihood of literal falsity where,

15   on its face, the defendant's advertisement could plausibly be interpreted either as

16   making a statement only about defendant's own product or as a comparison to

17   competitors' products.  702 F. Supp. 2d at 264.  The same is true here.

18       For all of these reasons, In-N-Out has failed to satisfy the "***rigorous***"

19   standard of proving literal falsity as a matter of law.  *Buetow*, 650 F.3d at 1185

20   (emphasis added).  *Time Warner Cable*, 497 F.3d at 158 ("[I]f the language or

21   graphic is susceptible to more than one reasonable interpretation, the advertisement

22   cannot be literally false.").  Accordingly, the truth or falsity of "double the beef in

23   every bite" (and "double the beef") should be determined by the jury at trial and not

24   on summary judgment.  *FLIR Sys*, 903 F. Supp. 2d at 1131 (denying summary

25   judgment where the court was unable to "say that all reasonable jurors would

26   conclude that the messages conveyed are necessarily and unambiguously false").

27       Because all of the remaining false advertising elements rely upon a finding of

28   literal falsity, this entire motion should be denied.

{175822.2}

Case No. 8:17-cv-01474-JVS-DFM
OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT

**B.**     <u>In-N-Out Is Not Entitled To A Presumption of Deceptiveness, But</u> <u>Even If It Were, Smashburger Has Evidence to Rebut the</u> <u>Presumption.</u>

In-N-Out asserts that "literal falsity creates a presumption that statements actually misled consumers." Mot., at p. 17. As explained above, In-N-Out has not shown as a matter of law that "double the beef" is literally false. Thus, summary judgment on this element should be denied.

Even if, however, In-N-Out could show literal falsity, a presumption of deception has never been recognized by the Ninth Circuit. Indeed, In-N-Out cites only to out-of-circuit or non-binding authority in support of its argument.[8] *See* Mot. at pp. 17–18. The Ninth Circuit, however, has addressed this presumption only in the context of "deliberate or literal falsity." *Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*, No. CV:12-5868-PSG (MRWx), 2016 WL 6023822, at *8 (C.D. Cal. Aug. 18, 2016); *Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.*, No. CV98-8218NM (SHx), 2003 WL 25778704, at *4 (C.D. Cal. Jan. 29, 2003). In-N-Out has not made *any* argument that the named defendants, or any other Smashburger entity, acted deliberately or with the intention to mislead consumers. In fact, there is evidence of just the opposite: Smashburger designed the Triple Double to provide its customers with the unique experience of two layers of patty and three layers of cheese in each bite. Wexler Decl., Ex. A; Lufman Decl. ¶ 3. Thus, "double the beef in every bite" was intended to promote the unique experience of the Triple Double, not to mislead consumers. Accordingly, in the

---

[8] In-N-Out cites to one case in this district that purported to apply this presumption. Mot., at p. 18, *citing POM Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-02633CAS(JWJX), 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008). Of course, *POM Wonderful* is not binding on this Court, and the "presumption of deception found in *POM Wonderful* was clearly premised upon the materiality of the literally false representations." *Chavez v. Blue Sky Nat. Beverage Co.*, No. C 06-06609 JSW, 2011 WL 13153874, at *5 (N.D. Cal. Sept. 27, 2011) (noting that the presumption of deceptiveness does not apply where there are disputes of fact as to materiality). As set forth below, there are questions of fact remaining about materiality, so *POM Wonderful*'s logic does not apply in any event.

absence of any evidence of intent to mislead, there is no presumption of deceptiveness in the Ninth Circuit, even if In-N-Out could show literal falsity, which it cannot. *Contessa Food*, 2003 WL 25778704, at *4 (no presumption of deception where no evidence of intent to mislead). And, of course, In-N-Out cannot use its reply to attempt to add new evidence. *Stump*, 211 F.3d at 533.

Finally, even if this Court were to apply the presumption despite the absence of any Ninth Circuit recognition, it would be rebuttable. *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 315 (1st Cir. 2002) (finding that the presumption of deception is conclusive only where the defendant failed to present rebuttal evidence). Smashburger has evidence—and expects to discover more—that consumers are not deceived by "double the beef in every bite."

When consumers order the Triple Double, they can make a price point comparison between the Triple Double and the Classic Smash, which shows that the two burgers are similarly priced. Finkelstein Decl., Exs. E and F. No reasonable consumer would conclude they were getting a double regular Classic Smash—10 ounces of meat—for a price that is roughly the same (or sometimes cheaper) than the 5-ounce Classic Smash (*id.*), particularly when the Triple Double includes two extra slices of cheese. Indeed, it costs extra to add an additional patty to the Classic Smash. *See* Lufman Decl. ¶ 4. That is, consumers would not reasonably believe they can get an additional Classic Smash regular-sized patty for free simply by ordering a Triple Double. Accordingly, although Smashburger has sold millions of Triple Double sandwiches, In-N-Out has not presented *any* evidence of consumer deception or confusion. Lufman Decl. ¶ 3.

### C. In-N-Out Is Not Entitled to A Presumption of Materiality And Has Failed to Prove This Element of Its Claim.

In-N-Out argues is that it is entitled to an automatic finding of materiality. Mot., at p. 19. As with the deception element, however, because In-N-Out has not proved that Smashburger's advertisement was false or misleading, there can be no

finding of materiality. *Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 30 (E.D.N.Y. 2009) ("Because a rational trier of fact could conclude that the disputed issues relate [the meaning of the advertising claim], summary judgment is unwarranted on the issue of materiality.").

Even if In-N-Out could show that "double the beef in every bite" were literally false, however, the Ninth Circuit still requires a "separate showing of materiality." *LivePerson, Inc. v. [24]7.ai, Inc.*, No. 17-CV-01268-JST, 2018 WL 5849025, at *6 (N.D. Cal. Nov. 7, 2018). In other words, to discharge its burden, In-N-Out was required to have presented the Court with some "direct evidence that [the defendant's] statements were likely to influence consumers' purchasing decisions." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1111 (9th Cir. 2012); *see also Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 310 F. Supp. 3d 1089, 1125 (S.D. Cal. 2018) ("The Court is not convinced that the Ninth Circuit has likewise determined that materiality is presumed for actually false statements, nor has [the moving party] cited to a Ninth Circuit case stating this.").

In-N-Out cites no relevant evidence, such as consumer surveys or reliable testimonials, to support a finding of materiality. *See ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 615 (9th Cir. 2016) (finding a triable issue of fact on materiality where the nonmoving party pointed to survey results and internet message board posts to show that advertisements were factors in consumer purchasing decisions). Nor has In-N-Out presented any evidence that Smashburger's advertisement "caused, or is likely to cause, consumers to act in a manner that injures [In-N-Out]." *Nichia Am. Corp. v. Seoul Semiconductor Co., Ltd.*, No. CV 07-8354 PA (CWX), 2008 WL 11342571, at *6 (C.D. Cal. Oct. 7, 2008). That is, In-N-Out has not shown that if consumers had been aware of the quantity of meat in the Triple Double, they would have gone to another burger restaurant—let alone that they would have gone to In-N-Out, where the double burger has *less* beef than Smashburger's Triple Double burger.

Therefore, In-N-Out has not met its burden to show that the alleged misrepresentation influenced consumers' purchasing decisions, and summary judgment must be denied on this element. *Obesity Research Inst.,* 310 F. Supp. 3d at 1124–25 (denying a motion for summary judgment on materiality because the moving party "has not established falsity for the [challenged statements] … and has cited no other evidence to support its materiality arguments").

Despite the total lack of evidence of materiality, In-N-Out nonetheless claims that it is entitled to a finding of materiality simply because Smashburger's claim concerns the quantity of meat on the Triple Double, which In-N-Out contends is an "inherent" characteristic of burgers. Mot., at pp. 18–19. But there is also no Ninth Circuit authority to support the proposition that a finding of materiality is warranted based solely on the subject matter of the challenged advertisement. *See Nichia,* 2008 WL 11342571, at *9 ("It is not clear that [the inherent quality or characteristic] presumption applies in the Ninth Circuit.").[9]

Even if the presumption did apply, however, it would be rebuttable. *See Nat'l Basketball Ass'n ("NBA") v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir. 1997) (no finding of materiality in the absence of evidence that the statements at issue influenced purchasing decisions). Here, millions of people chose to enjoy the Triple Double sandwich, despite the fact that it does not contain a stomach-churning 10 ounces of beef. *See* Lufman Decl. ¶ 3. Indeed, customers plainly can see, touch, taste, and feel the amount of beef being served to them in their burger. This is not a situation where there is an allegation of a false statement regarding something that is not readily detectible, such as whether the beef contains antibiotics despite claims to the contrary.

---

[9] Again, In-N-Out relies on *POM Wonderful*, 2008 WL 4222045, at *11 to argue that there is a presumption of materiality where the deception concerns an inherent characteristic of the product. Mot., at p. 18. *POM Wonderful*, however, relied on an Eleventh Circuit case in applying this purported presumption and provided alternative factual findings—based on evidence presented ***at trial***—to support its materiality conclusion. 2008 WL 4222045, at *11.

1    Yet, those millions of customers selected, and consumed, Smashburger's

2  Triple Double sandwich.  Lufman Decl. ¶ 3.  Smashburger always allows customers

3  that are not satisfied with their food, for any reason, to return the food for a full

4  refund or to exchange the food for something else on the menu.  *Id.* ¶ 5.  By

5  deciding to enjoy the Triple Double sandwich, millions of customers have made it

6  abundantly clear that they were satisfied with the amount of beef they were served

7  in their Triple Double.  *Id.* ¶ 3.  Thus, even if those customers adopted In-N-Out's

8  view of the meaning of "double the beef in every bite," they clearly were not

9  disappointed in the sandwich and, thus, did not find the claim to be material.  At the

10  very least, there is a question of fact for the jury with respect to materiality.[10]  *See*

11  *NBA*, 105 F.3d at 855 (determining that consumers made purchasing decisions

12  based on the speed of the data delivery, not the method of data collection).

13    Accordingly, summary judgment should be denied as to materiality.

14    **D.    The Named Defendants Did Not Play a Causal Role In Placing the**

15    **Advertisements Into Interstate Commerce.**

16    In-N-Out claims that "Smashburger confirmed that Smashburger does not

17  dispute the interstate commerce element."  Mot., at p. 20 n.6.  Not so.  While

18  Smashburger does not dispute that the challenged advertisements were placed in

19  interstate commerce, Smashburger has always disputed, and continues to dispute,

20  that the Defendant Smashburger entities, *i.e.* Smashburger IP Holder LLC and

21  Smashburger Franchising LLC, played any causal role in disseminating the

22  advertisements at issue.

23    To prevail on the interstate commerce element, the moving party must

24  present "evidence [that] the defendant caused the statement to enter interstate

25  _____

26    [10] On this point, In-N-Out argues that the fact that Smashburger charges more for a burger with 10 ounces of meat than a burger with 5 ounces of meat somehow shows materiality.  *See* Mot., at p. 19.  This argument is inapt; the fact that

27  Smashburger charges more for products with more food says nothing about what factors influence customers' choices when deciding between two similarly-priced

28  burgers that deliver fundamentally different tasting experiences.

{175822.2}

Case No. 8:17-cv-01474-JVS-DFM
OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    commerce." *Avid Identification Sys., Inc. v. Schering-Plough Corp.*, 33 F. App'x

2    854, 855 (9th Cir. 2002).

3         Smashburger IP Holder is a holding company for various intellectual

4    property, which it then licenses to other Smashburger entities.  Declaration of Ty

5    Lufman in support of opposition to motion for leave to amend, ECF No. 82-2, at

6    ¶ 3.  Smashburger Franchising LLC enters into franchise agreements with

7    Smashburger franchisees.  *Id.* ¶ 4.  These defendants do not own any restaurants, do

8    not sell any hamburgers, and do not purchase or run any advertisements.  *Id.*, at ¶ 2.

9    Thus, Smashburger IP Holder and Smashburger Franchising LLC are not

10   responsible for distributing or publishing any of the "double the beef"-related

11   claims and cannot be liable for false advertising as a matter of law.

12        Even if In-N-Out could show that either entity could, under some legal

13   theory, be liable for distributing the advertisements, In-N-Out has presented no

14   facts at all on this issue.  In the absence of any evidence regarding the actions of

15   these particular defendants, In-N-Out has not satisfied its burden to prove this

16   element on summary judgment.  *See, e.g., In re Century 21-RE/MAX Real Estate*

17   *Advertising Claims Litig.*, 882 F. Supp. 915, 925 (C.D. Cal. 1994) (finding that the

18   defendant was not liable for false advertising as a matter of law in the absence of

19   evidence that the named defendant "knowingly participated in the creation,

20   development and propagation of the … false advertising campaign").  Thus, the

21   motion should be denied on this element.  *Torres Vargas v. Santiago Cummings*,

22   149 F.3d 29, 35 (1st Cir. 1998) ("The party who has the burden of proof on a

23   dispositive issue cannot attain summary judgment unless the evidence that he

24   provides on that issue is conclusive.").

25        Moreover, In-N-Out should not be able to assert new facts or arguments on

26   this element in its reply brief.  In-N-Out was fully aware at the time it filed this

27   motion that Smashburger contends that the named entities are not liable for placing

28   the advertisements at issue.  *Townsend v. Monster Beverage Corp.,* 303 F. Supp. 3d

1   1010, 1027 (C.D. Cal. 2018) ("[R]eply briefs are limited in scope to matters either

2   raised by the opposition or unforeseen at the time of the original motion.").  Indeed,

3   the parties devoted multiple pages of briefing to this issue for In-N-Out's motion

4   for leave to file the Second Amended Complaint and have also traded discovery on

5   the issue.  *See* Smashburger Opp. to Motion for Leave to Amend, ECF. No. 81-1, at

6   p. 15; In-N-Out Reply to Motion for Leave to Amend, ECF No. 94, at pp. 13–16.

7   **E.   In-N-Out Has Not and Cannot Show a Likelihood of Injury.**

8         For this element, In-N-Out must prove that it "has been or is likely to be

9   injured as a result of the false statement, either by direct diversion of sales from

10  itself to defendant or by a lessening of the goodwill associated with its products."

11  *Skydive Arizona*, 673 F.3d at 1110.  In-N-Out seeks a portion of Smashburger's

12  profits as "diversion of sales" damages.  But "to be awarded any portion of a

13  defendant's profits, a plaintiff must prove 'willfulness.'"  *Obesity Research*

14  *Institute*, 310 F. Supp. 3d at 1126, *citing Stone Creek, Inc. v. Omnia Italian Design,*

15  *Inc.*, 875 F.3d 426, 441 (9th Cir. 2017).  Indeed, the very case cited by In-N-Out to

16  support its damages position ruled that, in false advertising cases, the "prevailing

17  view appears to be that there needs to be a showing of 'willful deceptiveness'"

18  before disgorgement can be awarded.  *Pipe Restoration Techs., LLC v. Coast*

19  *Building & Plumbing, Inc.*, No. 8:13-cv-0044999-JDE, 2018 WL 6012219, at *5

20  (C.D. Cal. Nov. 16, 2018).  In-N-Out has made *no* showing of willfulness and, on

21  this basis alone, is not entitled to summary judgment on the damages element.

22        The sole evidence that In-N-Out proffers to argue that In-N-Out is entitled to

23  some yet-to-be-determined diversion of sales damages as a matter of law is research

24  data showing that there is some percentage of individuals who patronize or intend

25  to patronize both Smashburger and In-N-Out restaurants within a one- to three-

26  month period.[11]  *See* Mot., at p. 20.  From this data, In-N-Out remarkably concludes

27        [11] It is unclear how this third-party survey was conducted, is not authenticated
28  and lacks foundation, and is from before the time the Triple Double was launched.
    On those bases, Smashburger objects to that document.

1 that "it is likely that some customers who came to Smashburger as a result of

2 'Double the Beef' claims would otherwise have gone to In-N-Out."  *Id.*  This is a

3 quantum leap of logic, is not supported by the proffered evidence, and most

4 certainly does not satisfy the exacting summary judgment standard.

5       First, as explained above, the named defendants do not own any restaurants

6 or sell any hamburgers.  Thus, In-N-Out cannot obtain any disgorgement from

7 them.  In addition, survey data from several years before the Triple Double was

8 ever launched showing that some customers eat at both restaurants does not

9 establish that In-N-Out and Smashburger are competitors, let alone that a particular

10 Smashburger advertisement actually or probably diverted sales from In-N-Out to

11 Smashburger.  As a matter of fact, it makes no sense to assume that customers

12 would go to In-N-Out if they knew that the Triple Double contained the same

13 amount of meat as the regular-sized Classic Smash—In-N-Out's Double-Double

14 contains *less* meat than Smashburger's Triple Double.  SGD ¶ 34.  Thus, if

15 customers were seriously concerned with finding a "double" burger that contained

16 twice as much meat as Smashburger's 5-ounce patty, In-N-Out would not be their

17 next stop, even if that were geographically possible.

18       Furthermore, In-N-Out has not made any demonstration that its sales

19 declined when Smashburger began its Triple Double advertising campaign, nor has

20 it made any demonstration of sales at all.  Thus, there is simply no evidence to

21 support In-N-Out's claim that it has shown a "likelihood of diverted sales []

22 sufficient to demonstrate a lack of material fact on the damages element of [its]

23 false advertising claim."  Mot., at p. 20.  *See Nutrition Distribution LLC v. Lecheek*

24 *Nutrition, Inc.*, No. CV:15-1322 MWF (MRWx), 2015 WL 12659907, at *7 (C.D.

25 Cal. June 5, 2015) (denying a preliminary injunction where "Plaintiff has not

26 indicated that sales of [its product] declined during the 10 months that [defendant]

27 sold [defendant's product], or really any demonstration of sales at all.  Moreover,

28 Plaintiff has offered no evidence that any possible decrease in sales was

1   proximately caused by the sale of Defendants' products.").

2          Nevertheless, In-N-Out claims that it is entitled to a presumption of injury

3   because the parties are "direct competitors and [Smashburger's] misrepresentation

4   has a tendency to mislead consumers." Mot., at p. 20. The first problem is that the

5   presumption applies only "in false direct comparative advertising

6   cases." *Munchkin, Inc. v. Playtex Prods., LLC*, 600 F. App'x 537 (9th Cir.

7   2015), *as amended* (July 31, 2015). In-N-Out specifically argues that this is *not* a

8   direct comparative advertising case. *See* Mot., at pp. 16–17 ("[C]onsumers could

9   not reasonably construe 'Double the Beef' as a comparison to other restaurants'

10  burger."). Thus, In-N-Out cannot avail itself of this presumption. *Munchkin*, 600

11  F. App'x at 537–38 ("Although we have held that a presumption of injury is

12  appropriate in false direct comparative advertising cases, …, this is not a direct

13  comparative advertising case because the 'advertising does not directly compare . . .

14  products.'") (internal citations omitted).

15         The next problem, of course, is that the competitor presumption applies only

16  where the plaintiff has proved that the defendant made a misrepresentation. *See*

17  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011). For the

18  reasons explained above, In-N-Out has not proved literal falsity, and it has not

19  made any argument—or proffered any evidence—to show that the statement is

20  misleading or deceptive to consumers. *Cf. Pipe Restoration Techs, LLC v. Coast*

21  *Building & Plumbing, Inc.*, 2018 WL 6012219 at *9 (C.D. Cal., Nov. 16, 2018)

22  (applying a presumption of harm only after a finding of intentional, willful, and

23  material deception). Moreover, as addressed with respect to materiality, there are

24  numerous issues of fact concerning whether Smashburger's claims actually had a

25  tendency to affect purchasing decisions. Thus, even if In-N-Out could show that it

26  was Smashburger's "direct competitor," the presumption is inapplicable. *See*

27  *ThermoLife*, 648 F. App'x at 616 ("[A] court cannot assume injury without any

28  evidence of causality and consumer deception.").

1    In addition, In-N-Out's own senior marketing representatives testified they

2    do *not* consider Smashburger to be a competitor.  Specifically, In-N-Out's Senior

3    Marketing Manager testified that In-N-Out does not consider any other fast-food

4    restaurants, including Smashburger, to be "direct competitors."  Ex. C to

5    Finkelstein Decl. at 74:18–75:4; 88:7–12.  In-N-Out's Marketing Supervisor

6    testified that she does not know if In-N-Out has any competitors, but In-N-Out is

7    not impacted by the marketing done by other companies.  *Id.*, Ex. D, at 48:8–49:9.

8    In-N-Out cannot override the sworn testimony of its own executives at summary

9    judgment by presenting maps of restaurant locations.

10        While In-N-Out is not seeking a specific amount of damages, it should be

11   noted that, to support its claim that it is entitled to a finding of injury, In-N-Out

12   identifies Smashburger ads and locations where the parties have no meaningful

13   geographic overlap and thus cannot, as a matter of physical possibility, be

14   competitors in those markets.  For example, In-N-Out includes as an exhibit to its

15   motion one of Smashburger's advertisements in Longmont, Colorado.  *See* Wexler

16   Decl., Ex. W.  This advertisement was posted 484 miles from the nearest In-N-Out.

17   Finkelstein Decl., Ex. H.  Surely, In-N-Out does not contend that a consumer who

18   saw the Triple Double advertisement in Longmont would have driven the nearly

19   500 miles to In-N-Out if not for the "double the beef in every bite" advertisement.

20   Further still, In-N-Out contends that a "significant majority" of Smashburger's

21   restaurants in states where the restaurants overlap are "located in close proximity"

22   to In-N-Out restaurants.  SGD ¶ 26.  Some of these "proximate" restaurants are as

23   far as 20 miles away.  *Id.*  Customers who are seeking a fast food burger are highly

24   unlikely to drive 40 miles round trip to find a different burger restaurant.  Indeed,

25   the two gallons of gas it would cost to drive 40 miles would eclipse the price of the

26   burger itself.  Thus, In-N-Out has not shown, as a matter of law, that it "directly

27   competes" with Smashburger for the purposes of this element.

28        Finally, even if the Court found that the presumption of injury did apply, and

{175822.2}

even if the Court overlooked the lack of any evidence of willfulness, *ThermoLife* compels a denial of the motion on this element.  648 Fed. App'x at 615–16.  In that case, a Ninth Circuit panel found that the presumption of commercial injury did apply as between two competitors.  *Id.* at 617.  Yet, because the presumption is rebuttable, the Court found that the issue of injury should be determined at trial.  *Id.* That is, the Ninth Circuit in that case *reversed* summary judgment, ruling that "[t]here is a triable issue on injury."  *Id*. at 615.  Here, Smashburger has presented evidence that In-N-Out will not be able to show any injury to its sales, and In-N-Out has presented no sales evidence at all, let alone sales evidence that can be causally connected the Triple Double advertisements.

Thus, the fact of injury should be left to the jury.

## V. **CONCLUSION**

In-N-Out has failed to show that it is entitled to judgment as a matter of law on its false advertising claim.  First, there are disputed issues of fact regarding the meaning of the claim "double the beef," and thus it cannot be deemed literally false as a matter of law.  Because the rest of the elements rely upon a finding of literal falsity, the motion must be denied in its entirety.  In addition, In-N-Out has failed to present sufficient evidence to support summary judgment on the elements of deceptiveness, materiality, causation, and harm.

Accordingly, this Court should deny In-N-Out's motion.

Dated: January 15, 2019              UMBERG ZIPSER LLP


                                     By:___s/ Mark A. Finkelstein_____
                                          Mark A. Finkelstein
                                          Attorneys for Defendants
                                          SMASHBURGER IP HOLDER LLC,
                                          AND SMASHBURGER
                                          FRANCHISING LLC