1  CAROLYN S. TOTO (SBN 233825)
   carolyn.toto@pillsburylaw.com
2  JEFFREY D. WEXLER (SBN 132256)
   jeffrey.wexler@pillsburylaw.com
3  SARKIS A. KHACHATRYAN (SBN 293991)
   sarkis.khachatryan@pillsburylaw.com
4  PILLSBURY WINTHROP SHAW PITTMAN LLP
   725 South Figueroa Street, Suite 2800
5  Los Angeles, CA  90017-5406
   Telephone: (213) 488-7100
6  Facsimile No.: (213) 629-1033

7  Attorneys for Plaintiff and Counterdefendant
   IN-N-OUT BURGERS

8
                    UNITED STATES DISTRICT COURT
9
                  CENTRAL DISTRICT OF CALIFORNIA
10
                          SOUTHERN DIVISION
11

12  IN-N-OUT BURGERS, a California          Case No. 8:17-cv-1474-JVS-DFM
    corporation,
13                                          **PLAINTIFF AND**
                          Plaintiff,        **COUNTERDEFENDANT IN-N-**
14                                          **OUT BURGERS' REPLY**
              vs.                           **MEMORANDUM OF POINTS AND**
15                                          **AUTHORITIES IN SUPPORT OF**
    SMASHBURGER IP HOLDER LLC, a            **MOTION FOR PARTIAL**
16  Delaware limited liability company; and **SUMMARY JUDGMENT RE**
    SMASHBURGER FRANCHISING LLC,            **LIABILITY ON FALSE**
17  a Delaware limited liability company,   **ADVERTISING CLAIM**

18                        Defendants.       **[PUBLICLY FILED VERSION]**

19
    SMASHBURGER IP HOLDER LLC,              Date:      February 4, 2019
20  and SMASHBURGER FRANCHISING             Time:      1:30 p.m.
    LLC,                                    Courtroom: 10C
21
                       Counterclaimants,    Judge:  Hon. James V. Selna
22
              vs.                           Fact Discovery Cut-Off: Apr. 19, 2019
23                                          Pre-Trial Conference: Sept. 9, 2019
    IN-N-OUT BURGERS,                       Trial Date:           Sept. 24, 2019
24
                       Counterdefendant.
25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

ARGUMENT ........................................................................................................... 4

I.      THE COURT SHOULD GRANT SUMMARY JUDGMENT ON IN-N-OUT'S CLAIM FOR FALSE ADVERTISING. ......................................... 4

    A.      Smashburger's "Double the Beef" Advertisements are Literally False or False by Necessary Implication. ..................................................... 4

        1.      Smashburger's "Double the Beef in Every Bite" Advertisements are Literally False or False by Necessary Implication. ............................................................................. 5

        2.      Smashburger's "Double the Beef" Advertisements, Without "In Every Bite," are Literally False or False by Necessary Implication. ............................................................................. 9

    B.      Because Smashburger's Advertising is Literally False, Deceptiveness is Presumed. ..................................................................... 13

    C.      Smashburger's False Advertising is Material. ......................................... 15

    D.      Smashburger Caused Its False Advertising to Enter Interstate Commerce. ............................................................................................... 18

    E.      In-N-Out is Likely to be Injured as a Result of Smashburger's False Advertising. ..................................................................................... 21

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Broadcom Corp. v. SiRF Tech., Inc.*,
    No. SACV 08–546 JVS (MLGx),
    2009 WL 10672287 (C.D. Cal. Oct. 8, 2009) ..................................... 16

*Buetow v. A.L.S. Enters., Inc.*,
    650 F.3d 1178 (8th Cir. 2011) ........................................................... 13

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
    No. C10-861 RSM,
    2015 WL 3407882 (W.D. Wash. May 27, 2015) ................................ 14

*Castrol Inc. v. Pennzoil Co.*,
    987 F.2d 939 (3d Cir. 1993) ................................................................ 7

*Chavez v. Blue Sky Nat'l Beverage Co.*,
    No. C 06-06609 JSW,
    2011 WL 13153874 (N.D. Cal. Sept. 27, 2011)................................. 14

*Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*,
    No. CV:12-5868-PSG (MRWx),
    2016 WL 6023822 (C.D. Cal. Aug. 18, 2016) ................................... 14

*Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.*,
    No. CV 98-8218 NM (SHx),
    2003 WL 25778704 (C.D. Cal. Jan. 29, 2003).................................. 14

*Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990) ........................................................ 15, 16

*Edmiston v. Jordan*,
    98 Civ. 3298 (DLC), 1999 WL 1072492 (S.D.N.Y. Nov. 24, 1999)............... 4, 5

*Flir Sys., Inc. v. Sierra Madre, Inc.*,
    903 F. Supp. 2d 1120 (D. Ore. 2012) .................................................. 5

*Gillette Co. v. Wilkinson Sword, Inc.*,
    795 F. Supp. 662 (S.D.N.Y. 1992),
    *vacated on other grounds*, No. 89 Civ. 3586(KMW),
    1992 WL 12000396 (S.D.N.Y. Oct. 28, 1992) ................................... 20

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
    774 F.3d 192 (3d Cir. 2014) ........................................................... 4, 6

*Harper House, Inc. v. Thomas Nelson, Inc.*,
    889 F.2d 197 (9th Cir. 1989) ............................................................. 21

*In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*,
    882 F. Supp. 915 (C.D. Cal. 1994)............................................... 20, 21

-ii-

*K&N Eng'g, Inc. v. Spectre Performance*,
No. EDCV 09-1900-VAP,
2011 WL 4387094 (C.D. Cal. Sept. 20, 2011) ........................................ 5

*LivePerson, Inc. v. [24]7.ai, Inc.*,
No. 17-CV-01268-JST,
2018 WL 5849025 (N.D. Cal. Nov. 7, 2018) ........................................ 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .................................................................................. 18

*Mead Johnson & Co. v. Abbott Labs.*,
201 F.3d 883 (7th Cir.),
*opinion amended on denial of reh'g*,
209 F.3d 1032 (7th Cir. 2000) ............................................................... 4

*Munchkin, Inc. v. Playtex Prods., LLC*,
600 F. App'x 537 (9th Cir. 2015) ........................................................... 23

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
105 F.3d 841 (2d Cir. 1997) .................................................................... 16

*Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.*,
No. 4:14 CV 859 RWS,
2015 WL 1782661 (E.D. Mo. Apr. 20, 2015) ........................................ 20

*Nichia Am. Corp. v. Seoul Semiconductor Co., Ltd.*,
No. CV 07-8354 PA (CWx),
2008 WL 11342571 (C.D. Cal. Oct. 7, 2008) ........................................ 17

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck
Pharm. Co.*,
290 F.3d 578 (3d Cir. 2002) ..................................................................... 6

*Nutrition Distrib. LLC v. Lecheek Nutrition, Inc.*,
No. CV:15-1322 MWF (MRWx),
2015 WL 12659907 (C.D. Cal. June 5, 2015) ................................... 22, 23

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
No. CV 15-9704-JFW (ASx),
2016 WL 3563504 (C.D. Cal. Mar. 9, 2016) ........................................ 21

*Pipe Restoration Techs., LLC v. Coast Building & Plumbing, Inc.*,
No. 8:13-cv-00499-JDE, 2018 WL 6012219 (C.D. Cal. 2018) ............ 23

*POM Wonderful LLC v. Purely Juice, Inc.*,
No. CV-07-02633 CAS (JWJx),
2008 WL 4222045, *11 (C.D. Cal. July 17, 2008) ........................... 14, 16

*Rexall Sundown, Inc. v. Perrigo Co.*,
651 F. Supp. 2d 9 (E.D.N.Y. 2009) ........................................................ 16

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003) ........................................................... 15, 16

-iii-

*Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*,
  702 F. Supp. 2d 253 (D. Del. 2010) ..................................................................... 13

*Simpler Consulting, Inc. v. Wall*,
  No. CIVA 05-452,
  2008 WL 1710101 (W.D. Pa. Apr. 7, 2008) .................................................... 6, 11

*Skydive Arizona, Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) ............................................................................ 17

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ......................................................... 4, 6, 17, 22

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
  648 F. App'x 609, 615 (9th Cir. 2016) ..................................................... 17, 23, 24

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007) .................................................................................. 6

*Townsend v. Monster Beverage Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018) ............................................................. 19

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) .................................................................. 21, 23, 24

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) .............................................................................. 7

## STATUTES

United States Code
  Title 15, Section 1125(a) ..................................................................................... 21

## RULES

Fed. R. Civ. P.
  Rule 30(b)(6) ........................................................................................................ 3
  Rule 37(c)(1) ......................................................................................................... 7
  Rule 56(d) ............................................................................................................. 9

C.D. Cal. Local Rules
  Local Rule 56-2 ..................................................................................................... 2

# **INTRODUCTION**

In opposing the motion for partial summary judgment brought by Plaintiff and Counterdefendant In-N-Out Burgers ("In-N-Out"), Defendants and Counterclaimants Smashburger IP Holder LLC ("Smashburger IP") and Smashburger Franchising LLC (collectively, "Smashburger") attempt to create ambiguity where none exists.  They argue, inconsistently, that the "Double the Beef" slogans refer to: (1) the number of patties in the Triple Double burgers; (2) the amount of beef in Smashburger's small burgers; and (3) the amount of beef in unspecified competitors' single burgers. Smashburger has not created a genuine issue of fact on any of these contentions. First, Smashburger provides no support for its contention that "Double the Beef" refers to double the quantity of **patties** rather than double the quantity of **beef**, and such interpretation is contrary to the plain meaning of the term "beef."  Second, Smashburger does not dispute that its small burgers are on the menu only as part of its kids meals, nor does it explain how consumers could understand "Double the Beef" to be a comparison to a "Classic Small Smash" that is not on its menu.  Third, Smashburger offers no reason why consumers could interpret "Double the Beef" as a reference to competitors' single burgers, and ███████████████████████████████ ██████████████████████████████████████████████████████

Smashburger's scattershot arguments as to other elements of the false advertising claim are equally without merit.  First, Ninth Circuit law does recognize a presumption of deceptiveness based upon literal falsity, not just deliberate falsity. Second, Smashburger's false representations as to beef quantity are material on their face.  Third, In-N-Out's motion raises the issue whether the ads entered interstate commerce – an issue that Smashburger said it would not dispute at the meet-and-confer session – and not the issue of the named defendants' liability for those ads. Finally, the huge amount of overlap in geography and customers between Smashburger and In-N-Out demonstrates that, as a statistical matter, some customers who went to Smashburger because of the false "Double the Beef" advertisements

would otherwise have gone to In-N-Out; this requires partial summary judgment on the issue of injury, leaving for trial the determination of disgorgement damages and the appropriate injunctive relief.

In-N-Out's motion is not "premature."  The motion is based upon the literal falsity of the "Double the Beef" representations.  Literal falsity is an issue to be decided by the Court; nothing that happens in discovery could make Smashburger's "Double the Beef" advertising true.  By resolving the issue of literal falsity now, the Court can spare the parties the expense of engaging survey experts to opine on an issue which, In-N-Out believes, is abundantly clear.[1]

## BACKGROUND

Smashburger's "Factual Background" relies in large part upon facts it failed to include in its Statement of Genuine Disputes, either in response to In-N-Out's facts or as additional disputed facts, although Local Rule 56-2 requires a party opposing a motion for summary judgment based upon such facts to include them in the Statement.  *See* Dkt. 156 at 2:21 – 4:19.

In any event, Smashburger's stated facts are, for the most part, not relevant to this motion, or hurt Smashburger's case.  The ability of Smashburger customers to "custom order burger-style sandwiches by selecting from a long list of ingredient choices" and to order "a number of custom-designed sandwiches with pre-set ingredients," *id.* at 2:22 – 3:11, provides absolutely no indication to customers that ordering a standard Triple Double burger off the menu, advertised as having "Double the Beef," gets them only two half-sized patties.  Smashburger asserts that "[t]he Classic Smash beef patties generally come in a variety of sizes, including small (2.5 ounces), regular (5 ounces), and big (6 ounces)," *id.* at 3:2-4, but it does not dispute that ████████████████████████████████████████████████████████

████, SS 18, and the only 2.5-ounce patty on Smashburger's menu is that included in

---

[1] Smashburger's suggestion to the contrary, *see* Dkt. 156 at 2 n.2, survey experts are far more expensive than this motion.

1    a Kids Meal, the "Kids Smash," *see* Wexler Decl., Ex. O [Dkt. 146-15] (Smashburger

2    menu posted on Smashburger's website as of December 19, 2018).

3          Smashburger claims, "[b]ecause Smashburger and In-N-Out take such different

4    approaches to their marketing and menu offerings, In-N-Out does not consider

5    Smashburger to be a 'direct competitor,' nor does it believe that Smashburger's

6    product marketing has any impact on In-N-Out's sales."  Dkt. 156 at 3:12-26.

7    Smashburger's assertion is misleading in suggesting this testimony was offered by In-

8    N-Out itself through a Rule 30(b)(6) designee, rather than by two employees testifying

9    in their individual capacities, or that the witnesses testified about the parties' different

10   approaches to marketing and menu offerings.  It also overstates the testimony of these

11   two witnesses.  Gregg Barnard testified that "I don't consider us having competitors in

12   our space, direct competitors."  Declaration of Gregg Barnard at 74:21 – 75:4 (Ex. C

13   to Finkelstein Decl.) [Dkt. 156-1].  Jiin Lee testified that: (1) "I personally don't pay

14   attention to competitors, so I don't really know"; and (2) in response to the question

15   "Do you think how other companies are marketing their product has an impact on In-

16   N-Out?," "No, I don't think so."  Declaration of Jiin Lee  at 48:20 – 49:9 (Ex. D to

17   Finkelstein Decl.) [Dkt. 156-1].  Smashburger introduces no evidence to dispute that ████

18   ███████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████ SS 31-32, that there is

20   considerable geographic overlap between Smashburger restaurants and In-N-Out

21   restaurants in the states where both In-N-Out and Smashburger operate restaurants, SS

22   24-30, or that Smashburger and In-N-Out are both quick-service restaurants

23   specializing in hamburgers.

24         Smashburger asserts that "[b]ecause at least some versions of the Triple Double

25   feature the same amount of meat by weight (pre-cooked) as a 5-ounce-sized, single-

26   patty Classic Smash, the two burgers have a similar price point, with the regular Triple

27   Double costing only $0.30 more."  Dkt. 156 at 4:4-8 (citing Finkelstein Decl., Ex. F

28   [Dkt. 156-1]).  Smashburger also notes that "[m]any customers were able to enjoy the

-3-

Triple Double for significantly *less* than a Classic Smash, as it was launched at only $4.00." *Id.* at 4 n.4. This is precisely why Smashburger's "Double the Beef" advertisements were likely to deceive customers; Smashburger tells customers that they are getting twice as much beef as a Classic Smash for not much more than – or considerably less than – the cost of a Classic Smash.

## ARGUMENT

## I.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON IN-N-OUT'S CLAIM FOR FALSE ADVERTISING.

Smashburger agrees with In-N-Out that the elements of a claim for false advertising are those set forth in *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). *Compare* Dkt. 156 at 5:23 – 6:6 *with* Dkt. 151 at 10:19-27. Smashburger is unable to demonstrate a genuine issue of material fact on those elements.

### A.   Smashburger's "Double the Beef" Advertisements are Literally False or False by Necessary Implication.

While Smashburger's statement of the law of literal falsity generally tracks In-N-Out's statement of that law, *compare* Dkt. 156 at 6:12 – 7:10 *with* Dkt. 151 at 11:9 – 12:21, Smashburger fails to address three key legal doctrines set forth in In-N-Out's papers: (1) where an advertiser takes an affirmative step to include a reference in its advertising that defines its claim, such reference constitutes an explicit claim to be considered by the Court in determining what the claim means, *see Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 199-200 (3d Cir. 2014); (2) the determination whether an advertising claim is "explicit and unambiguous" is to be made by the Court, and surveys cannot be used to change the plain meaning of words, *see id.* at 200-02; *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 885-87 (7th Cir.), *opinion amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000); and (3) a court may determine whether an advertisement is literally false "based on its own

-4-

common sense and logic in interpreting the message," *Edmiston v. Jordan*, 98 Civ.
3298 (DLC), 1999 WL 1072492, *9 (S.D.N.Y. Nov. 24, 1999).

Instead, Smashburger attempts to confound the issues of the meaning of a claim
and the falsity of a claim by citing *K&N Eng'g, Inc. v. Spectre Performance*, No.
EDCV 09-1900-VAP, 2011 WL 4387094, *9 (C.D. Cal. Sept. 20, 2011), for the
propositions that: (1) "'[l]iteral falsity is a question of fact' that requires two separate
factual determinations'"; and (2) "'summary judgment should not be granted where a
reasonable jury could conclude a statement is not false.'"  Dkt. 156 at 7:1-16.
However, the *K&N Eng'g* court was addressing the issue whether advertising claims
were literally false because they allegedly were *not supported by product testing*.  *See*
*K&N Eng'g, Inc.*, 2011 WL 4387094, *9-13 ("[l]iteral falsity is a question of fact, and
summary judgment should not be granted where a reasonable jury could conclude that
a statement is not false").  The court said nothing about requiring "two separate
factual determinations," Dkt. 156 at 7:1-2, or about requiring a jury to determine
whether an advertising claim is literally false or misleading.  Similarly, *Flir Sys., Inc.*
*v. Sierra Madre, Inc.*, 903 F. Supp. 2d 1120, 1130-31 (D. Ore. 2012), denied summary
judgment because a reasonable juror could find the advertising claims to be false
*based on inaccurate testing*, not because the issue of literal falsity was for the jury.  In
any event, this argument is moot because neither the Court nor a reasonable jury could
construe the "Double the Beef" advertising claims in the manner urged by
Smashburger.

### 1.     Smashburger's "Double the Beef in Every Bite" Advertisements are Literally False or False by Necessary Implication.

Smashburger first attempts to argue for the truthfulness of its "Double the Beef
in Every Bite" advertisements.  It claims that "customers do, in fact, experience
'double the beef in every bite'" compared to any single-patty burger on
Smashburger's menu or the menus of other fast food chains.  That is, because 'double
the beef' refers to the number of patties, the statement is true."  Dkt. 156 at 7:24 – 8:4

1    (footnote omitted).  Smashburger "gives this Court only naked attorney argument, and

2    no evidence to support this position."  *Id.* at 8:12-13.

3        Smashburger first argues that "In-N-Out cannot just ignore the effect of the

4    phrase 'in every bite' on the literal falsity analysis," asserting that advertising claims

5    must be considered in their entirety for truth or falsity, not as component parts.  Dkt.

6    156 at 8:15-25.  However, In-N-Out did not "ignore" "in Every Bite"; instead, it

7    explained that the "Double the Beef" slogans were literally false and that the addition

8    of "in Every Bite" did not render the slogans truthful.  *See* Dkt. 151 at 14:4-26.

9        Second, Smashburger argues that "[a] literal falsity determination . . . is not

10   appropriate where, as here, the very matter in dispute is how consumers may interpret

11   the meaning of the claim."  Dkt. 156 at 9:1-25.  The cases cited by Smashburger do

12   not support this proposition.  In *Simpler Consulting, Inc. v. Wall*, No. CIVA 05-452,

13   2008 WL 1710101, *8 (W.D. Pa. Apr. 7, 2008), the court denied a motion for

14   summary judgment because it found that an advertising claim was not literally false,

15   and that the question whether the claim was misleading was for the jury.  *See id.*  Both

16   *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007), and

17   *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Pharm. Co.*, 290 F.3d

18   578, 586-87 (3d Cir. 2002), acknowledged that a literal falsity determination is

19   appropriate where an advertising claim is unambiguous.[2]  Thus, Smashburger has

20   cited no authority to dispute the case law holding that the Court is entrusted with the

21   determination as to whether advertising claims are literally false, *i.e.*, "explicit and

22   unambiguous."  *See*, *e.g.*, *Groupe SEB USA, Inc.*, 774 F.3d at 200-02.

23       Third, Smashburger does not dispute that the dictionary defines "beef" as "the

24   flesh of an adult domestic bovine (such as a steer or cow) used as food."  Dkt. 151 at

25

26   _____

     [2] *Southland Sod Farms*, 108 F.3d at 1139, addressed one instance in which literal
27   falsity may be found – where product testing does not support advertising claims.
     That case neither held nor suggested that a finding of literal falsity is inappropriate
28   where "the very matter in dispute is how consumers may interpret the meaning of the
     claim."  Dkt. 156 at 9:7-12.

-6-

14:8-10.  In response to In-N-Out's statement that "Smashburger's contention that the term 'beef' means 'patty' is contrary to the dictionary definition of 'beef,'" *id.* at 14:10-11, Smashburger claims that "[t]his is a *non-sequitur*" and that "[t]he facial meaning of 'double the beef in every bite' does not follow from the definition of the word beef," Dkt. 156 at 9:26 – 10:2 (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993)).  Smashburger is presumably relying upon *Castrol* for the proposition that "in assessing whether an advertisement is literally false, a court must analyze the message conveyed in full context." *Castrol, Inc.*, 987 F.2d at 946. However, Smashburger does not and cannot present any argument why the term "beef," when analyzed in the context of the "Double the Beef" slogans, somehow has a meaning that differs from its commonly understood meaning.  In short, the term "beef" does not mean "patty" (and Smashburger has not presented evidence to the contrary), and the "Double the Beef" slogans are literally false because the Triple Double burgers do not contain double the amount of beef.

Fourth, Smashburger asserts that "[e]ven accepting In-N-Out's dictionary definition of beef, it is still literally true to say that the Triple Double contains 'double the bovine flesh in every bite' relative to a single-patty burger." Dkt. 156 at 10:2-4. *See id.* at 11:25-26.  Because Smashburger's interrogatory response did not identify this ground as a basis for claiming that the "Double the Beef" advertisements are not false or misleading, SS 43, Smashburger may not raise that ground now.[3]  *See* Fed. R. Civ. P. 37(c)(1); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  In any event, this contention is demonstrably false.  Because two 2.5-ounce patties stacked on each other will be about the same height as a single 5.0-ounce patty, there is no way that a bite of a Triple Double burger with two 2.5-ounce patties could contain twice as much beef as a bite of a regular burger with one 5.0-

---

[3] For the same reason, Smashburger cannot argue that the "Double the Beef" advertisements are literally true because they might refer to "surface area." Dkt. 156 at 8:5-8.  In any event, there is no conceivable way to interpret "Double the Beef" as meaning "double the surface area of beef."

-7-

1  ounce patty.  To the contrary, because the Triple Double burger is taller than the

2  Classic Smash burger, *see* Supplemental Declaration of Jeffrey D. Wexler, ¶ 2, Ex. J

3  (photograph of Triple Double burger and Classic Smash burger), a bite of a Triple

4  Double burger will contain less beef than a bite of a Classic Smash burger – certainly

5  not twice as much beef.

6          Fifth, Smashburger ineffectively responds to In-N-Out's evidence, *see* Dkt. 151

7  at 14:27 – 15:8, that ████████████████████████████████████████

8  ███████████████████████████████████████████████████

9  █████████████████████████████, and that the industry and consumers are

10  likely to believe that a "double" burger actually contains twice the quantity of beef,

11  *see* Dkt. 156 at 10:5 – 11:2.  To avoid any confusion, In-N-Out clarifies that it does

12  not allege that Smashburger's use of the term "double," taken alone, is literally false

13  or misleading.  Instead, In-N-Out contends that Smashburger's "Double the Beef"

14  slogans are literally false, and that the literal falsity of those slogans is only reinforced

15  by the fact that, ████████████████████████████, competitors' "double"

16  burgers generally contain twice as much beef as their "single" burgers.

17          Smashburger argues that McDonald's and Carl's Jr. offer double burgers with

18  patties that are not twice the size of the patties on certain other burgers they sell.  *See*

19  *id.* at 10:20 – 11:5. ████████████████████████████████████

20  ████████████████████████████████████████████████

21  █████████████████████████████████████████████████

22  ████████████████████████████████████████████████

23  ████████████████  SS 35-36.  The fact that McDonald's and Carl's Jr. offer certain

24  double burgers with smaller patties without using "double the beef" slogans or

25  referring to any of their single-patty burgers is irrelevant to the literal falsity of

26  Smashburger's use of "Double the Beef" slogans made with specific reference to the

27  Classic Smash, a 5.0-ounce burger.

28

-8-

Smashburger states that it "has issued many third-party subpoenas to conduct further research on this issue," and suggests that the Court defer ruling on In-N-Out's motion pursuant to Fed. R. Civ. P. 56(d) "to the extent this Court believes evidence regarding how third-parties use 'double' in their menus is necessary to rule on this motion." Dkt. 156 at 11:6-13. ████████████████████████████████████

████████████████████████████████████████████████████, SS 35-36, it clearly has no need to gather such information by subpoena.  Nor has Smashburger explained how competitors' sale of "double" burgers has any relevance to the literal falsity of Smashburger's use of "Double the Beef" slogans.  The Court should decline Smashburger's Rule 56(d) request as a distract-and-delay tactic.

Finally, Smashburger claims that "in the context of a complex menu like Smashburger's the term 'double' plausibly refers to various things other than a comparison between the weight of the uncooked patties in a Triple Double burger as compared to the weight of the uncooked patty in the standard-sized Classic Smash burger." Dkt. 156 at 11:14 – 12:9.  Smashburger does not explain how the supposed complexity of its menu is relevant to this analysis.  The slogan "Double the Beef in Every Bite" specifically refers to the Classic Smash burger and unequivocally refers to double the quantity of beef in every bite.  *See* Wexler Decl., Exs. O, S [Dkts. 146-15, 146-19].  The Triple Double burger does not contain twice as much beef in every bite as the Classic Smash burger.  Consequently, Smashburger is left with no plausible alternative interpretation of that slogan that is not literally false.  In-N-Out is therefore entitled to summary judgment as to the literal falsity of the "Double the Beef in Every Bite" advertisements.

### 2.  Smashburger's "Double the Beef" Advertisements, Without "In Every Bite," are Literally False or False by Necessary Implication.

Smashburger does not dispute In-N-Out's showing, *see* Dkt. 151 at 14:17-20, that Smashburger's arguments based on "in every bite" are irrelevant to the literal falsity of the "Double the Beef" slogans that do not use "in Every Bite."  Instead, it

-9-

1  argues that the "Double the Beef" advertisements "remain literally true or, at least,

2  ambiguous" because the Triple Double burgers contain twice as much beef as: (1) the

3  smallest burgers available at Smashburger; or (2) some competitors' burgers, *see* Dkt.

4  156 at 12:10:14.

5      **Comparison to the "Classic Small Smashburger."**  Smashburger first argues

6  that "the Triple Double contains double the beef of a Classic Small Smashburger," and

7  that "it is literally true that the Triple Double 'contain[s] twice the quantity of beef as

8  a single burger' on the Smashburger menu." *Id.* at 12:18-24.  Smashburger contends

9  that "nowhere does [it] define which burger 'double the beef' refers to," and that

10 "'double' could just as easily refer to Smashburger's smallest-sized patty as it could to

11 its regular-sized patty, or even its largest-sized patty." *Id.* at 12:25 – 13:6.

12     However, there is no "Classic Small Smashburger" on Smashburger's menu.

13 *See* Wexler Decl., Ex. O [Dkt. 146-15].  Smashburger does not dispute In-N-Out's

14 showings that: (1) the small burger, with the 2.5-ounce patty, is listed under Kids

15 Meals, but does not appear elsewhere on Smashburger's menu, SS 7, 8, 17, 19; (2) ███

16 ████████████████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████, SS 18; and (3) the "Craft Your Own"

18 portion of Smashburger's menu identifies two patty sizes – "REG" and "BIG," SS 17.

19 *See* Dkt. 151 at 16:3-10.  Instead, Smashburger's evidence indicates that, at most, a

20 Smashburger cashier might inform a customer that it is possible to order a small

21 Classic Smash burger and that Smashburger's receipts will identify such a burger as a

22 "Classic Small Smash."  *See* Finkelstein Decl., ¶ 5, Ex. F [Dkt. 156-1].  There is no

23 way that a statement that the Triple Double contains "Double the Beef" could be

24 understood by consumers as a reference to double the quantity of beef in a "Classic

25 Small Smashburger," an item that is not on Smashburger's menu.[4]

26

27 ───────────────

28 [4] Smashburger does not attempt to argue that the "Double the Beef" representation is a
comparison to the kids' patty on the Kids Menu, even though the small patty is the
same size as the kids' patty.

-10-

1    In response to In-N-Out's contention that its menu makes the "Double the

2  Beef" representation by reference to the "Classic Smash™ Beef build," not the Kids

3  Smash, *see* Dkt. 151 at 15:17 – 16:2, Smashburger asserts that:

4       . . . "Classic Smash Beef build simply clarifies the type of meat that the
        Triple Double contains—which is necessary because Smashburger offers
5       beef, turkey, chicken, and veggie patties—as well as the toppings that
        come with it (lettuce, pickles, onions, *etc.*).  Wexler Decl., Ex. O.
6       Accordingly, Smashburger's customers would understand that the
        reference to "Classic Smash Beef build" does not refer to the *amount* of
7       meat, but rather, the type of meat they can expect to get on the Triple
        Double and the accompanying accoutrements and sauces. . . .
8
9  Dkt. 156 at 13:7-17 (emphasis in original).

10    Smashburger cites no evidence in support of its interpretation of the term

11 "build" other than the menu itself, which includes no definition.  Smashburger has not

12 submitted a declaration to support its interpretation of the term "build." ███████

13 ████████████████████████████████████████████████████████████████████

14 ███████████████████████████████     *See* Wexler Decl., ¶ 6, Ex. I; Supp.

15 Wexler Decl., ¶¶ 3-5, Exs. KK-MM.   In any event, Smashburger offers no

16 explanation how customers would understand that Smashburger did not intend the

17 term "Classic Smash™ Beef build" to refer to the patty size of the Classic Smash.

18    Smashburger next argues that its "menu board references 'Classic Smash Beef

19 build,' and not 'Classic Smash Beef build with regular-sized patty,' further

20 establishing that the reference does not necessarily convey the weight of beef being

21 used."  Dkt. 156 at 13:23-26.  However, Smashburger does not and cannot dispute that

22 the menu contains only one reference to the Classic Smash, SS 16, or that the Classic

23 Smash on the menu contains a single 5.0-ounce patty, SS 9-10.  Thus, the reference to

24 "Classic Smash™ Beef build" is necessarily a reference to "Classic Smash Beef build

25 with regular-sized patty."[5]

26 ─────────────────

27 [5] *Simpler Consulting, Inc.*, 2008 WL 1710101, *8, found a jury issue as to whether a
   statement was rendered literally false by its placement under a brochure heading that
28 referred to "customers".  The case has no bearing on whether the menu's use of
   "Classic Smash™ Beef build" is a reference to the only Classic Smash burger on the
   menu (and, thus, its patties).

-11-

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION
FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 8:17-cv-1474-JLS-DFM

4827-5391-6806.v1

1  **Comparison to Competitors' Burgers.**  Smashburger next argues that its

2  "'double the beef' claim is literally true because the Triple Double contains (more

3  than) double the beef of many other fast food single burgers, including In-N-Out's."

4  Dkt. 156 at 14:2-26.  This contention fails for three independent reasons.

5  First, there is no reason to believe that customers would construe "Double the

6  Beef" as a reference to competitors' burgers, rather than to Smashburger's own

7  burgers.  Smashburger responds by stating that this argument is "ironic in light of In-

8  N-Out's insistence that consumers necessarily construe the claim as a comparison to

9  one specific product on Smashburger's menu to the exclusion of all others."  *Id.* at

10 14:7-11.  This is a *non sequitur.*  Further, Smashburger presents no reason why

11 consumers would construe the use of the slogan "Double the Beef" made with a

12 specific reference to a Classic Smash as referring to competitors' burgers.

13 Second, Smashburger offers no explanation as to how its slogan "Double the

14 Beef," used to advertise its **double** burger, could be construed as a reference to

15 competitors' **single** burgers, rather than their **double** burgers.  Comparative

16 advertisements are understood as comparing like products.  Smashburger's "Double

17 the Beef" slogans are literally false as a comparison to competitors' products because

18 the Triple Double burgers indisputably do not contain twice as much beef as

19 competitors' double burgers. SS 33, 36-37.

20 Third, Smashburger has presented no evidence that the Triple Double contains

21 (more than) double the beef of ***many other*** fast food **single** burgers.  Smashburger

22 does not dispute that ████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████ SS 33-

25 35.  Thus, Smashburger's "Double the Beef" slogans are literally false even if they are

26 interpreted by reference to competitors' single burgers.

27 Smashburger seeks to rely upon cases that found that advertising statements

28 were ambiguous and therefore not literally false.  *See* Dkt. 156 at 14:11-26.  However,

-12-

1   those cases are inapplicable here, where Smashburger's advertising cannot be
2   interpreted as a reference to competitors' products, let alone to their single burgers.
3   Smashburger is wrong in claiming that *Schering-Plough Healthcare Prods., Inc. v.*
4   *Neutrogena Corp.*, 702 F. Supp. 2d 253, 264 (D. Del. 2010), "declined to find a
5   likelihood of literal falsity where, on its face, the defendant's advertisement could
6   plausibly be interpreted either as making a statement only about defendant's own
7   product or as a comparison to competitors' products." Dkt. 156 at 14:13-17. That
8   court stated that "[n]o direct comparison to plaintiff's (or other competitors') products
9   is made," not that the advertisement was not literally false because it could be
10  plausibly construed as referring either to defendant's own product or competitors'
11  products. *Schering-Plough Healthcare Prods., Inc.*, 702 F. Supp. 2d at 263-64.
12       Smashburger twice cites *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1185
13  (8th Cir. 2011), for the proposition that "[t]he standard for proving literal falsity is
14  ***rigorous***." Dkt. 156 at 6:19-21, 14:18-20 (emphasis added by Smashburger).
15  However, that case's analysis shows that it was referring to the general doctrine that
16  statements are literally false only if they are unambiguous and cannot reasonably be
17  construed as conveying different messages. *See Buetow*, 650 F.3d at 1185. For the
18  reasons discussed above, Smashburger is wrong in asserting, *see* Dkt. 156 at 14:22-26,
19  that the issue of literal falsity is one to be decided by the jury rather than the Court.
20  The Court should reject Smashburger's strained attempts to manufacture ambiguity
21  where there is none, and find that Smashburger's "Double the Beef" slogans are
22  literally false.

23
24       **B.    Because Smashburger's Advertising is Literally False, Deceptiveness is Presumed.**

25       In response to In-N-Out's authority that literal falsity results in a presumption
26  of deception, *see* Dkt. 151 at 17:21 – 18:6, Smashburger contends that "[t]he Ninth
27  Circuit . . . has addressed this presumption only in the context of 'deliberate or literal

28

-13-

1  falsity,'" and claims In-N-Out has not made any argument that Smashburger "acted

2  deliberately or with the intention to mislead consumers." Dkt. 156 at 15:8 – 16:5.

3       However, Smashburger's own authority states that literal falsity is sufficient to

4  create a presumption of deception.  "'Statements that are literally **or** deliberately false

5  create a presumption of deception and reliance.'"  *Cochran Firm, P.C. v. Cochran*

6  *Firm Los Angeles, LLP*, No. CV:12-5868-PSG (MRWx), 2016 WL 6023822, *6 (C.D.

7  Cal. Aug. 18, 2016) (quoting *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861

8  RSM, 2015 WL 3407882, *5 (W.D. Wash. May 27, 2015)) (emphasis added).  In

9  *Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.*, No. CV 98-8218 NM

10  (SHx), 2003 WL 25778704, *4 & n.2 (C.D. Cal. Jan. 29, 2003), the court

11  acknowledged authority applying a presumption of consumer confusion based upon

12  literal falsity, but declined to apply the presumption because, *inter alia*, the

13  misrepresentations were minor (shrimp was marked as "Product of Thailand" when it

14  may have contained only 97% shrimp from Thailand).  Another case Smashburger

15  relies upon for a different point, *LivePerson, Inc. v. [24]7.ai, Inc.*, No. 17-CV-01268-

16  JST, 2018 WL 5849025, *6 (N.D. Cal. Nov. 7, 2018), also refers to a "line of Ninth

17  Circuit cases [that] . . . presumed consumer *deception* based on literally false or

18  intentionally misleading statements."  *Id.* (emphasis in original).

19       Smashburger does not dispute that *POM Wonderful LLC v. Purely Juice, Inc.*,

20  No. CV-07-02633 CAS (JWJx), 2008 WL 4222045, *11 (C.D. Cal. July 17, 2008),

21  applied a presumption of deception based upon literal falsity.  Instead, it asserts that

22  the case "is not binding on this Court," and it cites *Chavez v. Blue Sky Nat'l Beverage*

23  *Co.*, No. C 06-06609 JSW, 2011 WL 13153874, *5 (N.D. Cal. Sept. 27, 2011), as

24  finding that the presumption applies only to false representations that are material.

25  Dkt 156 at 15 n.8.  *Chavez* stated that "the presumption of deception is warranted

26  where the literally false representation is about an inherent quality or characteristic of

27  the product, and not where the representation is peripheral or would likely be

28  considered immaterial."  *Chavez*, 2011 WL 13153874, *5.  Because the "Double the

-14-

1  Beef" representations concern an inherent quality or characteristic of the product – the

2  amount of beef included in Triple Double burgers – a presumption of deception based

3  upon literal falsity is appropriate.

4         Smashburger argues that summary judgment should be denied because the

5  presumption of deception is rebuttable, and that consumers will not be deceived by

6  "Double the Beef" representations because "they can make a price point comparison

7  between the Triple Double and the Classic Smash, which shows that the two burgers

8  are similarly priced." Dkt. 156:6-23.  Smashburger's argument actually supports,

9  rather than rebuts, In-N-Out's contentions that the "Double the Beef" slogans are

10  deceptive and material as likely to lead consumers to believe that they are getting

11  twice as much beef in a Triple Double burger without paying much more than they

12  would for a Classic Smash burger.  Beyond that, customers who are familiar with

13  Smashburger's practice of offering larger portions for only a small increase in price

14  (*e.g.*, Smashburger sells regular fountain drinks for $2.19 and large fountain drinks for

15  $2.39, *see* Wexler Decl., Ex. EE [Dkt. 146-31]), are especially likely to believe that

16  Smashburger is, as promised, offering "Double the Beef" at a bargain price.

17  Smashburger cites no authority in support of the proposition that a defendant can rebut

18  the presumption of deception by arguing that its false advertising is too egregious to

19  be believed.

20       **C.**    **Smashburger's False Advertising is Material.**

21         Smashburger essentially presents no argument in response to In-N-Out's

22  showing that: (1) the amount of beef contained in Triple Double burgers is, on its face,

23  material to the purchasing decision; (2) consumers rely upon perceived value in

24  deciding which products to purchase; and (3) consumers are more likely to buy a

25  product if they believe that they are receiving more for their money as, where here, the

26  consumers believe that they are getting twice as much beef as they are actually

27  getting.  *See* Dkt. 151 at 19:1-6.  These facts are, by themselves, more than sufficient

28  to establish that Smashburger's "'deception is material, in that it is likely to influence

-15-

the purchasing decision. . . .'" *Rice v. Fox Broad. Co.*, 30 F.3d 1170, 1181 (9th Cir. 2003) (quoting *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990)).  Smashburger cites no authority that holds or suggests that a party cannot establish materiality by showing that representations are of a type that is likely to affect the purchasing decision.  To the contrary, the courts recognize that "[m]ateriality can be shown where defendants misrepresent 'an inherent quality or characteristic,'" *Broadcom Corp. v. SiRF Tech., Inc.*, No. SACV 08–546 JVS (MLGx), 2009 WL 10672287, *4 (C.D. Cal. Oct. 8, 2009) (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)), recognizing that certain types of misrepresentations are material on their face.  It is difficult to imagine a misrepresentation that could be any more material to the purchasing decision than Smashburger's statement to customers that they are getting twice as much beef as they are actually getting.

Instead of responding to In-N-Out's showing of materiality, Smashburger relies on a scattershot series of arguments.  First, Smashburger cites *Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 30 (E.D.N.Y. 2009), for the proposition that summary judgment on materiality is inappropriate when there is an issue of fact as to whether an advertising claim was false or misleading.  *See* Dkt. 156 at 16:27 – 17:4.  As shown above, however, Smashburger's "Double the Beef" slogans are literally false.

Second, Smashburger argues that materiality is not presumed based on literal falsity.  *See id.* at 17:5-15.  However, In-N-Out did not argue for a presumption of materiality.  *See* Dkt. 151 at 18:13 – 19:15.  Smashburger is flatly wrong in claiming that "In-N-Out relies on *POM Wonderful*, 2008 WL 422045, at *11 to argue that there is a presumption of materiality where the deception concerns an inherent characteristic of the product."  Dkt. 156 at 18 n.9.  In-N-Out cited *Pom Wonderful* for the proposition that the "materiality requirement can be established when defendant misrepresented the inherent quality or characteristic of the product."  Dkt. 151 at

-16-

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION
FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 8:17-cv-1474-JLS-DFM
4827-5391-6806.v1

18:21-23.  This is not a presumption of materiality; it is a definition of what types of misrepresentations are material.[6]

Third, Smashburger suggests In-N-Out was required to submit direct evidence of materiality.  *See* Dkt. 156 at 17:8-12, 17:16-21.  However, the cases cited by Smashburger do not require the submission of evidence of materiality.  *See Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1111 (9th Cir. 2012) (rejecting the argument that survey evidence is necessary to prove materiality; finding materiality could be proven based on a customer declaration); *see also ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 648 F. App'x 609, 615 (9th Cir. 2016) (considering, not requiring, survey and Internet message board posts as evidence of materiality).

Fourth, Smashburger cites *Nichia Am. Corp. v. Seoul Semiconductor Co., Ltd.*, No. CV 07-8354 PA (CWx), 2008 WL 11342571, *6 (C.D. Cal. Oct. 7, 2008), for the proposition that the element of materiality requires a showing that an advertisement caused consumers to act in a way that injured the plaintiff.  *See* Dkt. 156 at 17:21-28. However, the *Nichia Am. Corp.* court cited no authority in support of this proposition, which it derived from the statement in *Southland Sod Farms* that "[a] plaintiff asserting a false advertising claim must also show that 'the deception is material, in that it is likely to influence the purchasing decision.'"  *Nichia Am. Corp.*, 2008 WL 11342571, *6 (quoting *Southland Sod Farms*, 108 F.3d at 1139).  Thus, it appears that the *Nichia Am. Corp.* confounded the issues of materiality and injury.  To the extent that injury to the plaintiff is an element of the materiality inquiry, the evidence as to the overlap between the customer bases of Smashburger and In-N-Out is, as discussed below, sufficient to prove that In-N-Out suffered some injury in the form of lost customers by reason of Smashburger's false advertising.

---

[6] *Nichia Am. Corp. v. Seoul Semiconductor Co., Ltd.*, No. CV 07-8354 PA (CWx), 2008 WL 11342571, *9 (C.D. Cal. Oct. 7, 2008), referred to a presumption of materiality based on an inherent quality or characteristic, apparently because the plaintiff couched its argument in those terms.  The authority relied upon by the plaintiff in that case did not, however, refer to a presumption.

-17-

1       Fifth, Smashburger argues that it can rebut a presumption of materiality (not

2  invoked by In-N-Out) because consumers could have returned the burgers if

3  dissatisfied (but presents no evidence that there were not customer complaints or

4  returns).  *See* Dkt. 156 at 18:15 – 19:12.  This contention does not show that

5  Smashburger's false "Double the Beef" representations were not material to these

6  customers' purchasing decisions.  To demonstrate a genuine issue, the opposing party

7  "must do more than simply show that there is some metaphysical doubt as to the

8  material facts. . . .  [It] must come forward with specific facts showing that there is a

9  genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

10  574, 586-87 (1986) (internal quotation marks and emphasis omitted).

11       Sixth, in response to In-N-Out's showing that Smashburger is now charging

12  $2.40 more for a double burger that actually has "Double the Beef" of a single burger

13  than it charges for the single burger, *see* Dkt. 151 at 19:7-15, Smashburger argues that

14  "the fact that [it] charges more for products with more food says nothing about what

15  factors influence customers' choices when deciding between two similarly-priced

16  burgers that deliver fundamentally different tasting experiences."  Dkt. 156 at 19 n.10.

17  Smashburger is wrong.  Its ability to charge so much more for a product that contains

18  what is promised by the "Double the Beef" representation proves conclusively the

19  materiality of such representation to consumers paying far less for the product.

20      **D.**    **Smashburger Caused Its False Advertising to Enter Interstate**

21          **Commerce.**

22       At the parties' meet-and-confer session, counsel for Smashburger stated that

23  Smashburger would not oppose summary judgment on the interstate commerce prong

24  of the false advertising claim.  Smashburger states it "does not dispute that the

25  challenged advertisements were placed in interstate commerce."  Dkt. 156 at 19:18-

26  19.  This concession justifies partial summary judgment on the issue presented by In-

27  N-Out's motion – *i.e.*, the false advertising entered interstate commerce.

28

-18-

Now, however, Smashburger has decided to back away from its agreement by using this element as a basis for raising an issue not presented by In-N-Out's motion, claiming In-N-Out was required to introduce evidence that the named defendants are responsible for the false advertising.  *See* Dkt. 156 at 19:14 – 21:6.  For purposes of this motion, In-N-Out believes that it would be appropriate for the Court to rule that the false advertising entered interstate commerce, without reaching the issue whether the named defendants are liable for the false advertising.

However, because of the possibility that the Court will decide to reach this issue since Smashburger injected it into the motion after having stated the interstate commerce element was not disputed, In-N-Out notes that, as Smashburger concedes, *see* Dkt. 156 at 21:2-6, In-N-Out's reply brief in support of its motion for leave to amend briefed this issue:[7]

> According to the April 30, 2018 Franchise Disclosure Statement of Smashburger Franchising LLC: (1) Smashburger IP Holder LLC "owns the trademarks and other intellectual property used in the operation of Smashburger Restaurants"; and (2) Smashburger Franchising LLC is the Smashburger entity that sells Smashburger franchises, and it (or its affiliates and designees) have "sole control over the creative concepts, materials, and endorsements used" by franchisees for all programs that are developed or presented by Smashburger's mandatory Marketing Fund.  Reply Declaration of Jeffrey D. Wexler ("Reply Wexler Decl."), ¶ 2, Ex. A at 1, 9, 31-32.  Thus, Smashburger IP Holder LLC owns the rights to the "Double the Beef" slogans and the advertising materials using those slogans, and Smashburger Franchising LLC has the right to control the use of "Double the Beef" advertising by franchisees.

> While the documents produced by Smashburger almost always refer to "Smashburger" without differentiating between different entities, they contain nothing to suggest that Smashburger IP Holder LLC does not in fact own the intellectual property upon which the false advertising claim is based, or that Smashburger Franchising LLC is not responsible for controlling franchisees' advertising.  To the contrary, the documents produced by Smashburger make it clear that, *inter alia*: (1) Smashburger CEO Tom Ryan was responsible for choosing the "Triple the cheese and double the beef in every bite" tagline, *id.*, Ex. B (June 14, 2017 e-mail); (2) Smashburger employees are responsible for creating the "Double the Beef" advertising materials, *id.*, Ex. C (June 16, 2017 e-mail chain); (3)

---

[7] *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018), cited by Smashburger, states that "reply briefs are limited in scope to matters either raised by the opposition or unforeseen at the time of the original motion."  Here, it was unforeseeable that Smashburger would argue an issue not presented by the original motion after agreeing the element was undisputed.

-19-

Smashburger released a July 11, 2017 press release in which Mr. Ryan
stated that the Triple Double burger "provid[es] three times the cheese
and double the beef in every bite," *id.*, Ex. D; and (4) Smashburger
provides franchisees with "Double the Beef" advertising materials for
their use, *id.*, Ex. E (October 4, 2017 communication from Smashburger
to franchisees recommending that they run the attached "Double the
Beef" advertisements).

The fact that Smashburger IP Holder LLC is liable for false
advertising as the owner of the "Double the Beef" slogans and
advertising is demonstrated by the case law holding that advertising
agencies are proper defendants to false advertising claims under the
Lanham Act.  *See, e.g., Nestle Purina PetCare Co. v. Blue Buffalo Co.
Ltd.*, No. 4:14 CV 859 RWS, 2015 WL 1782661, at *5 (E.D. Mo. Apr.
20, 2015) (denying motion to dismiss false advertising claim against
advertising agency); *In re Century 21-RE/MAX Real Estate Advertising
Claims Litig.*, 882 F. Supp. 915, 925 (C.D. Cal. 1994) (an advertising
agency may be liable for false advertising it if "has knowingly
participated in the creation, development and propagation of the … false
advertising campaign") (quotation omitted); *Gillette Co. v. Wilkinson
Sword, Inc.*, 795 F. Supp. 662, 663 (S.D.N.Y. 1992) ("advertising
agencies are liable under [Section 1125(a)] at least where they knowingly
participate in the false advertising"), *vacated on other grounds*, No. 89
Civ. 3586(KMW), 1992 WL 12000396, at *1 (S.D.N.Y. Oct. 28, 1992).
Here, where the two named Smashburger defendants were responsible
not only for creating the false advertising but for dictating the use of such
advertising by company-operated restaurants and franchisees, they are
proper defendants to the false advertising claim.

Dkt. 105 at 15:13 – 16:2 (citations to Reply Wexler Decl. are to Dkt. 106-1).

Smashburger argues only that the named "defendants do not own any

restaurants, do not sell any hamburgers, and do not purchase or run any

advertisements," and that they therefore are not responsible for distributing or

publishing any of the 'double the beef'-related claims and cannot be liable for false

advertising as a matter of law." Dkt. 156 at 20:3-11.  It does not address – let alone

dispute – In-N-Out's arguments in its reply papers that the named defendants are

liable for false advertising because they created the false advertising and dictated its

use by company-operated restaurants and franchisees.[8]  To the contrary, Smashburger

cites *In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*, 882 F. Supp.

---

[8] On a motion, the district court may consider evidence submitted on reply if it
"directly respond[s] to . . . arguments and evidence offered in support of [an]
Opposition."  *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, No. CV 15-
9704-JFW (ASx), 2016 WL 3563504, *1 n.1 (C.D. Cal. Mar. 9, 2016).

-20-

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION
FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 8:17-cv-1474-JLS-DFM

4827-5391-6806.v1

915, 925 (C.D. Cal. 1994), which, as discussed above, supports the imposition of liability on the named defendants because they "knowingly participated in the creation, development and propagation of the . . . false advertising campaign." *Id.*

Thus, if the Court reaches this issue, it should grant partial summary judgment as to the named defendants' liability for the "Double the Beef" advertisements.

**E.**    **In-N-Out is Likely to be Injured as a Result of Smashburger's False Advertising.**

In arguing that In-N-Out's motion for partial summary judgment on damages should be denied, Smashburger asserts that: (1) In-N-Out has not proven that is entitled to disgorgement damages; and (2) In-N-Out's evidence of competition between Smashburger and In-N-Out is insufficient to demonstrate injury. *See* Dkt. 156 at 21:8-25. However, In-N-Out has sought partial summary judgment on the injury element of a claim for false advertisement, not on its entitlement to monetary relief. Because Smashburger has not disputed that the evidence submitted by In-N-Out is sufficient to establish injury for purposes of the Lanham Act, In-N-Out is entitled to partial summary judgment on the issue of injury.

The Ninth Circuit has long recognized that "because of the possibility that a competitor may suffer future injury, as well as the additional rationale underlying section 43(a) – consumer protection – a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989). Thus, in *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828-31 (9th Cir. 2011), the Ninth Circuit held that the plaintiff had proven the injury element of its false advertising claim and was entitled to injunctive relief even though its evidence was insufficient to support an award of profits. *See id.*

Thus, Smashburger misses the point in arguing, *see* Dkt. 156 at 21:11-21, that In-N-Out is seeking disgorgement damages and is required to prove willfulness in order to obtain such damages. When the time comes, In-N-Out will prove its entitlement to disgorgement damages by introducing evidence that Smashburger

-21-

willfully used "Double the Beef" slogans to deceive consumers into purchasing Triple Double products.  For purposes of this motion, however, In-N-Out need only prove injury, not quantify damages.

Smashburger does not dispute that to establish the injury element of its claim, In-N-Out need show only that it "is likely to be injured as a result of the false statement . . . by direct diversion of sales from itself to" Smashburger.  *Southland Sod Farms*, 108 F.3d at 1139.  Smashburger is flatly wrong in claiming that its survey evidence is insufficient to show a likelihood that its false advertising diverted some In-N-Out customers to Smashburger.[9]  *See* Dkt. 156 at 21:22 – 22:17.  ████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████  SS 32.  As a statistical matter, it is therefore likely that at least some customers who chose to go to Smashburger because of the "Double the Beef" slogans would otherwise have gone to In-N-Out.

In arguing that "it makes no sense to assume that customers would go to In-N-Out if they knew that the Triple Double contained the same amount of meat as the regular-sized Classic Smash—In-N-Out's Double-Double contains *less* meat than Smashburger's Triple Double," Dkt. 156 at 22:11-17, Smashburger misstates the issue.  What matters is that there were at least some customers who came to Smashburger because of the false "Double the Beef" representations who would otherwise have gone to other restaurants, including In-N-Out restaurants.

Smashburger is wrong in implying that *Nutrition Distrib. LLC v. Lecheek Nutrition, Inc.*, No. CV:15-1322 MWF (MRWx), 2015 WL 12659907, *7 (C.D. Cal. June 5, 2015), requires In-N-Out to show lost sales in order to obtain relief.  *See* Dkt. 156 at 22:18 – 23:1.  That case denied preliminary injunctive relief based upon lack of

---

[9] Smashburger sets forth no basis for doubting the reliability of a survey that it commissioned itself, and no reason to think that there has been a material change in the overlap between Smashburger customers and In-N-Out customers.

IN-N-OUT BURGERS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT Case No. 8:17-cv-1474-JLS-DFM

4827-5391-6806.v1

1  irreparable injury, then stated in *dicta* that the plaintiff had not shown a likelihood of

2  success on damages because it had not shown a decline in sales.  *See Nutrition*

3  *Distrib. LLC*, 2015 WL 12659907, *7.  The case did not address the issue of

4  likelihood of success as to disgorgement of profits.

5      In claiming *Munchkin, Inc. v. Playtex Prods., LLC*, 600 F. App'x 537, 539 (9th

6  Cir. 2015), states a presumption of injury applies only in false direct comparative

7  advertising cases, Dkt. 156 at 23:2-14, Smashburger fails to address the subsequent

8  non-comparative advertising Ninth Circuit case cited by In-N-Out, *see* Dkt. 151 at

9  20:20-26, that stated that the Ninth Circuit has "'generally presumed commercial

10  injury when defendant and plaintiff are direct competitors and defendant's

11  misrepresentation has a tendency to mislead consumers,'" without limiting the

12  presumption to comparative advertising cases.  *ThermoLife Int'l, LLC*, 648 F. App'x

13  at 615 (quoting *TrafficSchool.com, Inc.*, 653 F.3d at 826).  *See Pipe Restoration*

14  *Techs., LLC v. Coast Building & Plumbing, Inc.*, No. 8:13-cv-00499-JDE, 2018 WL

15  6012219, *4, 9 (C.D. Cal. 2018).

16  ████████████████████████████████████████████████████

17  ████████████████████████████████  SS 32.  Instead, it mischaracterizes the

18  testimony of two (non-executive) In-N-Out employees in their individual capacities as

19  to In-N-Out's competitors.  *See* Dkt. 156 at 24:1-9.  Mr. Barnard testified only that he

20  did not consider In-N-Out as having direct competitors, *see* Barnard Decl. at 74:21 –

21  75:4 (Ex. C to Finkelstein Decl.) [Dkt. 156-1], and Ms. Lee testified only that she did

22  not pay attention to competitors and did not think that how other companies market

23  their products has an impact on In-N-Out, *see* Lee Decl. at 48:20 – 49:9 (Ex. D to

24  Finkelstein Decl.) [Dkt. 156-1]. ████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████  Smashburger has introduced no evidence to show that it does not compete

27  with In-N-Out, which sells the same sort of products to the same consumers.

28

-23-

1        Unable to dispute the evidence showing that a significant majority of

2   Smashburger's restaurants in the states where In-N-Out has restaurants are located in

3   close proximity to In-N-Out restaurants, SS 26-30, Smashburger mischaracterizes that

4   evidence, Dkt. 156 at 24:10-27.  In-N-Out introduced a photo of a Smashburger bus

5   shelter ad in Colorado to show the types of advertising that Smashburger does, SS 14,

6   not to claim it was injured by that specific ad.  In-N-Out did not assert that a restaurant

7   located 20 miles from the nearest In-N-Out was "proximate" to In-N-Out, *see* Dkt.

8   156 at 24:20-26; instead, it identified the Smashburger restaurant located 20 miles

9   away from four In-N-Out restaurants as one of the three Smashburger restaurants in

10  California that are not located in, or within six miles of, the town of an In-N-Out

11  restaurant.  *See* Wexler Decl., ¶ 19.c, Ex. Z, at 12.  The geographic overlap between

12  Smashburger and In-N-Out restaurants is overwhelming, and essentially undisputed.

13       Finally, Smashburger is wrong that *ThermoLife* shows that there is a triable

14  issue on injury because the presumption of injury is rebuttable.  *See* Dkt. 151 at 24:28

15  – 25:10.  In *ThermoLife*, the district court granted the defendant's motion for summary

16  judgment as to lack of injury, and the Ninth Circuit found a genuine issue of material

17  fact and reversed because the plaintiff had established a presumption of injury and the

18  defendant had not rebutted it.  *See ThermoLife Int'l, LLC*, 648 F. App'x at 612, 615.

19  The Ninth Circuit did not reverse based upon a finding that rebuttal of the

20  presumption required a jury trial.  In any event, Smashburger has not introduced any

21  evidence that could rebut the presumption of injury; the degree of geographic and

22  customer overlap between Smashburger and In-N-Out is too great for a reasonable

23  jury to find that In-N-Out did not lose any customers as a result of Smashburger's

24  false "Double the Beef" advertisements.

25

26

27

28

-24-

## CONCLUSION

In attempting to avoid a finding of literal falsity, Smashburger asks the Court to find that "Double the Beef" can be interpreted as meaning: (1) double the patties; (2) double the amount of beef of a small burger available at Smashburger; and (3) double the amount of beef on some competitors' single burgers.  These interpretations are contrary to the plain meaning of the slogans and to the reasonable expectation of consumers, who could not possibly interpret Smashburger's advertisements to mean that: (1) the Triple Double burger has two patties that each contain half the amount of beef as the Classic Smash burger; (2) the Triple Double Burger has twice the amount of beef of a "Classic Small Smashburger" that does not appear on Smashburger's menu; or (3) the Triple Double burger, a **double** burger, has twice as much beef as competitors' **single** burgers.

For the reasons set forth herein and in its moving papers, In-N-Out respectfully asks the Court to grant its motion for partial summary judgment as to Smashburger's liability on In-N-Out's false advertising claim.

Dated:  January 21, 2019          Respectfully submitted,

CAROLYN S. TOTO
JEFFREY D. WEXLER
SARKIS A. KHACHATRYAN
PILLSBURY WINTHROP SHAW PITTMAN LLP


By:_____/s/ Carolyn S. Toto_____
          Carolyn S. Toto
Attorneys for Plaintiff and Counterdefendant
IN-N-OUT BURGERS

-25-